COPY

1  PAUL L. GALE, Bar No. 065873
   paul.gale@troutmansanders.com
2  THOMAS H. PROUTY, Bar No. 238950
   thomas.prouty@troutmansanders.com
3  TROUTMAN SANDERS LLP
   5 Park Plaza, Suite 1400
4  Irvine, CA  92614-2545
   Telephone:  949.622.2700
5  Facsimile:   949.622.2739

6  Attorneys for Plaintiffs
   BILL A. BUSBICE, JR., OLLA
7  PRODUCTIONS, LLC, and ECIBSUB, LLC

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10 BILL A. BUSBICE, JR., an individual;        Case No. CV14-4077-PA (AJWx)
   OLLA PRODUCTIONS, LLC, a limited
11 liability company; and ECIBSUB, LLC,        COMPLAINT FOR:
   a limited liability company,
12                                             1. **VIOLATION OF THE**
              Plaintiffs,                         **FEDERAL SECURITIES**
13                                                **LAWS;**
              v.
14                                             2. **VIOLATION OF**
   JAMES DAVID WILLIAMS, an                       **CALIFORNIA**
15 individual; STEVEN J. BROWN, an                **CORPORATION CODE**
   individual; GERALD R. SEPPALA, an             **SECTION 25401;**
16 individual; LEGACY FILM CREST,
   LLC, a limited liability company;          3. **COMMON LAW FRAUD;**
17 MOMENT FACTORY, LLC, a limited
   liability company; LUXE ONE, INC., a       4. **BREACH OF FIDUCIARY**
18 corporation; VISIONS LLC, a limited           **DUTY;**
   liability company; BIPARTISAN
19 COALITION FOR AMERICAN                      5. **CONSTRUCTIVE FRAUD;**
   SECURITY CORPORATION, a
20 corporation; HIGHGATE PASS, LLC, a         6. **NEGLIGENT**
   limited liability company; GARUDA             **MISREPRESENTATION;**
21 PARTNERS, LTD., an unknown entity,
   as Trustee of The Mulholland Ridge        7. **CONSPIRACY TO**
22 Trust; and DOES 1 – 10, inclusive,           **DEFRAUD;**

23            Defendants.                      8. **ACCOUNTING;**

24                                             9. **BREACH OF IMPLIED**
                                                  **CONTRACT;**
25
                                              10. **CONVERSION;**
26
                                              11. **IMPOSITION OF A**
27                                                **CONSTRUCTIVE TRUST;**

28                                            12. **FRAUDULENT TRANSFER**

                                              **DEMAND FOR JURY TRIAL**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

Plaintiffs Bill A. Busbice, Jr. ("Busbice"), Olla Productions, LLC ("Olla"), and Ecibsub, LLC ("Ecibsub") (collectively, "Plaintiffs"), allege:

**NATURE OF THE ACTION**

1.      This is an action to remedy a bold and brazen securities fraud.

2.      Over the course of nine months, beginning in April 2013, James David Williams ("Williams") – with the assistance of his associates and co-conspirators Steven J. Brown ("Brown"), Gerald R. Seppala ("Seppala"), others acting in concert with them and/or providing substantial assistance to them, and their respective related entities – swindled Plaintiffs out of $10,900,000.  Defendants fraudulently induced Plaintiffs to invest in companies that purported to own and/or control rights to feature length films, including the right to participate in the film's net revenues, and in some instances, the right to finance the film's marketing campaign (a so-called "prints and advertising" or "P&A" financing) which, in addition to a priority return plus interest, entitled the financing company to receive a substantial interest in the film's net revenues.

3.      In all, Defendants' massive fraud involved four films: *Made in America*, *The Letters*, *Left Behind*, and *Angels Sing*.  As alleged in more detail below, for each film, Williams and/or one or more of his co-conspirators structured the deals, and then fraudulently induced Busbice (through his companies) to purchase securities of various defendant entities through the intentional falsification of financial documents, audacious lies and material misrepresentations.  For example, with respect to *The Letters*, Williams induced Busbice, through his wholly owned company, Olla, to purchase common stock in a corporation that purportedly had a deal with the film's producers to finance over $20,000,000 for the film's P&A campaign.  The deal was similar with respect to *Angels Sing*, but instead of issuing Olla shares of corporate stock, Williams caused membership interests in a limited liability company to be issued.  For *Left Behind*, Williams induced Olla to

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 1 -

COMPLAINT

purchase "Participation Interests" in the film's net revenue, which were represented to be "restricted securities" that had to "be held indefinitely unless . . . subsequently registered under the [1933 Securities] Act and applicable state securities laws or unless an exemption from registration is available[.]"  For *Made in America*, Ecibsub was induced to acquire membership interests in a production company created and controlled by Williams and his co-conspirators.

4.     Although there were some differences in how the scheme for each film was structured, the basic concept was the same:  Williams and/or one or more of his co-conspirators, who held themselves out as experienced film industry insiders, claimed to have a deal in place to fund the production or marketing of a feature film.  Plaintiffs were repeatedly told that investing in each deal would bring a guaranteed return of capital, interest, and profit participation rights.  Williams and his co-conspirators falsely represented that they had already invested millions of their their own funds in each film, that more money was needed, and that Busbice could take advantage of the lucrative deal by investing his own money.  Williams and/or one of his co-conspirators were set up to manage the deals, whereas Busbice's role was that of a passive investor.

5.     After investing $10,900,000, Plaintiffs discovered that they had been conned.  Plaintiffs learned, among other things, that:

- Williams did not in fact invest his own (or *any*) money in the purported deals;
- Williams intentionally provided Busbice with fake business and financial records to convince Busbice that a solid financial foundation existed for each investment;
- Williams and his co-conspirators presented Busbice with falsified bank records purporting to show that multi-million dollars of funds were already invested in each transaction when, in fact, there was no money in any company other than what Plaintiffs invested;

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- Williams and his co-conspirators repeatedly lied and concealed the truth with falsified documents at each instance when Plaintiffs tried to obtain accurate information related to their investments; and

- Williams and his co-conspirators secretly, wrongfully and without Plaintiffs' knowledge, siphoned millions of dollars to other accounts under their exclusive control and converted Plaintiffs' money for their own personal use.

- Out of the millions invested by Plaintiffs, almost none of the funds were spent on the film projects or used for the purposes for which they were intended.

6.     In short, it appears that most, if not everything that Williams and his co-conspirators told Busbice and presented to Busbice to induce Plaintiffs' investments and to conceal the frauds that had been perpetrated, was flagrantly false and designed to cheat Plaintiffs out of millions of dollars.

7.     Instead of investing in the four fills as had been represented, Defendants used Plaintiffs' money to go on an out-of-control personal spending spree.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder by the Securities and Exchange Commission.

9.     This Court has subject matter jurisdiction over this action pursuant to section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. section 1331 (federal question jurisdiction) and has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. section 1367(a), because they are related to claims within this Court's original jurisdiction.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

10.    Venue is proper in this district pursuant to section 27 of the Exchange Act and 28 U.S.C. section 1391(b), because several of the acts and transactions giving rise to the violations of law complained of herein occurred in this district, and Williams and other defendants reside in this district.

11.    In connection with the acts, transactions and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails and interstate wire and telephone communications.

## THE PARTIES

12.    Plaintiff Busbice is an individual residing in Wyoming.

13.    Plaintiff Olla is a Louisiana limited liability company.  Busbice is Olla's sole member.

14.    Plaintiff Ecibsub is a Louisiana limited liability company.  Ecibsub's members are:  Busbice; Dorothy Elizabeth Lippman Busbice, an individual residing in Wyoming; and Rebecca T. Romero, an individual residing in Louisiana, as Trustee for the Ryan Alfred Busbice Family II Trust, the William Matthew Busbice Family II Trust, and the Sarah Elizabeth Family II Trust.

15.    Defendant Williams is an individual residing in Los Angeles County, California.  Williams has done and continues to do business under various fictitious business names including, without limitation, New Legacy Film Investment V ("NLFI"), New Legacy Media Partners ("NLMP"), Legacy Film Crest Media Management Fund ("LFCMMF"), and Film Crest Entertainment ("FCE"). Plaintiffs are informed and believe, and on that basis allege, that NLFI, NLMP, LFCMMF and FCE are not formal legal entities.  Williams also operates through certain entities that are formal legally-registered entities, at least some of which are named parties to this action and are described herein below.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 4 -

16.     Defendant Brown is an individual residing in Los Angeles County, California.

17.     Defendant Gerald R. Seppala ("Seppala") is an individual residing in Minnesota.

18.     Defendant Legacy Film Crest, LLC ("Legacy") is a California limited liability company with its principal place of business in Los Angeles County, California.  Plaintiffs are informed and believe, and on that basis allege, that Legacy is owned and controlled by Williams.

19.     Defendant Moment Factory, LLC ("Moment Factory") is a California limited liability company with its principal place of business in Los Angeles County, California.  Plaintiffs are informed and believe, and on that basis allege, that Moment Factory's only members are plaintiff Olla and defendant Legacy.

20.     Defendant Luxe One, Inc. ("Luxe One") is a California corporation with its principal place of business in Los Angeles County, California.

21.     Defendant Visions L.L.C. ("Visions") is a Minnesota limited liability company.

22.     Defendant Bipartisan Coalition for American Security Corporation ("Bipartisan Coalition") is a California corporation with its principal place of business in Los Angeles County, California.  Plaintiffs are informed and believe, and on that basis allege, that Bipartisan Coalition is owned and/or controlled by Williams.

23.     Defendant Highgate Pass, LLC ("Highgate") is a California limited liability company with its principal place of business in Los Angeles County, California.  Plaintiffs are informed and believe, and on that basis allege, that Highgate is affiliated with, owned and/or controlled by Williams and/or Brown.

24.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Garuda Partners, Ltd. ("Garuda") is an unknown entity that is affiliated

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  with, owned and/or controlled by Williams and/or Brown, and is Trustee of the

2  Mulholland Ridge Trust.

3      25.   The true names and capacities, whether individual, corporate, or

4  otherwise, of the defendants sued herein as DOES 1 through 50, inclusive, are

5  unknown to Plaintiffs.  Therefore, Plaintiffs sue the DOE defendants by such

6  fictitious names.  Plaintiffs will amend this complaint to show the true names and

7  capacities of the DOE defendants when they have been ascertained.  Plaintiffs are

8  informed and believe, and on that basis allege, that DOES 1 through 50, inclusive,

9  and each of them, are in some manner liable to Plaintiffs.

10     26.   Plaintiffs are informed and believe, and on that basis allege, that at all

11 times herein mentioned, Defendants, and each of them, were the agents, trustees,

12 partners, joint venturers, co-conspirators, contractors and/or employees of the other

13 Defendants, and that the acts and omissions herein alleged were done by them,

14 acting individually, through such capacity and within the scope of their authority,

15 and with the permission and consent of the other Defendants and/or were thereafter

16 ratified by each of the other Defendants, and that each of them are jointly and

17 severally liable to Plaintiffs.

18

19                    **BACKGROUND ALLEGATIONS**

20              A.   The *Made in America* Deal

21     27.   In April 2013, Defendants Williams, Seppala and Brown approached

22 Busbice regarding an opportunity to invest in a feature length documentary, *Made*

23 *in America*, through the purchase of membership units in Visions, a limited liability

24 company organized as the film's project management, development and financing

25 entity.  According to these defendants, Seppala and Brown were the film's

26 producers, and Seppala's company Griffin Productions, which had developed the

27 film, assigned all of its rights regarding the film to Visions.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507                         - 6 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

28.    Visions was to be managed by Seppala, who would hold virtually all of the company's twenty "Class A Units" which, according to an Informational Financing Memorandum provided to Busbice, had "primary governance rights respecting control of the Company and the conduct of its business," as well as certain financial rights.  Investors could purchase Visions' "Class B Units," which granted "limited governance rights," but potentially lucrative financial rights, including the right to recoup 120% of the investor's capital contribution before any distributions were made to Class A Unit holders, followed by a pro rata share of the film's profits.  Visions' Member Control Agreement, dated April 15, 2013, detailed the members' respective rights and interests as Class A or Class B Unit holders.

29.    Defendants Seppala, Brown and Williams represented that the minimum financing needed for the film was $1,000,000, and that Williams would be investing $500,000 of his own money to purchase one Class A Unit and five Class B Units in Visions.  These defendants looked to Busbice to invest the remaining $500,000 to acquire the same equity interest as Williams.

30.    On April 15, 2013, Seppala e-mailed Busbice the film's budget, which indicated that just over $1,000,000 was budgeted for various items, such as "set construction," "set operation," "special effects," etc.  Defendants Brown and Williams were copied on that e-mail.

31.    Later on April 15, 2013, Seppala e-mailed Busbice a purported wire confirmation (the "Purported 4/15/13 Wire Confirmation") indicating that Williams transferred $500,000 to a JP Morgan Chase ("Chase") bank account opened for Visions, Account No. 478137206 (the "Visions 7206 Account"), which was represented to be the production account for the *Made in America* project.

32.    On or about April 24, 2013, Defendants Seppala and Williams sent Busbice a purported printout of a Chase online statement for the Visions 7206 Account reflecting that, as of April 24, 2013, that account's present balance was $531,610.12 (the "Purported 4/24/13 Screenshot").  Defendants Seppala and

1   Williams sent Busbice the Purported 4/24/13 Screenshot as further confirmation of

2   Williams' $500,000 investment in order to induce Busbice to invest.

3        33.    On or about April 25, 2013, Defendants Seppala and Williams sent

4   Busbice a copy of a Subscription Agreement, signed by Williams, representing that

5   Williams was acquiring five Class B Units in Visions for $500,000.  This

6   Subscription Agreement also contained an acknowledgement, signed by Seppala,

7   certifying that Visions had already received Williams' $500,000 "by way of wire

8   transfer into the checking or deposit account of Visions, LLC[.]"

9        34.    Based on these representations, on or about April 25, 2013, Busbice,

10  on Ecibsub's behalf, signed a Subscription Agreement to acquire five Class B Units

11  in Visions for $500,000.  That Subscription Agreement provided, among other

12  things, that "the B Units are not registered under the Securities Act of 1933 (the

13  'Securities Act') or the securities laws of any state, and that such B Units will be

14  issued to the undersigned in reliance on the nonpublic offering exemption under

15  Section 4(2) of the Securities Act and Regulation D thereunder and the appropriate

16  provisions of the applicable state laws[.]"

17       35.    On April 26, 2013, in direct reliance upon on Defendants'

18  representations, Busbice caused Ecibsub to wire transfer $500,000 to the Visions

19  7206 Account.

20

21      B.    The Luxe One / *The Letters* Deal – Part 1 (the first $2,000,000)

22       36.    In late June 2013, Williams approached Busbice regarding an

23  investment opportunity that involved the making of a P&A loan in connection with

24  the theatrical release of *The Letters*, a feature film about the life of Mother Teresa.

25  According to Williams, Williams had an agreement in place with the

26  owner/producer of *The Letters*, Big Screen Entertainment Partners V ("Big

27  Screen"), to make a $10,000,000 P&A loan for the film, which was to be repaid

28  with interest from the film's net revenues, and which was to be secured in a first

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   position by such revenues.  In addition, according to Williams, that agreement also

2   provided him (through his company, Luxe One) with certain lucrative "back end"

3   participation rights in the film's net profits.

4        37.    Williams had caused Luxe One to be incorporated as a special purpose

5   entity for this purported deal in May 2013.  At the time Williams solicited Busice's

6   investment in the deal, Williams represented to Busbice that he had already

7   advanced to Luxe One $2,000,000 of his own money (through his entity NLFI), and

8   had obtained a $6,000,000 contribution from Chart Investment Fund CV12

9   ("Chart"), which Williams represented was an entity controlled by certain unnamed

10  clients of his with which he had done many successful P&A deals in the past.

11  Thus, according to Williams, only $2,000,000 remained in order to complete the

12  $10,000,000 P&A loan investment.  Williams sought this $2,000,000 from Busbice.

13       38.    In late June 2013, Busbice organized Olla (with Busbice as its sole

14  member and manager) as the vehicle for his investment in Luxe One.

15       39.    In late June 2013, Williams represented that Busbice's company Olla,

16  and Williams' company NLFI, would each be 25% shareholders in Luxe One, and

17  that Chart would be a 50% shareholder, due to the size and proportions of their

18  respective contributions.  Williams also represented to Busbice that he held Chart's

19  proxy and that Busbice "didn't have to worry about Chart."

20       40.    In early July 2013, Williams provided Busbice with an agreement

21  dated July 3, 2013, between Olla and Luxe One, entitled "Prints and Advertising

22  Investment Fund Lending Term for the Feature Film 'The Letters'" (the "Letters

23  Term Sheet"), which was signed by Williams on Luxe One's behalf, and which

24  contained provisions governing Olla's $ 2,000,000 contribution, as well as certain

25  of Luxe One's representations regarding the overall P&A investment.

26       41.    In direct reliance upon Williams' representations regarding the

27  investment, including, without limitation, that $8,000,000 had already been funded

28  into Luxe One and that the bank account into which the investment was to be paid

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1 was Luxe One's only bank account, on July 3, 2013, Busbice, through Olla, wire

2 transferred $2,000,000 to a Chase bank account held by Luxe One, as instructed by

3 Williams.

4       42.      In July 2013, at Williams' direction, Luxe One issued 250 shares of

5 Luxe One stock to Olla, 250 shares of Luxe One stock to NLFI, and 500 shares of

6 Luxe One stock to Chart.

7

8                   C.     The *Left Behind* Deal

9       43.      On August 8, 2013, Williams e-mailed Busbice regarding an

10 opportunity to invest $2,400,000 in the film *Left Behind*, for interest and ownership

11 of "10% of the Worldwide Revenue from the film[.]" According to Williams, *Left*

12 *Behind* was currently in full film production and was "based on the LEFT BEHIND

13 books which have sold 68 million copies . . . second only to HARRY POTTER

14 AND TWILIGHT." Williams represented that the film had a $15,000,000

15 production budget, and that Williams was funding most of that budget himself.

16 However, Williams represented that he was "in a bind on" the movie, because he

17 was $2,400,000 short, and although Williams could borrow against some of his

18 holdings, that "takes time." Williams stated that Busbice was "the first person that

19 [he] thought of" and advised Busbice to "[k]eep in mind that the first three movies

20 in the franchise . . . starring Kirk Cameron . . . made well over $100 million

21 dollars, and this one stars Nicolas Cage."

22       44.      Based on Williams' solicitation, Busbice expressed interest in the *Left*

23 *Behind* opportunity and told Williams that he could invest through his company

24 Olla. Subsequently, on or about August 11, 2013, Williams sent Busbice an

25 agreement, dated August 12, 2013 and entitled "Left Behind – Participating Loan

26 Agreement" (the "Left Behind Agreement"), purportedly governing that investment

27 and Olla's participation rights in the film.

28       45.      Section 5.2 of the Left Behind Agreement provides:

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

The Lender [*i.e.*, Olla] acknowledges and understands that the offer and sale of the rights under this agreement (the "**Participation Interest**") to the Lender has not been registered under the United States Securities Act of 1933, as amended (the "**1933 Act**"), or applicable states securities laws, and that as a result, the Participation Interests are restricted securities, and must be held indefinitely unless the Participation Interests are subsequently registered under the Act and applicable state securities laws or unless an exemption from registration is available to allow the transfer of the Participation Interests.

46.     On August 12, 2013, Williams promptly e-mailed Busbice wire instructions for the *Left Behind* investment and stated:  "[o]nly send the $2,400,000 (not the $2,500,000 as outlined in the Agreement).  We'll settle that up later.  Thanks."

47.     Later that day, August 12, 2013, Busbice, through Olla, wire transferred $2,400,000 to a Chase bank account of Left Behind Investments, LLC ("LBI") as Williams instructed, expecting that the investment would be recorded directly in Olla's name, as investor.

### D.     The Moment Factory / *Angels Sing* Deal

48.     In October 2013, Williams approached Busbice regarding another P&A loan investment opportunity, this time in connection with *Angels Sing*, a Christmas-themed feature film starring Harry Connick Jr., Willie Nelson and others.  According to Williams, Williams had set up Moment Factory (a limited liability company) as a special purpose entity for this investment, and was negotiating a deal with the film's producers/owners, DF Indie Studios LLC ("DF

Indie"), to make a $4,000,000 P&A loan for *Angels Sing*. The loan was to be repaid with interest from the film's net revenues and was to be secured in a first position by such revenues. In addition, the deal offered "back end" participation rights in the film's net profits. Williams informed Busbice that Williams (through his company, Legacy) had already put $2,000,000 of his own money into Moment Factory for the deal, and that if Busbice contributed $2,000,000, then the two would each be invested 50%-50% as equal members of Moment Factory.

49.     On October 24, 2013, Williams, through counsel, provided Busbice with unsigned drafts of three key documents relating to the deal: (1) a "Prints and Advertising Investment Lending Term Sheet" between Moment Factory and Busbice's company Olla ("Angels Sing Term Sheet"); (2) a "Single Picture P&A Credit Facility Term Sheet" between Moment Factory and DF Indie ("Angels Sing Credit Facility Agreement"); and (3) an "Irrevocable Letter of Direction" ("Letter of Direction"), between Moment Factory, DF Indie, and Lions Gate Films, Inc. (the film's distributor) ("Lions Gate"). Williams assured Busbice that DF Indie and Lions Gate would promptly sign the Angels Sing Credit Facility Agreement and the Letter of Direction and that the $4,000,000 was urgently needed for the P&A campaign for *Angels Sing's* upcoming theatrical release.

50.     On October 25, 2013, Williams e-mailed Busbice's counsel with certain marketing and budget information for *Angels Sing*. The marketing information Williams furnished reflected that *Angels Sing* was to have an initial wide theatrical release to at least 1,000 screens. Williams represented to Busbice that the film would be released theatrically on an immediate basis during the upcoming 2013 holiday season and provided a P&A/marketing budget for that purpose.

51.     Busbice requested confirmation that Williams (through Legacy) had contributed his half of the $4,000,000 fund. Thus, on October 29, 2013, at Williams' direction, Williams' counsel, Barry J. Reiss, e-mailed Busbice's counsel

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   attaching what purported to be a Chase online statement reflecting Moment

2   Factory's bank account's balance from the day before, *i.e.* October 28, 2013 (the

3   "Purported 10/28 Moment Factory Balance Statement").  The Purported 10/28

4   Moment Factory Balance Statement indicated that on October 28, 2013, the present

5   balance of Moment Factory's Chase Bank account was $1,903,150.24, which funds

6   represented amounts remaining from Williams' purported contribution of

7   $2,000,000 into the Moment Factory account.

8          52.    On October 30, 2013, Williams, on Moment Factory's behalf, signed

9   the final version of the Angels Sing Term Sheet, which contained provisions

10   governing Olla's $2,000,000 contribution, as well as Moment Factory's

11   representations regarding the overall P&A loan/investment.

12          53.    On that same day, October 30, 2013, in direct reliance upon Williams'

13   representations regarding the investment opportunity and the purported

14   confirmation of Williams' own contribution, Busbice, through Olla, wire

15   transferred $2,000,000 to Moment Factory's Chase account.

16

17          E.     The Luxe One / *The Letters* Deal – Part 2 (an additional $4,000,000)

18          54.    In November 2013, following Plaintiffs' funding of the Moment

19   Factory transaction, Williams informed Busbice that Luxe One's deal regarding *The*

20   *Letters* had improved to their advantage.  Specifically, Williams represented that

21   because *The Letters* was viewed as such a strong film, Luxe One was given the

22   opportunity both to loan up to $22,000,000 for the film's P&A spend and to pay

23   Big Screen $1,750,000 in "finishing funds" for the film, in return for a direct equity

24   stake in Big Screen (specifically, 35 of Big Screen's 400 authorized shares).

25   Williams claimed to have negotiated the new and enhanced deal with Big Screen

26   and informed Busbice that Luxe One needed to amass an additional $12,000,000 to

27   carry out the deal.  Williams represented to Busbice that both Chart and NLFI

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   (Williams' company) were contributing an additional $4,000,000, but that an

2   additional $4,000,000 was needed from Busbice/Olla.

3       55.     In December 2013, Williams, directly and through his counsel, Barry

4   J. Reiss, continued to press Busbice for an additional $4,000,000, representing that

5   the total $22,000,000 had to be fully funded by the end of the year, because the film

6   was scheduled to be released in early April 2014, and the producer and distributors

7   demanded confirmation that the full $22,000,000 was in the bank.

8       56.     On December 11, 2013, at the same time that Williams was attempting

9   to induce Busbice to invest the additional $4,000,000 in Luxe One, Williams sent

10  an e-mail to Busbice's counsel regarding the release of *Angels Sing* (in which

11  Busbice/Olla had invested with Williams through Moment Factory).  Williams' e-

12  mail represented that the release had "gone very well," that Lions Gate (the film's

13  distributors) reported that the film was "performing quite well on all platforms,"

14  and that they "already ha[d] a network sale in place for next year which show[ed]

15  how well [the film] was tracking[,]" and that Williams felt that both he and Busbice

16  would "be in good shape on this one."

17      57.     On December 13, 2013, through counsel, Williams sent Busbice a

18  fully executed agreement, dated September 16, 2013, entitled "Single Picture Prints

19  and Advertising Credit Facility Agreement – 'the Letters'" (the "Letters Credit

20  Facility Agreement") between and Luxe One and Big Screen, which purportedly

21  governed those parties' rights and obligations in relation to the film's P&A loan.

22      58.     In mid-December 2013, through counsel, Busbice asked Williams to

23  confirm certain information regarding the deal.  For example, Busbice asked for

24  confirmation that Luxe One had paid the $1,750,000 in "finishing funds" to Big

25  Screen and as a result owned 35 of the 400 authorized shares of Big Screen stock.

26  In addition, Busbice asked, among other things, for confirmation that Chart and

27  NLFI paid their respective additional $4,000,000 contributions and that the

28  aggregate sum of $18,000,000 had been funded to that point in time.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

59.     On December 16, 2013, William's counsel, in an e-mail to Busbice's counsel on which Williams was copied, confirmed among other things that:  (1) Chart had contributed its additional $4,000,000, bringing its total contribution to $10,000,000; (2) NLFI had contributed its additional $4,000,000, bringing its total contribution to $6,000,000; (3) Luxe One paid the $1,750,000 of finishing funds to Big Screen; and (4) Luxe One had documentation reflecting its ownership of 35 of the 400 authorized units of Big Screen equity.

60.     On December 18, 2013, Williams sent an e-mail to Busbice's counsel, with a simultaneous copy to his own counsel, attaching what was represented to be a Chase online statement reflecting Luxe One's bank account's balance from the day before, *i.e.* December 17, 2013 (the "Purported 12/17 Luxe One Balance Statement").  The Purported 12/17 Luxe One Balance Statement showed that on December 17, 2013, the present balance of Luxe One's Chase account was $18,014,609.46.

61.     Williams sent the Purported 12/17 Luxe One Balance Statement to convince Busbice that both Chart and NLFI had paid their additional $4,000,000 contributions, bringing their combined contributions to $16,000,000 (which, when combined with Busbice/Olla's earlier $2,000,000 contribution, would have brought the total to $18,000,000).

62.     On December 18, 2013, Williams sent Busbice's counsel, again with a simultaneous copy to his own counsel, another e-mail attaching what was represented to be copies of cancelled checks showing that Luxe One paid Big Screen the $1,750,000 in finishing funds from Luxe One's Chase Bank account to obtain the 35 shares of Big Screen's stock (the "Purported Big Screen Cancelled Checks").

63.     The Purported Big Screen Cancelled Checks reflected that:  (1) Luxe One paid the initial $250,000 amount of the finishing funds by check number 1007 from its Chase Bank account when the check (dated 11/4/13) was deposited and

22105507

- 15 -

COMPLAINT

1    cleared on November 6, 2013; and (2) Luxe One paid the remaining $1,500,000

2    amount by check number 1031 from its Chase Bank account when the check (dated

3    12/6/13) was deposited and cleared on December 10, 2013.

4         64.    Over the final two weeks of 2013, Williams and his counsel continued

5    to press Busbice for an additional $4,000,000 contribution, repeatedly stressing the

6    urgency of the situation.  At Williams' urging, and based on Williams'

7    representations regarding the deal, Busbice agreed to contribute the additional

8    $4,000,000.  Consequently, Olla entered into an Amendment to the Letters Term

9    Sheet with Luxe One that reflected Busbice/Olla's additional contribution and

10    amended the earlier agreement.

11         65.    On January 2, 2014, in direct reliance on all of the foregoing, Busbice,

12    through Olla, wire transferred $4,000,000 to Luxe One's Chase account.

13

14    F.    <u>In 2014, Williams Provides Inconsistent, Incomplete and Falsified Financial</u>

15              <u>Documentation, While Concealing Other Key Information</u>

16         66.    Throughout January and February and the first half of March 2014,

17    Busbice and his advisors repeatedly asked Williams to provide various documents

18    and other information to verify the *bona fides* of the Luxe One and Moment Factory

19    investments including, but not limited to, financial and accounting records for both

20    investments, a copy of the Letter of Direction that was to be signed by Lions Gate

21    for the Moment Factory deal, and information about Chart and its control persons.

22         67.    Williams and his coconspirators largely ignored or deflected these

23    requests with excuses and talk of other potential deals.  Despite Busbice's repeated

24    requests, Williams failed to provide any real accounting information related to the

25    Moment Factory investment, and also failed to provide a copy of the Letter of

26    Direction from Lions Gate assuring that the P&A loan would be paid in a first

27    position out of all distribution proceeds from *Angels Sing*.  Plaintiffs made repeated

28    requests for financial, accounting and business information regarding the Luxe One

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 16 -

COMPLAINT

1   transaction, including requests for specific information about the $10,000,000 co-

2   investor Chart or its control persons; however, Williams constantly stalled and

3   made excuses and no such information was provided.

4       68.    On March 19, 2014, Plaintiffs' accountant received a letter from

5   someone identified as "Carol Martin" on Legacy Film Crest, LLC letterhead (the

6   "3/19/14 Letter").  The 3/19/14 Letter was copied to Williams and Busbice and

7   purported to enclose "the financial information requested regarding Bill Busbice's

8   and/or Olla Production, LLC's investment in Luxe One, Inc."  The 3/19/14 Letter

9   enclosed purported Quick Book Reports and Chase Bank statements for July

10   through December 2013 (the "Purported Luxe One July-Dec. Financial Records").

11   The 3/19/14 Letter represented that "the same information regarding Moment

12   Factory" would be sent later in the week; however, as previously stated, no

13   information regarding Moment Factory was ever provided.

14       69.    In addition, on or about March 28, 2014, Williams furnished Plaintiffs'

15   accountant with what Williams represented were Luxe One's Chase account

16   statements for January and February 2014 (the "Purported Luxe One Jan-Feb

17   Statements").

18       70.    At first glance, the Purported Luxe One July-Dec. Financial Records

19   and the Purported Luxe One Jan-Feb Statements seemed to reflect a financial

20   picture generally consistent with the Luxe One investment described by Williams.

21   For example, the Purported Luxe One Jan-Feb Statements reflect that on July 1,

22   2013, two days before Busbice contributed his initial $2,000,000, there was

23   $8,000,000 in the Luxe One account (representing the $6,000,000 purportedly

24   contributed by Chart, and the $2,000,000 purportedly contributed by Williams).

25       71.    However, upon closer examination, the financial information Williams

26   provided in March 2014 proved to contradict the information that Williams

27   previously provided to Plaintiffs.  By way of example only, whereas the Purported

28   12/17 Luxe One Balance Statement sent by Williams on December 18, 2013

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 17 -

COMPLAINT

1  represented that there was $18,014,609.46 in the Luxe One account on December

2  17, 2013, the Purported Luxe One July-Dec. Financial Records reflected that there

3  was only $9,539,103.20 in the account on that very same date. (In reality, however,

4  as Busbice would later discover, there only was $112,945.09 in that account on

5  December 17, 2013.)

6      72.    In late March and in April 2014, Plaintiffs discovered other suspicious

7  items about both investments. For example, the checks in early November and

8  December 2013 purporting to represent the payment of $1,750,000 to Big Screen

9  for the equity interest in Big Screen, were not accurately set forth in the Purported

10 Luxe One July-Dec. Financial Records, and the Purported 10/28 Moment Factory

11 Balance Statement that was sent to Busbice on October 29, 2013, to show that

12 Williams had already invested his own $2,000,000, inexplicably listed the name

13 "Luxe One, Inc." instead of "Moment Factory, LLC" on page 2, as the apparent

14 account holder's name. There were many other inconsistencies and inaccuracies

15 contained in the Purported Luxe One July-Dec. Financial Records.

16

17     G.    The True Luxe One and Moment Factory Bank Statements Reveal

18                    Defendants' Massive Fraud

19     73.    In April 2014, based on these discrepancies, Defendants' ongoing

20 evasive behavior, and complete lack of responsiveness and transparency, Plaintiffs

21 obtained *bona fide* statements for Moment Factory's Chase account from October

22 2013 through March 2014, and bona fide statements for Luxe One's Chase accounts

23 from June 2013 through March 2014 (the "True MF/Luxe Bank Statements"). As a

24 result, Plaintiffs discovered, among other things, that contrary to the applicable

25 agreements and representations made by Williams, there was a second and

26 previously undisclosed bank account for Luxe One.

27     74.    The True MF/Luxe Bank Statements show that Defendants brazenly

28 misrepresented and concealed material facts regarding both the Luxe One and the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507                          - 18 -
                             COMPLAINT

Moment Factory investments, and had sent Busbice falsified bank records to induce Busbice/Olla to transfer $8,000,000 to the Moment Factory and Luxe One business accounts under Williams' control.  By way of example only, the True MF/Luxe Bank Statements reflect that:

- Contrary to Williams' representation in June 2013, Williams never contributed $2,000,000 (or any other amount) toward the P&A investment for *The Letters*, and Chart (to the extent that entity even exists) had not contributed $6,000,000 (or any other amount);

- Contrary to Defendants' repeated representations in December 2013, neither Williams nor Chart contributed an additional $4,000,000 (or any other amount) for the new and enhanced version of the P&A investment for *The Letters*;

- The Purported 12/17 Luxe One Balance Statement provided by Williams on December 18, 2013 was fraudulently prepared, as there was actually only $112,945.09 in the Luxe One account on December 17, 2013 (not $18,014,609.46 or even $9,539,103.20 as shown in the Purported Luxe One July-Dec. Financial Records);

- The Purported Big Screen Cancelled Checks provided by Williams on December 18, 2013 also were fraudulently prepared, as, among other things, the True MF/Luxe Bank Statements show no record of check number 1031, which according to the Purported Big Screen Cancelled Checks was the $1,500,000 check that cleared on December 10, 2013;

- Contrary to Williams' representations prior to October 30, 2013, Williams had not contributed $2,000,000 (or any other amount) toward the P&A investment for *Angels Sing* and there was no P&A campaign as Williams described;

- The Purported 10/28 Moment Factory Balance Statement provided by Williams on October 29, 2013 was fraudulently prepared, as there was

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

actually $0 in the Moment Factory account (not $1,903,150.24) until Olla contributed its $2,000,000;

- The film *Angels Sing* was never theatrically released, and following a small number of test screenings, went direct to video and video-on-demand; and

- Plaintiffs' funds (the only funds contributed toward the *Angels Sing* P&A) were never used for the purposes intended, and were misappropriated by Williams and those acting in concert with him for personal use, other activities and self-enrichment.

H.   The True MF/Luxe Bank Statements Reflect Secret, Unauthorized and Fraudulent Transfers

75.   The True MF/Luxe Bank Statements show that Williams and Brown secretly and without authorization expended enormous sums from the Moment Factory and Luxe One business accounts on personal matters and on matters completely unrelated to the purported P&A investments, and transferred huge sums to entities controlled by Williams and/or Brown and to other third parties for purposes unrelated to the purported P&A investments.

76.   On July 8, 2013, less than a week after Busbice wired the initial $2,000,000 to Luxe One's Chase Bank Account No. 222882939 (the "Luxe One 2939 Account"), Williams, without authorization or legitimate business purpose, transferred $100,000 from the Luxe One 2939 Account to an account held by Legacy, Williams' own company.  Williams similarly transferred at least another $275,000 from the Luxe One 2939 Account to Legacy in the following months. Williams also transferred funds from the Moment Factory Chase Bank account to Legacy without authorization or legitimate business purpose, including a $50,000 transfer on November 4, 2013.  In all, over $982,500 was transferred into the Legacy account from Plaintiffs' investments.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

77.     Also on July 8, 2013, Williams, without authorization or legitimate business purpose, transferred $50,000 from the Luxe One 2939 Account to Bipartisan Coalition, a corporation that Plaintiffs are informed and believe is owned and/or controlled by Williams.  Williams similarly transferred at least another $60,000 to Bipartisan Coalition from the Luxe One 2939 Account in the following months.  In all, at least $110,000 was transferred into the Bipartisan Coalition account from Plaintiffs' investments.

78.     Also on July 8, 2013, Williams transferred $10,000 from the Luxe One 2939 Account to another bank account in California that Williams and Brown secretly opened with Chase in Luxe One's name:  Chase Account No. 222881572 (the "Luxe One 1572 Account").  Both Williams and Brown were signatories on the Luxe One 1572 Account.

79.     Within a month, over $500,000 was transferred from the Luxe One 2939 Account to the Luxe One 1572 Account, and tens of thousands of dollars more were transferred from the one account to the other in the following months.

80.     The Luxe One 1572 Account also was funded by unauthorized transfers from the Moment Factory Chase Bank account.  For example, in November 2013, Williams, with Brown's knowledge and assistance, transferred over $100,000 from the Moment Factory account to the secret Luxe One 1572 Account.  In all, over $1,510,000 was transferred into the secret Luxe One 1572 Account from Plaintiffs' investments.

81.     As an actual signatory on the account, and as the real bank statements reflect, Brown had full access to and control over the Luxe One 1572 Account and essentially treated the account as his own personal piggy bank, freely spending the account's contents over time on unauthorized non-business items.

82.     As the real bank statements reflect, between July 1, 2013 and February 28, 2013, Defendant Highgate received at least $164,500 in transfers from the Luxe One and Moment Factory Chase Bank accounts.  These transfers, which were made

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 21 -

1    or directed by Williams, were made secretly and without authorization or legitimate

2    business purpose.

3         83.    In February and March 2014, Williams secretly and fraudulently

4    transferred over $725,000 from the Moment Factory Chase Bank account to

5    purchase a piece of real property located in Calabasas, Los Angeles County,

6    California with Assessor Parcel Nos. 2072-030-010, 2072-025-014, 2072-025-015,

7    2072-025-016, 2072-027-003, 2072-024-015, 2072-024-005 and 2072-024-016 (the

8    "Calabasas Property") in the name of Garuda Partners, Ltd., as Trustee of the

9    Mulholland Ridge Trust.  The funds went from the Moment Factory Chase bank

10   account to an escrow account with First American Title Company for the purchase

11   of the Calabasas Property.

12

13         I.    Plaintiffs Uncover the Fraudulently-Induced Nature and

14               Conversion of Plaintiffs' *Made in America* Investment

15         84.    Plaintiffs subsequently discovered the following facts regarding

16   Defendants' fraud and conversion in connection with the *Made in America*

17   investment:

18         • The Visions 7206 Account was opened on April 10, 2013, but did not

19            have any money in it until Ecibsub transferred $500,000 on April 26,

20            2013;

21         • The Purported 4/15/13 Wire Confirmation, representing that Williams

22            transferred $500,000 to the Visions 7206 Account on April 15, 2013,

23            was counterfeit and fraudulent;

24         • The Purported 4/24/13 Screenshot, representing that the Visions 7206

25            Account's available balance exceeded $500,000 as of April 24, 2013,

26            was counterfeit and fraudulent;

27         • On April 26, 2013 – the same day that Ecibsub transferred its

28            $500,000 to the Visions 7206 Account – $450,000 was immediately

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

rerouted to another Chase account held by Williams' wholly-owned company, Legacy;

- Another $35,000 was transferred from the Visions account to the Legacy account three days later on April 29, 2013;

- The Legacy account had a negative balance before it received the $450,000 from the Visions 7206 Account on April 26, 2013, and in the months following that transfer, Williams, by and through ATM Debit Card No. 6589, spent the money transferred from the 7206 Account on unauthorized, personal and non-business items; and

- As of May 1, 2014 – more than one year after Ecibsub's investment, Ecibsub's $500,000 wire transfer on April 26, 2013 has been the *only* deposit or other addition to the Visions 7206 Account, and the vast majority, if not all, of those funds were used for personal expenses and other items completely unrelated to the *Made in America* documentary.

### J.   The Fraudulent Nature of the *Left Behind* Investment

85.   Williams has provided no information regarding Olla's investment in the *Left Behind* deal since the investment was made.

86.   In May 2014, Plaintiffs first discovered that the film's producers had no record of Olla's investment under Olla's or Busbice's name.

87.   Plaintiffs are informed and believe, and on that basis allege, that Williams' representation that Olla's $2,400,000 wire transfer toward the investment would be governed by the Left Behind Agreement was false, and that Williams' representations and wire transfer instructions were fraudulently made so as to allow Williams and his co-conspirators to convert the wired funds for their own benefit.

88.   In addition, the True MF/Luxe Bank Statements reveal that Williams caused at least $300,000 to be paid out of the Luxe One accounts to LBI and caused

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   at least $500,000 to be paid to LBI's parent company, Cloud Ten or otherwise

2   relating to the *Left Behind* film, notwithstanding the fact that Luxe One was a

3   special purpose entity funded entirely by Busbice/Olla for the P&A investment in a

4   different film (*i.e.*, *The Letters*).

5

6   K.   Defendants Have Already Wrongfully Stripped the Business Bank Accounts

7        of at Least $7,000,000

8   89.   Although the full extent of Defendants' theft and conversion is not yet

9   known, at this point it appears that Defendants have stripped the various investment

10  entities' respective bank accounts of at least $7,000,000 through unauthorized

11  spending and fraudulent transfers.

12  90.   Plaintiffs transferred a total of $6,000,000 to the Luxe One 2939

13  Account.  Today, only $683,518.51 remains.

14  91.   Plaintiffs transferred $2,000,000 to the Moment Factory bank account.

15  Today, only $62,904.09 remains.

16  92.   Plaintiffs transferred $500,000 to the Visions 7206 Account.  Today,

17  only $50 remains.

18  93.   From March 2013 through April 2014, at least $1,510,000 of

19  Plaintiffs' money was transferred from these accounts to fund the secretly opened

20  and concealed Luxe One 1572 Account controlled by Brown.  Today, there is only

21  $40 left in that account.  The bank records show that Brown had full access to that

22  account, including an ATM and Debit Card on the account, and nearly completely

23  drained all funds in the account on personal expenses and to support his lavish and

24  jet-setting lifestyle.  Brown's expenditures from the Luxe One 1572 Account during

25  this time period include:  cash withdrawals of at least $86,000, ATM and Debit

26  Card withdrawals of at least $66,000, payments totaling $185,000 to personal

27  lawyers unrelated to Plaintiffs' investments; tens of thousands of dollars at fancy

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

1   hotels and restaurants across the country; thousands of dollars more for personal

2   expenditures; and hundreds of thousands of other transfers and payments.

3          94.    From March 2013 through April 2014, approximately $1,000,000 of

4   Plaintiffs' money was transferred from the Visions, Moment Factory and Luxe One

5   bank accounts to the bank account controlled by Williams in the name of Legacy

6   (Williams' wholly-owned entity), which had a negative balance before Plaintiffs'

7   money began flowing in.  Today, only $34,201.17 remains in the Legacy account.

8   The bank records show that Williams had sole and exclusive access to that account

9   and spent nearly $1,000,000 of Plaintiffs' money through that account to cover his

10  own personal expenses, to support his own lavish lifestyle and for matters

11  completely unrelated to the intended use of Plaintiffs' investment.  Williams'

12  expenditures from the Legacy account during this time period include:  hundreds of

13  thousands of cash withdrawals, ATM and Debit Card withdrawals of at least

14  $214,000, an $87,825 payment at a Jaguar dealership; an $89,394 withdrawal to

15  pay down loans on his residence and boat; at least $37,658 in payments for his

16  child's private school tuition; a $22,354 payment for an unidentified time-share

17  property, over $4,000 at Louis Vuitton and over $5,000 at Neiman Marcus; tens of

18  thousands of dollars on family vacations, hotels, restaurants and car rentals; and

19  numerous other such expenditures.

20         95.    The unauthorized use of funds described hereinabove, does not include

21  the millions of dollars misappropriated from the primary accounts of Luxe One and

22  Moment Factory. In those accounts, Williams again took hundreds of thousands of

23  dollars in the form of cash withdrawals, check payments and ATM and Debit Card

24  payments, and expended and/or transferred millions of dollars for purposes

25  unrelated to the investments.

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  L.      Alter Ego Liability Among Williams and the Williams-Related Entities

2      96.      Plaintiffs are informed and believe, and on that basis allege, that at all

3  relevant times mentioned herein, there existed a unity of interest and ownership

4  between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment

5  Factory, Luxe One, Visions, and Garuda, such that any individuality and

6  separateness between these defendants ceased, with each being the alter ego of the

7  other, in that Williams is believed to have, among other things, secretly,

8  fraudulently and regularly transferred substantial funds from one account to another

9  without any regard for corporate boundaries or any other limitations; commingled

10  his and these entities' respective funds; used these entities' assets for his own

11  personal uses; caused these entities' respective assets to be transferred to him and

12  the other entities without substantial consideration; moved assets between and

13  among himself and the entities in order to avoid and evade payment obligations and

14  to suit his personal whims and expenditures; and failed to maintain minutes or other

15  corporate records and keep legitimate accounting books and financial records.

16  Given these and other facts and circumstances, adherence to the fiction of the

17  separate existence of these entities from Williams and from each other would

18  permit an abuse of the corporate privilege and would promote injustice.

19

20  **FIRST CLAIM FOR RELIEF**

21  **For Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

22  **(Against Defendant Williams, and his Alter Egos Legacy, Bipartisan Coalition,**

23  **Highgate, Moment Factory, Luxe One, Visions, and Garuda)**

24      97.      Plaintiffs repeat and incorporate herein by this reference paragraphs 1

25  through 96, inclusive, as if fully set forth herein.

26      98.      As hereinabove alleged, Williams fraudulently induced Plaintiffs to

27  transfer a total of $10,900,000 in exchange for equity ownership in various entities

28  for purported rights to participate in certain feature films' net revenues, by

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

1  intentionally misrepresenting material facts regarding the investments and by

2  actively concealing the truth regarding the investments, so that Williams and his

3  cohorts could convert Plaintiffs' funds for their own unauthorized and wrongful use

4  and enjoyment.

5       99.    Busbice (through Olla) transferred $2,000,000 to a Luxe One Chase

6  bank account under Williams' control on July 3, 2013, based on Williams'

7  representations in June and early July 2013 that, *inter alia*:  (a) Williams had an

8  agreement in place with Big Screen to make a $10,000,000 P&A loan for *The*

9  *Letters*, which was to be repaid with interest from the film's net revenues and was

10  to be secured in first position by such revenues; (b) Williams, through his company

11  NLFI, had already contributed $2,000,000 of his own money to Luxe One for

12  purposes of the deal; (c) Chart already contributed $6,000,000 to Luxe One for

13  purposes of the deal; (d) all of the representations regarding the purported P&A

14  loan opportunity contained in the Letters Term Sheet were true and accurate; and

15  (e) all of the funds contributed to Luxe One were for the sole purpose of making the

16  purported P&A loan for *The Letters'* release, and the funds would not be used for

17  another purpose.

18       100.   Those representations were made in connection the purchase and sale

19  of a security, as that term is used in the Exchange Act.

20       101.   Based on the True MF/Luxe Bank Statements and other facts alleged

21  hereinabove, each of those representations was false.

22       102.   Williams knew that each those representations were false when each

23  was made.  Alternatively, Williams made the representations with extreme

24  recklessness and without any regard for their truth.

25       103.   Williams intended that Plaintiffs rely upon each of those

26  representations, and Williams made them to fraudulently induce Busbice/Olla to

27  part with their $2,000,000.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

104.   Each of those representations was material to Plaintiffs' decision to take part in the investment presented by Williams.  Plaintiffs would not have invested had they known the truth of the representations' matters.

105.   As Williams' intended, Plaintiffs actually and reasonably relied upon each of those representations in parting with their $2,000,000 on July 3, 2013.

106.   Busbice (through Olla) transferred an additional $4,000,000 to the Luxe One Chase Bank account under Williams' control on January 2, 2014, based on those same representations, as well as additional representations made or directed by Williams, including, *inter alia*:  (a) Williams' representation in the Fall of 2013 that because *The Letters* was viewed as such a strong film, he was able to negotiate a new and enhanced deal with Big Screen to loan up to $22,000,000 for the film's P&A spend and to pay Big Screen $1,750,000 in finishing funds in return for an equity stake in Big Screen; (b) Williams' representations throughout the Fall of 2013 and continuing through December 2013 that an additional $12,000,000 was needed to carry out the P&A investment opportunity for *The Letters*, but that Williams (through NLFI) and Chart were both contributing an additional $4,000,000, leaving a $4,000,000 deficit needed from Plaintiffs; (c) that the Letters Credit Facility Agreement presented by Williams to Plaintiffs on or about December 13, 2013 was a *bona fide* fully executed agreement between Luxe One and Big Screen; (d) Williams' counsel's e-mail on December 16, 2013 and numerous confirmatory statements representing that Chart and NLFI contributed their additional $4,000,000, that Luxe One paid the $1,750,000 in finishing funds to Big Screen, and that Luxe One had documentation reflecting its ownership of 35 of the 400 authorized shares of Big Screen stock; (e) Williams' representation on December 18, 2013 that the Purported 12/17 Luxe One Balance Statement accurately reflected the Luxe One Chase Bank account's current balance as of December 17, 2013; and (f) Williams' representation on December 18, 2013 that the Purported Big Screen Cancelled Checks were genuine copies of cancelled

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    checks reflecting Luxe One's payment of the $1,750,000 in finishing funds to Big

2    Screen out of existing funds prior to Plaintiffs' $4,000,000 investment.

3         107.   Those additional representations were made in connection the

4    purchase and sale of a security as that term is used in the Exchange Act.

5         108.   Based on the True MF/Luxe Bank Statements and other facts alleged

6    hereinabove, each of those representations was false.

7         109.   Williams knew that each those representations were false when each

8    was made.  Alternatively, Williams made the representations with extreme

9    recklessness and without any regard for their truth.

10        110.   Williams intended that Plaintiffs rely upon each of those

11   representations, and Williams made them to fraudulently induce Busbice/Olla to

12   part with their additional $4,000,000.

13        111.   Each of those representations was material to Plaintiffs' decision to

14   participate further in the investment presented by Williams.  Plaintiffs would not

15   have invested had they known the truth of the representations' matters.

16        112.   As Williams intended, Plaintiffs actually and reasonably relied upon

17   each of these representations in investing an additional $4,000,000 on January 2,

18   2014.

19        113.   Busbice (through Olla) transferred $2,000,000 to a Moment Factory

20   Chase Bank account under Williams' control on October 30, 2013, based on

21   Williams' representations in late October 2013 that, *inter alia*:  (a) Williams had a

22   deal with DF Indie to make a $4,000,000 P&A loan for *Angels Sing*, which was

23   needed for the marketing and advertising of the film and was to be repaid with

24   interest from the film's net revenues, and secured in a first position by such

25   revenues; (b) Williams, through his company Legacy, had already contributed

26   $2,000,000 of his own money to Moment Factory for purposes of the deal; (c) all of

27   the representations regarding the purported P&A loan opportunity contained in the

28   *Angels Sing* Term Sheet were true and accurate; (d) DF Indie and Lions Gate had

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  signed or would be signing the Angels Sing Credit Facility Agreement and Letter of

2  Direction; (e) that the marketing and budget information for the film provided by

3  Williams on October 25, 2013 was genuine and the film was expected to have a

4  wide initial theatrical release to more than 1,000 screens; (f) the Purported 10/28

5  Moment Factory Balance Statement furnished by Williams on October 29, 2013

6  accurately reflected the Moment Factory Chase bank account's current balance as

7  of October 28, 2013; and (g) all of the funds contributed to Moment Factory were

8  for the sole purpose of making the purported P&A loan for *Angels Sing's* release,

9  and that the funds would not be used for another purpose.

10      114.   Those representations were made in connection the purchase and sale

11  of a security as that term is used in the Exchange Act.

12      115.   Based on the True MF/Luxe Bank Statements and other facts alleged

13  hereinabove, each of those representations was false.

14      116.   Williams knew that each those representations were false when each

15  was made.  Alternatively, Williams made the representations with extreme

16  recklessness and without any regard for their truth.

17      117.   Williams intended that Plaintiffs rely upon each of those

18  representations, and Williams made them to fraudulently induce Busbice/Olla to

19  part with this additional $2,000,000.

20      118.   Each of those representations was material to Plaintiffs' decision to

21  participate in the investment presented by Williams.  Plaintiffs would not have

22  invested had they known the truth of the representations' matters.

23      119.   As Williams intended, Plaintiffs actually and reasonably relied upon

24  each of those representations in investing $2,000,000 on October 30, 2013.

25      120.   Busbice (through Olla) invested $2,400,000 in the *Left Behind*

26  investment on August 12, 2013 based on Williams' representations in August 2013

27  that, *inter alia*:  (a) Williams was funding most of the film's $15,000,000 budget

28  himself; (b) the Left Behind Agreement would govern Olla's rights and obligations

1    vis-à-vis the film's producers and therefore entitle Olla to, among other things, the

2    Participation Interest identified in the agreement; and (c) the *Left Behind* investment

3    would be registered in Olla's name and Olla, rather than Williams or any other

4    defendant or controlled entity, would receive the benefits of that investment.

5         121.   Those representations were made in connection the purchase or sale of

6    a security as that term is used in the Exchange Act.

7         122.   Based on all of the facts alleged hereinabove, each of those

8    representations was false.

9         123.   Williams knew that each of those representations were false when each

10   was made.  Alternatively, Williams made the representations with extreme

11   recklessness and without any regard for their truth.

12        124.   Williams intended that Plaintiffs rely upon each of those

13   representations, and Williams made them to fraudulently induce Busbice/Olla to

14   part with their $2,400,000.

15        125.   Each of those representations was material to Plaintiffs' decision to

16   participate in the *Left Behind* investment.  Plaintiffs would not have invested had

17   they known the truth of the representations' matters.

18        126.   As Williams intended, Plaintiffs actually and reasonably relied upon

19   each of those representations in parting with their $2,400,000 on October 12, 2013.

20        127.   Ecibsub invested $500,000 in the *Made in America* investment on

21   April 26, 2013 based on Williams' representations in April 2013 that, *inter alia*:  (a)

22   Williams was contributing his own $500,000 toward the investment; (b) the

23   Purported 4/15/13 Wire Confirmation sent by Williams to reflect his own $500,000

24   investment was genuine; (c) the Purported 4/24/13 Screenshot sent by Williams to

25   reflect his own $500,000 investment was genuine; and (d) all invested funds would

26   be applied to *Made in America's* production budget and inure to the benefit of the

27   film and the parties' equity ownership in Visions.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 31 -

COMPLAINT

128.   Those representations were made in connection with the purchase and sale of a security as that term is used in the Exchange Act.

129.   Based on all of the facts alleged hereinabove, each of those representations was false.

130.   Williams knew that each those representations were false when each was made.  Alternatively, Williams made the representations with extreme recklessness and without any regard for their truth.

131.   Williams intended that Plaintiffs rely upon each of those representations, and Williams made them to fraudulently induce Ecibsub to part with its $500,000.

132.   Each of those representations was material to Plaintiffs' decision to participate in the *Made in America* investment.  Plaintiffs would not have invested had they known the truth of the representations' matters.

133.   As Williams intended, Plaintiffs actually and reasonably relied upon each of those representations in parting with their $500,000 on April 26, 2013.

134.   At all relevant times, Williams also actively and deliberately concealed the true facts regarding the above-alleged purported investments by, *inter alia*:  (a) failing to provide documents and other information, including accounting and financial records and key contracts, despite Plaintiffs' repeated requests for such information; (b) ignoring and deflecting Plaintiffs' repeated requests for such information; (c) creating and providing the 3/19/14 Letter and the enclosed Purported Luxe One July-Dec. Financial Records, which were proved materially false by the True MF/Luxe Bank Statements; and (d) creating and sending the Purported Luxe One Jan-Feb Statements, which were proved materially false by the True MF/Luxe Bank Statements.

135.   Williams intended to conceal the true facts regarding the above-alleged deals to induce Plaintiffs to part with their funds and then to prevent Plaintiffs from

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    discovering the truth, so that Williams could continue to wrongfully convert

2    Plaintiffs' funds and enrich himself and his cohorts without being detected.

3        136.   Plaintiffs were and remained unaware of the concealed and true facts

4    regarding the above-alleged investments until after Plaintiffs received the True

5    MF/Luxe Bank Statements.

6        137.   Despite demand, Williams has not returned and Plaintiffs have not

7    recouped any part of the $10,900,000 transferred for the above-alleged investments.

8        138.   In committing the above-alleged misconduct, Williams directly and

9    indirectly used the means and instrumentalities of interstate commerce, including,

10    but not limited to, the United States mails and interstate wire and telephone

11    communications.

12        139.   By virtue of the foregoing, Williams has violated Section 10(b) of the

13    Exchange Act and Rule 10b-5 promulgated thereunder.

14        140.   The statutory safe harbor provided for forward-looking statements

15    under certain circumstances does not apply to any of the allegedly false statements

16    pleaded in this complaint.  The statements alleged to be false and misleading herein

17    all relate to then-existing facts and conditions.  In addition, to the extent certain of

18    the statements alleged to be false may be characterized as forward looking, they

19    were not identified as "forward-looking statements" when made and there were no

20    meaningful cautionary statements identifying important factors that could cause

21    actual results to differ materially from those in the purportedly forward-looking

22    statements.  In the alternative, to the extent that the statutory safe harbor is

23    determined to apply to any forward-looking statements pleaded herein, Williams is

24    liable for those false forward-looking statements because at the time each of those

25    forward-looking statements was made, Williams had actual knowledge that the

26    forward-looking statement was materially false or misleading.

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

141.   As a direct and proximate result of Williams' wrongful conduct, Plaintiffs have sustained damages in an amount not less than $10,900,000, the exact sum to be proven at trial.

142.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, such that any individuality and separateness between these defendants ceased, and that adherence to the fiction of the separate existence of these entities from Williams and from each other would permit an abuse of the corporate privilege and would promote injustice.

## SECOND CLAIM FOR RELIEF

**For Violation of California Corporations Code Section 25401**

**(Against Defendant Williams, and his Alter Egos Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda)**

143.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

144.   By virtue of the foregoing, Williams has violated California Corporations Code section 25401, and Plaintiffs are entitled to rescind the above-alleged securities purchases pursuant to California Corporations Code section 25501, and to have the total $10,900,000 purchase price reimbursed.

145.   Before entry of judgment, Plaintiffs will tender the securities, from which, to date, Plaintiffs have received no income.

146.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, such that any individuality and separateness between these defendants ceased and that adherence to the fiction of the separate existence

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   of these entities from Williams and from each other would permit an abuse of the

2   corporate privilege and would promote injustice.

3

4   ### THIRD CLAIM FOR RELIEF

5   ### For Common Law Fraud

6   **(Against Defendant Williams, and his Alter Egos Legacy, Bipartisan Coalition,**

7   **Highgate, Moment Factory, Luxe One, Visions and Garuda)**

8       147.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1

9   through 142, inclusive, as if fully set forth herein.

10       148.   As hereinabove alleged, Williams fraudulently induced Plaintiffs to

11   transfer a total of $10,900,000 for purported rights to participate in the proceeds

12   derived from the distribution and commercial exploitation of certain feature films'

13   in the form of priority loan repayments plus interest and net revenues, by

14   intentionally misrepresenting material facts regarding the investments and by

15   actively concealing the truth regarding the investments, so that Williams and his

16   cohorts could convert Plaintiffs' funds for their own unauthorized and wrongful use

17   and enjoyment.

18       149.   By virtue of the foregoing, Williams has committed common law

19   fraud.

20       150.   As a direct and proximate result of Williams' fraudulent

21   misrepresentations and concealment, Plaintiffs have sustained damages in an

22   amount not less than $10,900,000, the exact sum to be proven at trial.

23       151.   Williams' conduct, as alleged herein, was done willfully and with a

24   conscious disregard of Plaintiffs' rights and with intent to injure, so as to constitute

25   oppression, fraud and/or malice under California Civil Code section 3294, entitling

26   Plaintiffs to punitive damages.

27       152.   As alleged hereinabove, Plaintiffs are informed and believe, and on

28   that basis allege, that there existed a unity of interest and ownership between and

TROUTMAN SANDERS LLP
3 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe

2  One, Visions and Garuda, such that any individuality and separateness between

3  these defendants ceased and that adherence to the fiction of the separate existence

4  of these entities from Williams and from each other would permit an abuse of the

5  corporate privilege and would promote injustice.

6

7  ## FOURTH CLAIM FOR RELIEF

8  ### For Breach of Fiduciary Duty

9  **(Against Defendant Williams, and his Alter Egos Legacy, Bipartisan Coalition,**

10 **Highgate, Moment Factory, Luxe One, Visions and Garuda)**

11      153.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1

12 through 142, inclusive, as if fully set forth herein.

13      154.   At all relevant times, a fiduciary relationship existed between Williams

14 and Busbice in connection with the above-alleged investments.  This relationship

15 existed by virtue of the facts that, *inter alia*:  (a) Williams held himself out as an

16 experienced film industry insider, and claimed to have and control the purported

17 deals with the films' producers; (b) Williams structured the deals, made all the

18 arrangements and controlled the finances of each deal; (c)  Williams was the

19 supposed managing director and officer of Luxe One, and Busbice (through Olla)

20 was merely a minority shareholder and passive participant; (d) Williams (through

21 Legacy) and Busbice (through Olla) were purported co-members of Moment

22 Factory; however, Williams in fact exercised complete control over the company;

23 (e) Williams exercised full control over the businesses' bank accounts and financial

24 affairs, as well as their purported negotiations and dealings with others in

25 connection with movie deals; (f) Williams exercised complete control over the

26 companies and their affairs, whereas Busbice's role was that of passive investor;

27 and (g) the parties understood that Busbice was relying on Williams' purported

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  experience and expertise to manage the business affairs of the investment entities

2  honestly, faithfully and skillfully.

3      155.   As a result of that fiduciary relationship, at all relevant times Williams

4  owed Plaintiffs the fiduciary duties of good faith, due care and loyalty.

5      156.   As hereinabove alleged, Williams induced Plaintiffs to transfer a total

6  of $10,900,000 for purported rights to participate in certain feature films' net

7  revenues, by intentionally misrepresenting material facts regarding the investments

8  and by actively concealing the truth regarding the investments, so that Williams and

9  his cohorts could convert Plaintiffs' funds for their own unauthorized and wrongful

10  use and enjoyment.

11      157.   By engaging in the above-alleged acts and omissions, Williams

12  breached his fiduciary duties to Plaintiffs.

13      158.   As a direct and proximate result of Williams' breaches, Plaintiffs have

14  sustained damages in an amount not less than $10,900,000, the exact sum to be

15  proven at trial.

16      159.   Williams' breaches of fiduciary duties owed to Plaintiffs were

17  committed with fraud, oppression, and/or malice, entitling Plaintiffs to punitive

18  damages under California Civil Code section 3294.

19      160.   As alleged hereinabove, Plaintiffs are informed and believe, and on

20  that basis allege, that there existed a unity of interest and ownership between and

21  among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe

22  One, Visions and Garuda, such that any individuality and separateness between

23  these defendants ceased and that adherence to the fiction of the separate existence

24  of these entities from Williams and from each other would permit an abuse of the

25  corporate privilege and would promote injustice.

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# FIFTH CLAIM FOR RELIEF

### For Constructive Fraud

### (Against Defendant Williams and his Alter Egos Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Vision and Garuda)

161.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

162.   At all relevant times, a fiduciary relationship existed between Williams and Busbice in connection with the above-alleged investments.  This relationship existed by virtue of the facts that, *inter alia*:  (a) Williams held himself out as an experienced film industry insider, and claimed to have and control the purported deals with the films' producers; (b) Williams structured the deals, made all the arrangements and controlled the finances of each deal; (c)  Williams was the supposed managing director and officer of Luxe One, and Busbice (through Olla) was merely a minority shareholder and passive participant; (d) Williams (through Legacy) and Busbice (through Olla) were purported co-members of Moment Factory; however, Williams in fact exercised complete control over the company; (e) Williams exercised full control over the businesses' bank accounts and financial affairs, as well as their purported negotiations and dealings with others in connection with movie deals; (f) Williams exercised complete control over the companies and their affairs, whereas Busbice's role was that of passive investor; and (g) the parties understood that Busbice was relying on Williams' purported experience and expertise to manage the business affairs of the investment entities honestly, faithfully and skillfully.

163.   As hereinabove alleged, Williams induced Plaintiffs to transfer a total of $10,900,000 for purported rights to participate in the net revenues of certain feature films by misrepresenting material facts regarding the investments and by failing to disclose material facts regarding the investments.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 38 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

164.   As a direct and proximate result of Williams' above-alleged misrepresentations, failures to disclose and breaches of duty, Williams has gained an advantage at Plaintiffs' expense.

165.   Plaintiffs allege, in the alternative, that even if Williams' conduct did not constitute actual fraud, it constituted constructive fraud.

166.   As a direct and proximate result of such constructive fraud, Plaintiffs have sustained damages in an amount not less than $10,900,000, the exact sum to be proven at trial.

167.   Williams' above-alleged conduct was carried out with fraud, oppression, and/or malice, entitling Plaintiffs to punitive damages under California Civil Code section 3294.

168.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, such that any individuality and separateness between these defendants ceased and that adherence to the fiction of the separate existence of these entities from Williams and from each other would permit an abuse of the corporate privilege and would promote injustice.

## SIXTH CLAIM FOR RELIEF

### For Negligent Misrepresentation

### (Against Defendant Williams and his Alter Egos Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda)

169.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

170.   At all relevant times, a fiduciary relationship existed between Williams and Busbice in connection with the above-alleged investments.  This relationship existed by virtue of the facts that, *inter alia*:  (a) Williams held himself out as an

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

experienced film industry insider, and claimed to have and control the purported deals with the films' producers; (b) Williams structured the deals, made all the arrangements and controlled the finances of each deal; (c) Williams was the supposed managing director and officer of Luxe One, and Busbice (through Olla) was merely a minority shareholder and passive participant; (d) Williams (through Legacy) and Busbice (through Olla) were purported co-members of Moment Factory; however, Williams in fact exercised complete control over the company; (e) Williams exercised full control over the businesses' bank accounts and financial affairs, as well as their purported negotiations and dealings with others in connection with movie deals; (f) Williams exercised complete control over the companies and their affairs, whereas Busbice's role was that of passive investor; and (g) the parties understood that Busbice was relying on Williams' purported experience and expertise to manage the business affairs of the investment entities honestly, faithfully and skillfully.

171.   As hereinabove alleged, Williams induced Plaintiffs to transfer a total of $10,900,000 for purported rights to participate in the net revenues of certain feature films by misrepresenting material facts regarding the investments and by failing to disclose material facts regarding the investments.

172.   Plaintiffs allege, in the alternative, that if Williams did not make the above-alleged misrepresentations intentionally, then Williams had no reasonable grounds for believing that those representations were true when made and made such representations negligently.

173.   As a direct and proximate result of such negligence, Plaintiffs have sustained damages in an amount not less than $10,900,000, the exact sum to be proven at trial.

174.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe

One, Visions and Garuda, such that any individuality and separateness between these defendants ceased and that adherence to the fiction of the separate existence of these entities from Williams and from each other would permit an abuse of the corporate privilege and would promote injustice.

## **SEVENTH CLAIM FOR RELIEF**

### **For Civil Conspiracy to Defraud**

**(Against Defendants Williams, Brown, and Seppala, and Williams' Alter Egos Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, and Does 1-50)**

175.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

176.   Defendants Williams, Brown and Seppala, and each of them, knowingly and willfully conspired and agreed among themselves to fraudulently induce Plaintiffs to make the hereinabove alleged investments totaling $10,900,000.

177.   As hereinabove alleged, Williams fraudulently induced Plaintiffs' investments by intentionally misrepresenting material facts regarding the investments and by actively concealing the truth regarding the investments.  These misrepresentations and omissions were done pursuant to, and in furtherance of, the above-alleged conspiracy and agreement.

178.   Defendant Seppala furthered the conspiracy by, *inter alia*, misrepresenting that Visions had received Williams' purported $500,000 contribution toward the initial *Made in America* deal, by failing to make certain that Plaintiffs' investment was fully and directly utilized for the purpose of the production of *Made in America* and for no other purpose, and by actively concealing the fraud.

179.   Defendant Brown furthered the conspiracy by, *inter alia*: (a) misrepresenting that Williams was investing his own $500,000 in Visions for the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*Made in America* deal; (b) by failing to make certain that Plaintiffs' investment was fully and directly utilized for the purpose of production of *Made in America* and for no other purpose; (c) by knowingly participating in the conversion and dissipation of Plaintiffs' funds; (d) by regularly meeting with Busbice, alone or together with Williams (including an in-person meeting in Los Angeles County), and misrepresenting the status of the films, the use of the proceeds, the nature and extent of the financial deception being perpetrated on Plaintiffs and the status of Plaintiffs' investments; and (e) by actively concealing defendants' fraud and failing to disclose the true facts regarding such matters and the other facts and circumstances set forth herein.

180.   Defendants continue to act in furtherance of the above-described conspiracy by continuing to conceal and misrepresent the nature and extent of their conspiracy, fraud and conversion.

181.   As a direct and proximate result of the above-alleged conspiracy and wrongful acts, Plaintiffs have sustained damages in an amount not less than $10,900,000, the exact sum to be proven at trial.

182.   Defendants' conduct, as herein alleged, was done willfully and with a conscious disregard of Plaintiffs' rights and with intent to injure, so as to constitute oppression, fraud and/or malice under California Civil Code section 3294, entitling Plaintiffs to punitive damages.

183.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, such that any individuality and separateness between these defendants ceased and that adherence to the fiction of the separate existence of these entities from Williams and from each other would permit an abuse of the corporate privilege and would promote injustice.

# EIGHTH CLAIM FOR RELIEF

## For Accounting

### (Against Defendants Williams, Luxe One, Moment Factory, and Visions)

184.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

185.   At all relevant times, a fiduciary relationship existed between Williams and Busbice in connection with the above-alleged investments.  This relationship existed by virtue of the facts that, *inter alia*:  (a) Williams held himself out as an experienced film industry insider, and claimed to have and control the purported deals with the films' producers; (b) Williams structured the deals, made all the arrangements and controlled the finances of each deal; (c)  Williams was the supposed managing director and officer of Luxe One, and Busbice (through Olla) was merely a minority shareholder and passive participant; (d) Williams (through Legacy) and Busbice (through Olla) were purported co-members of Moment Factory; however, Williams in fact exercised complete control over the company; (e) Williams exercised full control over the businesses' bank accounts and financial affairs, as well as their purported negotiations and dealings with others in connection with movie deals; (f) Williams exercised complete control over the companies and their affairs, whereas Busbice's role was that of passive investor; and (g) the parties understood that Busbice was relying on Williams' purported experience and expertise to manage the business affairs of the investment entities honestly, faithfully and skillfully.

186.   As a result of that fiduciary relationship, at all relevant times Williams owed Plaintiffs the fiduciary duties of good faith, due care and loyalty.

187.   Williams and his alter-ego entities Visions, Moment Factory and Luxe One also owed Plaintiffs the duty to account for Plaintiffs' investments and these dDefendants' use of Plaintiffs' funds.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   188.   Williams, Visions, Moment Factory and Luxe One have wrongfully
2   and without proper authorization received and dealt with funds invested by and
3   rightfully belonging to Plaintiffs.

4   189.   Williams, Visions, Moment Factory and Luxe One owe, but have
5   refused to provide, an accounting of such funds.

6   190.   Plaintiffs demand that an account be taken of all of Defendants'
7   dealings and transactions with and relating to the $10,900,000 invested by Plaintiffs
8   from April 1, 2013 to the present, and that a judgment be entered in favor of
9   Plaintiffs and against these defendants for any and all sums found to be rightfully
10  due to Plaintiffs.

11

12                        **NINTH CLAIM FOR RELIEF**
13                  **For Breach of Contract Implied By Law**
14   **(Against Defendants Williams, and his Alter Egos Legacy, Bipartisan**
15   **Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda)**

16   191.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1
17  through 142, inclusive, as if fully set forth herein.

18   192.   As hereinabove alleged, Williams fraudulently induced Plaintiffs to
19  transfer a total of $10,900,000 for certain purported investments, by intentionally
20  misrepresenting material facts regarding the investments and by actively concealing
21  the truth regarding the investments, so that Williams and his cohorts could convert
22  Plaintiffs' funds for their own unauthorized and wrongful use and enjoyment.

23   193.   As a result of such fraud and misconduct, the law implies a promise on
24  Williams' part to return or repay the $10,900,000 to Plaintiffs.

25   194.   Defendant Williams has not returned, and Plaintiffs have not recouped,
26  any part of the $10,900,000 transferred for the purported investments.

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 44 -

COMPLAINT

195.   As a direct and proximate result of the above-alleged misconduct and breach of the implied promise, Plaintiffs have sustained damages in an amount not less than $10,900,000, the exact sum to be proven at trial.

196.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, such that any individuality and separateness between these defendants ceased and that adherence to the fiction of the separate existence of these entities from Williams and from each other would permit an abuse of the corporate privilege and would promote injustice.

## TENTH CLAIM FOR RELIEF

### For Conversion

**(Against Defendants Williams, and his Alter Egos Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda)**

197.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

198.   Defendant Williams intentionally converted $10,900,000 of Plaintiffs' money for his own use, purposes and personal gain.

199.   Williams' conversion was done secretly, without authorization, and without Plaintiffs' knowledge or consent.

200.   Williams has not returned, and Plaintiffs have not recouped any part of the wrongfully converted funds.

201.   As a direct and proximate result of Williams' conversion, Plaintiffs have suffered damages in an amount not less than $10,900,000, the exact sum to be proven at trial.

202.   Williams' conduct, as alleged herein, was done willfully and with a conscious disregard of Plaintiffs' rights, so as to constitute oppression, fraud and/or malice under California Civil Code § 3294, entitling Plaintiffs to punitive damages.

203.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, such that any individuality and separateness between these defendants ceased and that adherence to the fiction of the separate existence of these entities from Williams and from each other would permit an abuse of the corporate privilege and would promote injustice.

## ELEVENTH CLAIM FOR RELIEF

### For Conversion

### (Against Defendant Brown)

204.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein

205.   As reflected in the True MF/Luxe Bank Statements, Defendant Brown, for his own use, purposes and personal gain, intentionally converted specific sums from the Luxe One 1572 Account through his use of ATM Debit Card 1507 and cash withdrawals from the account, which sums, in their aggregate, exceed $1,500,000.  Such expenditures include, without limitation:  payments totaling $185,000 to his own personal lawyers; tens of thousands of dollars at fancy hotels and restaurants across the country; thousands of dollars at more mundane establishments such as "Star Liquor," "CVS," "TJ Maxx," "Chipotle"; and numerous other such personal expenditures.

206.   Brown's conversion was done secretly, without authorization, and without Plaintiffs' knowledge or consent.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

207.   Brown has not returned, and Plaintiffs have not recouped any part of the wrongfully converted funds.

208.   As a direct and proximate result of Brown's conversion, Plaintiffs have suffered damages in an amount not less than $1,500,000, the exact sum to be proven at trial.

209.   Brown's conduct, as alleged herein, was done willfully and with a conscious disregard of Plaintiffs' rights, so as to constitute oppression, fraud and/or malice under California Civil Code § 3294, entitling Plaintiffs to punitive damages.

## TWELFTH CLAIM FOR RELIEF

### For Imposition of a Constructive Trust

**(Against Defendant Williams and his Alter Egos Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda)**

210.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

211.   Defendant Williams fraudulently converted $10,900,000 of Plaintiffs' money for his own use, purposes and personal gain.

212.   Williams has not returned, and Plaintiffs have not recouped, any part of the $10,900,000.

213.   By virtue of Williams' wrongful acts, he holds the converted funds, in the amount of $10,900,000, as well as all assets, property and property interests acquired in exchange for any of the converted funds, as a constructive trustee for the benefit of Plaintiffs.

214.   Williams committed the above-alleged misconduct with fraud, oppression, and/or malice, entitling Plaintiffs to punitive damages under California Civil Code section 3294.

215.   As alleged hereinabove, Plaintiffs are informed and believe, and on that basis allege, that there existed a unity of interest and ownership between and

among Williams, Legacy, Bipartisan Coalition, Highgate, Moment Factory, Luxe One, Visions and Garuda, such that any individuality and separateness between these defendants ceased and that adherence to the fiction of the separate existence of these entities from Williams and from each other would permit an abuse of the corporate privilege and would promote injustice.

### THIRTEENTH CLAIM FOR RELIEF

#### For Imposition of a Constructive Trust

#### (Against Defendant Brown)

216.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein

217.   Defendant Brown intentionally and wrongfully converted specific sums exceeding $989,224 of Plaintiffs' money from the Luxe One 1572 Account for his own use, purposes and personal gain.

218.   Brown has not returned, and Plaintiffs have not recouped, any part of the sums converted by Brown.

219.   By virtue of Brown's wrongful acts, he holds the converted funds as well as all assets, property and property interests acquired in exchange for any of the converted funds, as a constructive trustee for the benefit of Plaintiffs.

220.   Williams committed the above-alleged misconduct with fraud, oppression, and/or malice, entitling Plaintiffs to punitive damages under California Civil Code section 3294.

### FOURTEENTH CLAIM FOR RELIEF

#### For Imposition of a Constructive Trust

#### (Against Defendant Garuda Partners, Ltd.)

221.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

222.   In February and March 2014, Williams secretly and without authorization caused over $725,000 to be transferred from the Moment Factory Chase bank account to purchase the Calabasas Property in the name of Garuda Partners, Ltd., as Trustee of the Mulholland Ridge Trust.

223.   The funds were transferred from the Moment Factory Chase bank account to an escrow account with First American Title Company for the purchase of the Calabasas Property.  The transfer of the funds for the purchase of the Calabasas Property was an unconscionable and fraudulent act wholly outside the business purpose and due authority of Moment Factory.

224.   Defendant Garuda Partners, Ltd. acquired the Calabasas Property, purportedly as Trustee of the Mulholland Ridge Trust, without using any of its own funds and/or with actual or constructive knowledge or notice of the facts, thereby entitling Plaintiffs to the imposition of a constructive trust over the funds used to acquire the Calabasas Property.

225.   By virtue of the foregoing, Defendant Garuda Partners, Ltd. holds the Calabasas Property, all assets, property and property interests acquired in exchange for any part of the Calabasas Property, and all profits and rents derived from any part of the Calabasas Property, as a constructive trustee for Plaintiffs' benefit.

### FIFTEENTH CLAIM FOR RELIEF

#### For Imposition of a Constructive Trust

**(Against Defendants Legacy, Bipartisan Coalition, Highgate, and Does 1-50)**

226.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1 through 142, inclusive, as if fully set forth herein.

227.   As hereinabove alleged, Williams fraudulently induced Plaintiffs to transfer a total of $10,900,000 for certain purported investments, by intentionally misrepresenting material facts regarding the investments and by actively concealing the truth regarding the investments, and the unauthorized use of the investment

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1 funds, so that Williams and his cohorts could convert Plaintiffs' funds for their own

2 unauthorized and wrongful use and enjoyment.

3 228.   Defendants Legacy, Bipartisan Coalition, Highgate and Does 1-50, and

4 each of them, received a part or parts of the converted funds, and/or received

5 property or property interests that were acquired in exchange for such funds, for no

6 value (or *de minimis* value) and/or with actual or constructive knowledge or notice

7 of the facts giving rise to the constructive trust.

8 229.   By virtue of the foregoing, Defendants Legacy, Bipartisan Coalition,

9 Highgate and Does 1-50 hold the funds, property and/or property interests so

10 received by them, and all assets, property and/or property interests received in

11 exchange for any part of such funds, property and/or property interests, as a

12 constructive trustee for the benefit of Plaintiffs.

14 ## SIXTEENTH CLAIM FOR RELIEF

15 **For Avoidance and Recovery of the Fraudulent Transfer of the Calabasas**

16 **Property pursuant to Civil Code §§ 3439.01 *et seq.* and California Common**

17 **Law**

18 **(Against Defendants Williams, Moment Factory and**

19 **Garuda Partners, Ltd. and Does 1-50)**

20 230.   Plaintiffs repeat and incorporate herein by this reference paragraphs 1

21 through 142, inclusive, as if fully set forth herein

22 231.   As hereinabove alleged, Williams fraudulently induced Plaintiffs to

23 transfer a total of $10,900,000 for certain purported investments, by intentionally

24 misrepresenting material facts regarding the investments and the unauthorized use

25 of the investment funds, and by actively concealing the truth regarding the

26 investments, so that Williams and his cohorts could convert Plaintiffs' funds for

27 their own unauthorized and wrongful use and enjoyment.

232.   In February and March 2014, Williams secretly and without authorization caused over $725,000 to be transferred from the Moment Factory Chase bank account to purchase the Calabasas Property in the name of Garuda Partners, Ltd., as Trustee of The Mulholland Ridge Trust (the "Calabasas Property Transfer").

233.   The funds were transferred from the Moment Factory Chase bank account to an escrow account with First American Title Company for the purchase of the Calabasas Property.  The transfer of the funds to effectuate the Calabasas Property Transfer was an unconscionable and fraudulent act wholly outside the business purpose and due authority of Moment Factory.

234.   Williams and Moment Factory are and were each at all relevant times a debtor within the meaning of California Civil Code section 3429.

235.   Plaintiffs are and were each at all relevant times a creditor within the meaning of California Civil Code section 3430.

236.   The Calabasas Property Transfer constituted a fraudulent transfer under California Civil Code sections 3439.04(a)(1), 3439.04(a)(2) and 3439.05, and California common law, in that it was orchestrated by Williams with the actual intent to hinder, delay and defraud Plaintiffs, while Williams and Moment Factory were insolvent, and without receiving reasonably equivalent value in exchange for the Calabasas Property transfer.

237.   Defendant Garuda Partners, Ltd. acquired the Calabasas Property without giving any value (or *de minimis* value) in return and/or with actual or constructive knowledge or notice of the above-alleged fraud.

238.   Plaintiffs are informed and believe, and on that basis allege, that Garuda Partners, Ltd. is an entity owned and/or controlled by Williams.

239.   Plaintiffs are informed and believe, and on that basis allege, that Garuda Partners, Ltd. colluded with Williams to accomplish the fraudulent

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   Calabasas Property Transfer, knowing and agreeing to his fraudulent purposes, and

2   aiding in the commission of the Calabasas Property Transfer.

3        240.   Pursuant to California Civil Code section 3439.07, Plaintiffs are

4   entitled to and seek a judgment declaring the Calabasas Property Transfer void as to

5   Plaintiffs, as well as to attach and/or impose a constructive trust upon the Calabasas

6   Property and/or the proceeds thereof.  Plaintiffs are further entitled to and seek a

7   receiver to take hold of the Calabasas Property and/or the proceeds thereof.

8   Plaintiffs are further entitled to a preliminary and permanent injunction barring

9   transfer or dissipation of the Calabasas Property and/or the proceeds thereof,

10   whether in the hands of Garuda Partners, Ltd., any other defendant, or otherwise.

11        241.   Pursuant to California Civil Code section 3439.08, Plaintiffs are

12   entitled to a recover a money judgment against Defendants Williams, Moment

13   Factory and Garuda Partners, Ltd. and any subsequent transferee other than a good

14   faith *bona fide* purchaser for value.

15        242.   In participating in the above-alleged fraudulent transfers, defendants

16   acted in bad faith, and with oppression, fraud and malice, entitling Plaintiffs to an

17   award of punitive damages.

18

19                  **PRAYER FOR RELIEF**

20        WHEREFORE, Plaintiffs respectfully pray for judgment, as follows:

21               **FIRST CLAIM FOR RELIEF**

22        1.     For compensatory damages in an amount to be proven at trial, but no

23   less than $10,900,000;

24        2.     For rescission of Plaintiffs' purchase of securities and restitution in an

25   amount to be proven at trial, but not less than $10,900,000 as the original

26   consideration paid for the securities;

27        3.     For prejudgment interest on the original consideration at the legal rate

28   from each date of purchase;

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    4.      For imposition of a constructive trust on all moneys paid to defendants

2  and on any and all proceeds received by any defendant from any sale or transfer of

3  the consideration paid by Plaintiffs, or from any other sale or transfer of

4  defendants' assets or securities after the dates of Plaintiffs' purchase of securities;

5    5.      For costs and expenses incurred in this litigation, including reasonable

6  attorneys' fees; and

7    6.      For such other and further relief as this Court deems just and proper.

8  ## SECOND CLAIM FOR RELIEF

9    7.      For rescission of Plaintiffs' purchase of securities and restitution in an

10  amount to be proven at trial, but not less than $10,900,000 as the original

11  consideration paid for the securities;

12    8.      For prejudgment interest on the original consideration at the legal rate

13  from each date of purchase;

14    9.      For imposition of a constructive trust on all moneys paid to defendants

15  and on any and all proceeds received by any defendant from any sale or transfer of

16  the consideration paid by Plaintiffs, or from any other sale or transfer of

17  defendants' assets or securities after the dates of Plaintiffs' purchase of securities;

18    10.     For costs and expenses incurred in this litigation; and

19    11.     For such other and further relief as this Court deems just and proper.

20  ## THIRD CLAIM FOR RELIEF

21    12.     For compensatory damages in an amount to be proven at trial, but no

22  less than $10,900,000;

23    13.     For rescission of Plaintiffs' purchase of securities and restitution in an

24  amount to be proven at trial, but not less than $10,900,000 as the original

25  consideration paid for the securities;

26    14.     For prejudgment interest on the original consideration at the legal rate

27  from each date of purchase;

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 53 -

1    15.    For imposition of a constructive trust on all moneys paid to defendants

2    and on any and all proceeds received by any defendant from any sale or transfer of

3    the consideration paid by Plaintiffs or from any other sale or transfer of defendants'

4    assets or securities after the dates of Plaintiffs' purchase of securities;

5    16.    For exemplary or punitive damages in an amount to be proven at trial;

6    17.    For costs and expenses incurred in this litigation; and

7    18.    For such other and further relief as this Court deems just and proper.

8    ## FOURTH CLAIM FOR RELIEF

9    19.    For compensatory damages in an amount to be proven at trial, but no

10   less than $10,900,000;

11   20.    For imposition of a constructive trust on all moneys paid to defendants

12   and on any and all proceeds received by any defendant derived from such moneys

13   received and/or from any sale or transfer of the consideration paid by Plaintiffs or

14   from any other sale or transfer of defendants' assets or securities after the dates of

15   Plaintiffs' purchase of securities;

16   21.    For exemplary or punitive damages in an amount to be proven at trial;

17   22.    For costs and expenses incurred in this litigation; and

18   23.    For such other and further relief as this Court deems just and proper.

19   ## FIFTH CLAIM FOR RELIEF

20   24.    For compensatory damages in an amount to be proven at trial, but no

21   less than $10,900,000;

22   25.    For imposition of a constructive trust on all moneys paid to defendants

23   and on any and all proceeds received by any defendant derived from such moneys

24   received and/or from any sale or transfer of the consideration paid by Plaintiffs or

25   from any other sale or transfer of defendants' assets or securities after the dates of

26   Plaintiffs' purchase of securities;

27   26.    For exemplary or punitive damages in an amount to be proven at trial;

28   27.    For costs and expenses incurred in this litigation; and

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

28.    For such other and further relief as this Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

29.    For compensatory damages in an amount to be proven at trial, but no less than $10,900,000;

30.    For costs and expenses incurred in this litigation; and

31.    For such other and further relief as this Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF

32.    For compensatory damages in an amount to be proven at trial, but no less than $10,900,000;

33.    For exemplary or punitive damages in an amount to be proven at trial;

34.    For costs and expenses incurred in this litigation; and

35.    For such other and further relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF

36.    For an accounting of Williams' dealings and transactions with and relating to the $10,900,000 invested by Plaintiffs from April 1, 2013 to the present; and

37.    For such other and further relief as this Court deems just and proper.

## NINTH CLAIM FOR RELIEF

38.    For compensatory damages in an amount to be proven at trial, but no less than $10,900,000;

39.    For costs and expenses incurred in this litigation; and

40.    For such other and further relief as this Court deems just and proper.

## TENTH CLAIM FOR RELIEF

41.    For compensatory damages in an amount to be proven at trial, but no less than $10,900,000;

42.    For imposition of a constructive trust on all moneys converted by defendants and on any and all proceeds, assets, property or other property interests

1    received or acquired by any defendant from any use or transfer of the converted

2    funds;

3        43.    For exemplary or punitive damages in an amount to be proven at trial;

4        44.    For costs and expenses incurred in this litigation; and

5        45.    For such other and further relief as this Court deems just and proper.

6                           **ELEVENTH CLAIM FOR RELIEF**

7        46.    For compensatory damages in an amount to be proven at trial, but no

8    less than $1,500,000.

9        47.    For imposition of a constructive trust on all moneys converted by

10   defendants and on any and all proceeds, assets, property or other property interests

11   received or acquired by any defendant from any use or transfer of the converted

12   funds;

13       48.    For exemplary or punitive damages in an amount to be proven at trial;

14       49.    For costs and expenses incurred in this litigation; and

15       50.    For such other and further relief as this Court deems just and proper.

16                           **TWELFTH CLAIM FOR RELIEF**

17       51.    For imposition of a constructive trust on all moneys paid to defendants

18   and on any and all proceeds received by any defendant from any sale or transfer of

19   the consideration paid by Plaintiffs or from any other sale or transfer of defendants'

20   assets or securities after the dates of Plaintiffs' purchase of securities;

21       52.    For exemplary or punitive damages in an amount to be proven at trial;

22       53.    For costs and expenses incurred in this litigation; and

23       54.    For such other and further relief as this Court deems just and proper.

24                           **THIRTEENTH CLAIM FOR RELIEF**

25       55.    For imposition of a constructive trust on all amounts received, diverted

26   or taken by Brown from the moneys invested by Plaintiffs and/or from the funds in

27   the Luxe One and/or Moment Factory Chase bank accounts, and on any and all

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

                                 COMPLAINT

1    proceeds, assets, property and/or other property interests received or acquired by
2    Brown from any use or transfer of such moneys;

3       56.    For exemplary or punitive damages in an amount to be proven at trial;
4       57.    For costs and expenses incurred in this litigation; and
5       58.    For such other and further relief as this Court deems just and proper.

6                    **FOURTEENTH CLAIM FOR RELIEF**

7       59.    For imposition of a constructive trust on the Calabasas Property, all
8    property and property interests acquired in exchange for any part of the Calabasas
9    Property, and all profits, rents or other value derived from any part of the Calabasas
10   Property;

11      60.    For costs and expenses incurred in this litigation; and
12      61.    For such other and further relief as this Court deems just and proper.

13                    **FIFTEENTH CLAIM FOR RELIEF**

14      62.    For imposition of a constructive trust all amounts received by
15   defendants from the moneys invested by Plaintiffs, and on any and all property,
16   property interests or other value acquired by defendants in exchange for any such
17   moneys;

18      63.    For costs and expenses incurred in this litigation; and
19      64.    For such other and further relief as this Court deems just and proper.

20                    **SIXTEENTH CLAIM FOR RELIEF**

21      65.    For an order declaring the Calabasas Property Transfer avoided as to
22   Plaintiffs;

23      66.    For an order awarding recovery of the Calabasas Property and the
24   proceeds thereof, or the value of the Calabasas Property transferred, in an amount
25   necessary to satisfy defendants' debts to Plaintiffs;

26      67.    For general damages according to proof at trial, in an amount not less
27   than $725,000;

28      68.    For attachment as specified;

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

69.     For imposition of a constructive trust as specified;

70.     For appointment of a receiver as specified;

71.     For preliminary and permanent injunctive relief as specified;

72.     For punitive and exemplary damages in an amount to be proven at trial;

73.     For prejudgment interest; and

74.     For such other and further relief as this Court deems just and proper.

Dated:  May  28, 2014                      TROUTMAN SANDERS LLP


By: _____
    Paul L. Gale
    Thomas H. Prouty

    Attorneys for Plaintiffs
    BILL A. BUSBICE, JR., OLLA
    PRODUCTIONS, LLC, and
    ECIBSUB, LLC

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 58 -

COMPLAINT

## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues and claims so triable.

Dated:  May 28, 2014

TROUTMAN SANDERS LLP

By: *Paul Gale*
    Paul L. Gale
    Thomas H. Prouty

Attorneys for Plaintiffs
BILL A. BUSBICE, JR., OLLA
PRODUCTIONS, LLC, and
ECIBSUB, LLC

TROUTMAN SANDERS LLP
3 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22105507

- 59 -

COMPLAINT

ORIGINAL

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILL A. BUSBICE, JR., an individual; OLLA PRODUCTIONS, LLC, a limited liability company; and ECIBSUB, LLC, a limited liability company,<br><br>*Plaintiff(s)*<br>v.<br>JAMES DAVID WILLIAMS, an individual; STEVEN J. BROWN, an individual; GERALD R. SEPPALA, an individual; LEGACY FILM CREST, LLC, a limited liability company; MOMENT FACTORY, LLC, a limited liability company; LUXE ONE, INC., a corporation; VISIONS LLC, a limited liability company; BIPARTISAN COALITION FOR AMERICAN SECURITY CORPORATION, a corporation; HIGHGATE PASS, LLC, a limited liability company; GARUDA PARTNERS, LTD., an unknown entity, as Trustee of The Mulholland Ridge Trust; and DOES 1 – 10, inclusive,<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. CV14-4077 PACASWX |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

      A lawsuit has been filed against you.

      Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
      PAUL L. GALE, Bar No. 065873
      TROUTMAN SANDERS LLP
      5 Park Plaza, Suite 1400, Irvine, CA 92614 (949) 622-2700
      If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 5-28-14

*CLERK OF COURT*

Rhonda marshall

*Signature of Clerk or Deputy Clerk*

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____


I declare under penalty of perjury that this information is true.


Date: _____        _____
                                              *Server's signature*

                                 _____
                                              *Printed name and title*


                                 _____
                                              *Server's address*

Additional information regarding attempted service, etc:


American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
BILL A. BUSBICE, JR., an individual; OLLA PRODUCTIONS, LLC, a limited liability company; and ECIBSUB, LLC, a limited liability company,

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
JAMES DAVID WILLIAMS, an individual; et al.,

**(b)** County of Residence of First Listed Plaintiff Wyoming
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.
PAUL L. GALE, Bar No. 065873
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614 (949) 622-2700

Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)
**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT:$ $10.9 million

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Securities Fraud under 15 U.S.C § 78j(b) and 17 C.F.R § 240.10b-5

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☒ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

Cv 14-4077

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | | Western |
| | ☐ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?** Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?** Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right.  ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below.  ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | WESTERN |

---

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _Paul N Kato_                    DATE: 5/28/14

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com