PAUL L. GALE, Bar No. 065873
paul.gale@troutmansanders.com
SIAVASH DANIEL RASHTIAN, Bar No. 228644
daniel.rashtian@troutmansanders.com
THOMAS H. PROUTY, Bar No. 238950
thomas.prouty@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Plaintiffs
BILL A. BUSBICE, JR., OLLA PRODUCTIONS,
LLC, and ECIBSUB, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BILL A. BUSBICE, JR., an individual; OLLA PRODUCTIONS, LLC, a limited liability company; and ECIBSUB, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES DAVID WILLIAMS, an individual; *et al.*,<br><br>Defendants. | Case No. CV 14-4077 PA (AJWx) consolidated with CV 14-7063 PA (AJWx)<br><br>Magistrate Judge Andrew J. Wistrich<br><br>**DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES AND DOCUMENT PRODUCTION, AND REQUEST FOR SANCTIONS, PURSUANT TO RULE 37**<br><br>Date: March 9, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom 690<br><br>Discovery Cut-off: July 27, 2015<br>Trial Date: October 6, 2015 |

24684869v1

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTIONS TO COMPEL

I, Thomas H. Prouty, declare as follows:

1.   I am an attorney admitted to practice before this Court. I am an attorney at the law firm of Troutman Sanders LLP, counsel for Plaintiffs Bill A. Busbice, Jr. ("Busbice"), Olla Productions, LLC ("Olla"), and Ecibsub, LLC ("Ecibsub") (collectively, "Plaintiffs") in this action. I have personal knowledge as to all matters set forth herein, and if called to testify as a witness, I could and would do so. I submit this declaration in support of Plaintiffs' motion to compel against each of the eleven defendants named in this consolidated action.

2.   Plaintiffs commenced this action (the "Main Action") on May 28, 2014 by filing a Complaint against Defendants James David Williams ("Williams"), Steven J. Brown ("Brown"), Gerald Seppala ("Seppala"), Legacy Film Crest, LLC ("Legacy"), Moment Factory, LLC ("Moment Factory"), Luxe One, Inc. ("Luxe One"), Visions LLC ("Visions"), Bipartisan Coalition for American Security Corporation ("Bipartisan Coalition"), Highgate Pass, LLC ("Highgate") and Garuda Partners, Ltd. ("Garuda") (collectively, the "Original Defendants").

3.   A true and correct copy of the original and operative complaint against the Original Defendants (hereinafter the "Complaint") is attached as **Exhibit 1**.

4.   On September 10, 2014, Plaintiffs commenced a separate related action (the "Reiss Action") against Defendant Barry Jay Reiss ("Reiss"). A true and correct copy of the original and operative complaint against Reiss is attached as **Exhibit 2**.

5.   On November 26, 2014, the Court consolidated the Reiss Action with the Main Action, designating the Main Action as the Master File, and ordering that "[a]ll pleadings filed in [the Reiss Action] prior to the date of this order shall be treated as if they had been filed in the Master File." (Main Action Dkt. 28.) (All further references to the Docket are to the Main Action Docket.)

6. On September 9, 2014, Defendants Seppala and Visions filed a motion to compel arbitration (the "Seppala/Visions Motion") and Defendants Williams and Moment Factory filed a separate motion to compel arbitration (the "Williams/Moment Factory Motion").  On October 23, 2014, the Court denied the Williams/Moment Factory Motion in its entirety, and granted in part and denied in part the Seppala/Visions Motion. (Dkt. 35.)  The effect of the Court's Order is that Plaintiffs' claims against Seppala and Visions (only), relating (only) to Plaintiff's initial investment in the film *Made in America,* were ordered to arbitration.  However, Plaintiffs' claims relating to the *Made in America* investment against the remaining defendants were not ordered to arbitration.  Likewise, Plaintiffs' claims against Seppala and Visions that are related to the other film investments were not ordered to arbitration.  Thus, Seppala and Visions remain as defendants in this case, and the *Made in America* film investment remains as an important subject of this case.  A true and correct copy of the Court's order on the motions is attached hereto as **Exhibit 3**.

7. Generally speaking, the Complaint alleges that Plaintiffs were fraudulently induced to invest $10,900,000 over the course of nine months in entities that purportedly owned or controlled marketing and/or production rights to four feature films: *Made in America, Left Behind*, *The Letters*, and *Angels Sing*.

8. As alleged in the Complaint, this was accomplished through the use of fake and materially false bank records and other business and financial records, as well as repeated lies about the investment projects.  As the Complaint also alleges, instead of using Plaintiffs' money for the intended purposes, defendants transferred substantial sums to various alter ego entity-defendants under their control, and/or used it to engage in personal spending sprees, including the purchase of real estate, payment of mortgages and private school tuition, taking of lavish vacations, etc.

9. The Complaint's allegations are well-founded based on certain genuine bank records received after the investments were made.

10. Attached hereto as **Exhibit 4** is a true and correct copy of the falsified JPMorgan Chase Bank ("Chase") statement that served as a basis for the allegations made in paragraph 60 of the Complaint.

11. Attached hereto as **Exhibit 5** is a true and correct copy of the true Chase bank statement received directly from Chase, which served as a basis for the allegations made in paragraph 74 of the Complaint.

12. Attached hereto as **Exhibit 6** is a true and correct copy of the falsified Chase bank statement that served as a basis for the allegations made in paragraph 51 of the Complaint.

13. Attached hereto as **Exhibit 7** is a true and correct copy of the true Chase bank statement received directly from Chase, which served as a basis for the allegations made in paragraph 74 of the Complaint.

14. Attached hereto as **Exhibit 8** is a true and correct copy of the falsified "4/15/13 Wire Confirmation" that served as a basis for the allegations made in paragraph 31 of the Complaint.

15. Attached hereto as **Exhibit 9** is a true and correct copy of the falsified Chase bank statement that served as a basis for the allegations made in paragraph 32 of the Complaint.

16. Attached hereto as **Exhibit 10** is a true and correct copy of the true Chase bank statement received directly from Chase, which served as a basis for the allegations made in paragraph 84 of the Complaint.

17. There are eleven total defendants (collectively, "Defendants"), and each generally falls into one of three categories: (1) the "Individual Defendants," (2) the "Investment-Entity Defendants" (all alleged to be alter egos of Defendant Williams and of each other), and (3) the "Transferee-Entity Defendants" (also all alleged to be alter egos of Defendant Williams and of each other). All Defendants are represented by the same counsel in this lawsuit, John Burgee, Esq. of Burgee & Abramoff.

18.  <u>The Individual Defendants</u>:  The Complaint (along with the separate complaint against Reiss) names four natural individual defendants:  (1) Williams; (2) Brown; (3) Seppala; and (4) Reiss (collectively, the "Individual Defendants"). Each of these defendants are alleged to have knowingly and willfully conspired and agreed among themselves to fraudulently induce Plaintiffs to make the alleged investments totaling $10,900,000. (Complaint (Ex. 1) at ¶ 176.)  Each is alleged to have taken concrete steps to further the conspiracy. (*Id.* at ¶¶ 177-180.)  And each is alleged to be jointly and severally liable for all of Plaintiffs' damages.

19.  <u>The Investment-Entity Defendants</u>:  The following three defendants fall into the "investment-entity" category, because they are entities into which Plaintiffs supposedly were investing:  (1) Visions; (2) Luxe One; and (3) Moment Factory (collectively, the "Investment-Entity Defendants").  The Complaint alleges that these entities were created, operated and dominated by the Individual Defendants in order to carry out their conspiracy to defraud.  Each is alleged to be the alter ego of Williams and of each other. (Id. at ¶ 96.)  Each of the Investment-Entity Defendants received investment funds directly from Plaintiffs via wire transfer.  The Complaint alleges that Williams and his co-conspirators quickly thereafter caused those entities to transfer, commingle and dissipate the funds. (*Id.* at ¶¶ 75-83, 89-95.)

20.  <u>The Transferee-Entity Defendants</u>:  The following remaining four defendants fall into the "transferee-entity" category, because it is alleged that they secretly, knowingly and wrongfully received fraudulent transfers of Plaintiffs' money from the other defendants:  (1) Legacy; (2) Bipartisan Coalition; (3) Highgate; and (4) Garuda (collectively, the "Transferee-Entity Defendants"). (*Id.* at ¶¶ 75-83, 89-95, 222-224, 227-228.)  Each is alleged to be the alter ego of Williams and of each other. (*Id.* at ¶ 96.)

**Document Requests, Responses and Extremely Deficient Production**

21. On September 10, 2014, Plaintiffs served a comprehensive set of Requests for Production of Documents ("Document Requests") on the Original Defendants, which, generally speaking, called for the production of all documents (including electronically stored information ("ESI")) relating to: (1) the purported investment opportunities; (2) the subject films; (3) defendants' own alleged contributions to the film projects and investment entities; (4) accounting and financial information provided to Plaintiffs by Defendants before the lawsuit was filed, which the Complaint alleges was false and intended to conceal and further the fraud; (5) the Investment Entity Defendants' actual financial and accounting records and information; (6) the Defendants' transfers of Plaintiffs' funds from the investment-entities' accounts, including the reasons and purposes for such transfers; (7) Defendants' own receipt or use of funds from the investment entities' accounts; (8) corporate records of the entity defendants; and (9) communications regarding these relevant subject matters.

22. The Document Requests were essentially identical – requesting the same categories of documents from each of the Original Defendants.

23. The Document Requests also requested that ESI be produced in a specific format. (The specified format is attached as Exhibit B to the joint stipulations that are attached to this declaration as Exhibits 30-40. *See* paragraphs 58-60 of this declaration, below.)

24. On October 14, 2014, all of the Original Defendants served a "Response" to the Document Requests. However, each Defendant's "Response" consisted solely of the same cut-and-pasted boilerplate objections to each of the over 120 individual requests. No substantive response was provided. No documents were produced. No privilege log was provided.

25. On November 21, 2014, after significant meet and confer efforts (discussed below), Defendants Visions and Seppala served "Amended Responses"

to the Document Requests. These Amended Responses still contained the same boilerplate objections, but then stated one of three different responses to the various requests: (1) "As this request pertains solely to claims stayed by this Court, the responding party will not produce any responsive documents[,]" (2) "The responding party is unable to comply with this request as it has no documents for production[,] and (3) "Excluding documents pertaining to 'Made in America' which relate to claims that Plaintiffs have been ordered to arbitrate with this defendant and are stayed by the Court, the responding party is unable to comply with this request as it has no documents to produce." Essentially, Visions and Seppala claimed not to have any documents relating to anything except for *Made in America*, and then – even though those subject matters are still relevant to claims at issue in this case – refused to produce those documents.

26. After further extensive meet and confer efforts, Defendants finally produced some e-mails in December 2014. However, *only* e-mails were produced, despite the fact that the Documents Requests called for much more than just e-mails. In addition, it appears that virtually all of the documents produced were e-mails involving Plaintiffs, as opposed to correspondence with third parties or among the defendants themselves. In other words, it appears that Defendants completely ignored Plaintiffs' actual document requests and only selectively disclosed e-mails that they knew would not shed any light on Defendants' fraud.

27. On December 2, 2014, Plaintiffs served a set of Requests for Production of Documents on defendant Reiss (the "Reiss Document Requests"), which was essentially identical to the Document Requests served earlier on the Original Defendants.

28. On January 5, 2015, Reiss served his "Response" to the Reiss Document Requests. Like the Original Defendants' respective Responses to the Document Requests, Reiss's Response consisted solely of the same cut-and-pasted boilerplate objections to each of the over 120 individual requests. No substantive

response was provided. No documents were produced. No privilege log was provided.

29. *After* Plaintiffs served Defendants' counsel, Mr. Burgee, with joint stipulations for motions to compel (as discussed below), Mr. Burgee served amended responses to the Document Requests on behalf of four defendants: Brown, Highgate, Garuda and Bipartisan Coalition. These amended responses, however, are still deficient, because they: (1) continue to rely on baseless privacy objections to justify non-production in response to certain requests; (2) assert that the responding party is unable to comply with certain requests because it has no responsive documents (without stating that a diligent search has been made); or (3) claim that the responding party will comply and produce its responsive documents "to the extent that they can be located through a diligent search" with no indication as to when such documents will be produced and what efforts will be made to locate the documents. No new documents were produced along with these "*post-joint stipulation*" amended responses. And to date, no amended responses have been served on behalf of Williams, Legacy, Moment Factory, Luxe One and Reiss. Thus, those defendants' only responses to the Document Requests remain the original boilerplate objections served in October 2014, which contain no statement or recognition that anything will or need be produced.

**Interrogatories, and Refusals to Answer**

30. On November 18, 2014, Plaintiffs served a first set of Interrogatories on the following entity-defendants: (1) Moment Factory (one of the Investment-Entity Defendants, in which Plaintiffs invested); (2) Luxe One (another one of the Investment-Entity Defendants); (3) Bipartisan Coalition (one of the Transferee-Entity Defendants); (4) Garuda Partners (another one of the Transferee-Entity Defendants); (5) Highgate (another one of the Transferee-Entity Defendants); and (6) Legacy (another one of the Transferee-Entity Defendants) (collectively, the

"Interrogatory Recipient Defendants"). As previously noted, each of these defendants is alleged to be the alter ego of Williams, and of each other.

31. Generally speaking, the Interrogatories sought relevant information regarding the receiving party's management and ownership, and money or property received from the other defendants, including the Investment-Entity Defendants in which Plaintiffs invested. The Interrogotories directed to Moment Factory and Luxe One also attached bank statements as Exhibits reflecting certain transfers, and asked the receiving party to provide information regarding the purposes for such transfers.

32. On December 22, 2014, each of the Interrogatory Recipient Defendants served a "Response" to the Interrogatories. However, each Response consisted solely of the same cut-and-pasted boilerplate objections to each of the interrogatories. Not a single substantive response was provided. (The interrogatories propounded on these defendants, and their objections thereto, are set forth in the joint stipulations attached to this declaration as Exhibits 34-40. *See* paragraphs 58-60 of this declaration, below.)

33. Despite Plaintiffs' meet and confer efforts, Defendants have yet to withdraw their baseless boilerplate objections and provide responses to the Interrogatories.

### Meet and Confer Efforts, Pattern of Discovery Abuse, and Request for Sanctions

34. On October 22, 2014, pursuant to L.R. 37-1, I sent a letter to Defendants' counsel, Mr. Burgee, outlining the deficiencies with the Original Defendants' objections to the Document Requests and requesting a conference to meet and confer regarding same. A true and correct copy of that letter is attached hereto as **Exhibit 11**.

35. On the same date, I sent another letter to Mr. Burgee requesting Defendants' Rule 26 initial disclosures, which were more than a week past due.

36. On October 24, 2014, my colleague Paul Gale and I had a telephone conference with Mr. Burgee regarding the Document Requests. During that conference, Mr. Burgee agreed that the Original Defendants would serve amended responses to the Documents Requests by November 7, 2014.

37. As a follow up to that conference, on October 31, 2014, I sent a letter to Mr. Burgee emphasizing three points related to Defendants' responses to the Document Requests. First, the letter reminded Mr. Burgee that ESI had been requested in a specified format and that Plaintiffs expected Defendants to produce all of their ESI (including from their home computers, smart phones and tablets) in the requested format. Second, the letter reminded Mr. Burgee that ESI is particularly important in a case such as this and that Defendants must take every reasonable step to preserve (and not delete or destroy) such evidence. Finally, the letter cited law for the proposition that Mr. Burgee had an affirmative duty as Defendants' counsel to see to it that all of Defendants' relevant and responsive information is preserved and produced, and that he could not delegate that duty to his clients and rely solely on them to gather information for production. A true and correct copy of that letter is attached hereto as **Exhibit 12**.

38. In response to that letter, I received an e-mail from Mr. Burgee on October 31, 2014, which represented that Mr. Burgee had "already gone over the production of ESI with [his] clients[,]" that he was working to get ESI, and made reference to how e-mail is "generally produced." I replied to that e-mail shortly thereafter referring Mr. Burgee to the Document Requests' specified format for the production of ESI. A true and correct copy of that e-mail exchange is attached hereto as **Exhibit 13**.

39. On Friday, November 7, 2014 – the day by which the Original Defendants had previously agreed to serve their amended responses to the

Document Requests – I received an e-mail from Mr. Burgee, which advised: "I have the revised responses about done, but the clients are having difficulty with the ESI. I may have to send someone to help them or go myself. The production is therefore not ready. I am reluctant [to] send out the responses until I see all of the production including the ESI." A true and correct copy of that e-mail is attached hereto as **Exhibit 14**.

40. On November 12, 2014, having not received any amended responses or document production, I sent Mr. Burgee an e-mail stating:

> Defendants' amended discovery responses and production is late. We are not sure why you are "reluctant" to at least provide the amended written responses to the requests, and whatever documents are ready for production. We request that defendants' amended written responses be provided immediately. Although we of course would like all of defendants' responsive documents and ESI immediately as well, we request that defendants produce as much information as is possible as soon as possible. We do not wish to hold up all document discovery due to the fact that some documents and/or ESI is not yet ready for production.

A true and correct copy that my November 12, 2014 e-mail is attached hereto as **Exhibit 15**.

41. Almost a week went by, and I neither heard nor received anything from Mr. Burgee or his clients. Therefore, on November 18, 2014, I sent a follow-up e-mail advising: "unless we receive confirmation by 6:00 p.m. today that Defendants will provide supplemental responses addressing the issues we raised . . . and will provide all responsive documents and ESI as soon as it is available and before December 1, 2014, then we will have no choice but to initiate the motion to compel process." That e-mail further advised: "[a]dditionally, we still have not received Defendants' initial disclosures (due five weeks ago)[.]" A true and correct copy of my November 18, 2014 e-mail is attached hereto as **Exhibit 16**.

42. On November 21, 2014 (the day that Visions and Seppala served their amended responses to the Document Requests), I received an e-mail from Mr. Burgee advising that he would be serving Visions' and Seppala's amended

- 10 -

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTIONS TO COMPEL

responses that day. As to the rest of his clients, Mr. Burgee advised: "[o]therwise I have responses done and should be receiving documents today. The client has been abroad so I need to confirm that this is happening." A true and correct copy of that e-mail is attached hereto as **Exhibit 17**.

43. On December 2, 2014, I received an e-mail from Mr. Burgee advising that he had received documents from his clients, which he was scanning and putting on a disc, and that his clients were "putting the ESI from computers on a flash drive." That e-mail further stated that: "[t]he email is cloud based (AOL) and there does not seem to be a way to download the e-mail through the email service. We therefore only have print-outs of e-mail. I am revising discovery responses based upon documents produced." A true and correct copy of that e-mail is attached hereto as **Exhibit 18**.

44. The following day, after consulting with one of my firm's e-discovery specialists, I sent an e-mail to Mr. Burgee advising that his plan of producing "printouts" of e-mails and otherwise having his clients put information from their computers on a flash drive was unacceptable and failed to comply with the Document Requests' specified format for the production of documents, which never was objected to. As stated in that e-mail, the specified format is standard, reasonable and appropriate, particularly in case such as this, where there is proof of creation and electronic transmission of fraudulent and counterfeit records. As further stated in the e-mail, there are multiple ways for AOL and other web-based e-mails to be produced in native format without degrading them by printing them out and then scanning them. That December 3, 2014 e-mail also: (a) noted that Mr. Burgee had promised amended responses to the Document Requests from Williams, Brown, Bipartisan Coalition, Legacy, Highgate, Luxe One, Moment Factory and Garuda by November 7, 2014, but none had been received; (b) Visions' and Seppala's amended responses were received, but they were deficient; and (c) once again demanded that Defendants serve their Rule 26(a) initial disclosures,

1  which were months past due. A true and correct copy of that December 3, 2014 e-
2  mail is attached hereto as **Exhibit 19**.

3     45. On December 4, 2014, I received an e-mail from Mr. Burgee advising,
4  *inter alia*, that Defendants believed that they figured out how to properly produce
5  ESI, and that: "Based upon the documents I have received I have completed the
6  revised responses for the remaining parties which I can serve as soon as I obtain
7  client approval." A true and correct copy of that e-mail is attached hereto as
8  **Exhibit 20**.

9     46. On December 23, 2014, Mr. Burgee replied to correspondence
10 regarding Reiss's default from my colleague, Paul Gale. Mr. Burgee's e-mail
11 stated, in pertinent part: "my clients have hired a technical assistant who is
12 supposed to be getting the native versions of the e-mail. I will check on progress
13 since it has been a week."

14    47. Later that day, I responded to Mr. Burgee's Dec. 23rd e-mail raising a
15 number of outstanding discovery issues, including: (a) the fact that the Original
16 Defendants (except for Visions and Seppala) still had not served amended
17 responses to the Document Requests (which they agreed to do by November 7th);
18 (b) the fact that my office had not received responses to the Interrogatories yet
19 (which were due on Dec. 18th); and (c) that Mr. Burgee had served a baseless and
20 tardy objection on Wells Fargo – without serving my office – in an attempt to halt
21 that third party's production of documents. In addition, my e-mail noted the gross
22 deficiency in Defendants' recent document production:

> Defendants' document production consists only of e-mails, and it appears that all of the emails produced involve plaintiffs. However, as you know, plaintiffs requested all relevant e-mails (including e-mails between defendants themselves), as well as a great number of other categories of documents (other than e-mails). None of these other documents have been produced, but they should have been produced months ago. And because Defendants have inexplicably refused to serve their supplemental responses to the document requests, it is not even clear whether Defendants concede (as they must) that all of the requested documents will be produced.

24684869v1    - 12 -
DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTIONS TO COMPEL

A true and correct copy of this December 23, 2014 e-mail exchange is attached hereto as **Exhibit 21**.

48. On Tuesday, December 30, 2014, pursuant to L.R. 37-1, I sent a letter to Mr. Burgee requesting a conference within ten days to discuss a number of outstanding discovery issues, including, among other things: (a) the boilerplate objections/refusals to answer Interrogatories served by Moment Factory, Luxe One, Legacy, Garuda, Bipartisan Coalition and Highgate; (b) the failure to serve supplemental responses to the Document Requests; (c) the deficiencies in the meager document production; and (d) the failure to provide a privilege log. A true and correct copy of that letter is attached hereto as **Exhibit 22**.

49. On Monday, January 5, 2015, having not heard back from Mr. Burgee in response to my December 30th request for a L.R. 37-1 conference, I sent an e-mail to Mr. Burgee requesting that he advise when he is available for a conference that week. A true and correct copy of that e-mail is attached hereto as **Exhibit 23**.

50. I did not receive any form of response from Mr. Burgee until after noon on Friday, January 9, 2015 (the tenth day after my Dec. 30th letter), when I received an e-mail from Mr. Burgee. Mr. Burgee's e-mail did not acknowledge my request for a conference or provide a time for any such conference. Instead, it advised that: (1) Defendants are working on producing additional documents (which were requested in September and promised in November); (2) he would work to get documents from Defendant Reiss; (3) amended responses to the Document Requests should have gone out already; and (4) he requested a stipulated protective order (for the first time) before producing documents requested in September.

51. Later that day, I replied to Mr. Burgee's e-mail and took issue with his having waited ten days to respond to my request for a L.R. 37-1 conference, only to fail to make himself available for a conference. My e-mail demanded that he make himself available Monday-Wednesday of the following week to discuss the

outstanding issues, as well as the issue of Reiss's responses to Plaintiffs' document requests (which, as previously noted, are just boilerplate objections to all requests). A true and correct copy of that January 9, 2015 e-mail exchange is attached hereto as **Exhibit 24**.

52.  I did not hear anything from Mr. Burgee until the following Tuesday January 13th, when Mr. Burgee advised: "I am in the middle of a jury trial. I may be done by Friday. Otherwise, it will be next week before I am free." Shortly thereafter, I replied to Mr. Burgee advising that I would make myself available after business hours to have the conference. A true and correct copy of that January 13th exchange is attached hereto as **Exhibit 25**.

53.  By January 15, 2015, my office had not heard or received anything from Mr. Burgee. Thus, on that day, my colleague Daniel Rashtian sent Mr. Burgee an e-mail (copying me) advising that due to Mr. Burgee's failure to meet and confer with us as required by the local rules, Plaintiffs would be filing a motion to compel without further notice. In addition, although Plaintiffs believe that Defendants either do not have legitimate privacy concerns or have waived them, that e-mail attached a proposed confidentiality agreement to address any privacy concerns. A true and correct copy of that e-mail and attachment is attached hereto as **Exhibit 26**.

54.  Later that day, Mr. Burgee agreed to make himself available for a telephone conference the following day.

55.  On January 16, 2015, my colleague Mr. Rashtian and I had a telephone conference with Mr. Burgee regarding the outstanding discovery issues. I advised Mr. Burgee that Plaintiffs have been waiting for proper responses and document production for months, and that they have only received repeated broken promises, delay tactics and excuses. Given that, and the nature of this case and allegations against the Defendants, I explained that Plaintiffs could no longer rely on further promises, and that it appeared that an Order from this Court was necessary. I also

reminded Mr. Burgee that my office had sent him a proposed Confidentiality Agreement, but that we had not heard back from him on that. In response, Mr. Burgee essentially conceded that his clients were both late and deficient in their responses and production, and suggested that perhaps the motion practice could be obviated by Defendants stipulating to the discovery order sought. I advised Mr. Burgee that I could send him a proposed stipulated discovery order, but that Plaintiffs intended to proceed with a motion to compel until we had Mr. Burgee's signature on an agreed stipulated order.

56. On the following business day, January 20, 2015, my colleague Mr. Rashtian sent Mr. Burgee an e-mail (copying me), which attached a proposed stipulation and proposed discovery order. Plaintiffs also warned that it would serve its motions to compel shortly unless Mr. Burgee agreed to the proposed stipulation and order. A true and correct copy of that e-mail and its attachments is attached hereto as **Exhibit 27**.

57. One week later, on January 26, 2015, I received an e-mail from Mr. Burgee proposing unacceptable revisions to the proposed order, which attempted to limit the Defendants' document production and responses to interrogatories. Among other things, the revisions would have allowed Defendants to withhold unspecified documents based on "privacy," even though (a) Defendants have never (despite Plaintiffs' repeated meet and confer correspondence and citations to legal authority) articulated how their legitimate privacy interests (if any) could ever outweigh Plaintiffs' and the justice system's interests in production; and (b) Plaintiffs had proposed a Confidentiality Agreement, which Defendants never commented on. A true and correct copy of Mr. Burgee's e-mail and its attachment is attached hereto as **Exhibit 28**.

**Preparation of Joint Stipulations, and Defendants' Failure to Provide their Contentions as Required by L.R. 37-2.2**

58. On January 30, 2015, pursuant to L.R. 37-2.2, I sent Mr. Burgee joint stipulations for motions to compel against each of the Defendants, and advised him that he needed to provide Defendants' contentions within seven days as required by the rule. A true and correct copy of my January 30th e-mails to Mr. Burgee (without the voluminous attachments) are attached hereto as **Exhibit 29**.

59. Eleven joint stipulations were prepared and sent to Mr. Burgee, one for each of the Defendants. Each joint stipulation contained every document request, interrogatory, and response. Each joint stipulation also contained the definitions for the requests' defined terms, as well as the Document Requests' specified format for the production of ESI.

60. True and correct copies of these joint stipulations are attached to this declaration as follows:

  a. The joint stipulation as to Defendant Williams is attached hereto as **Exhibit 30**.

  b. The joint stipulation as to Defendant Brown is attached hereto as **Exhibit 31**.

  c. The joint stipulation as to Defendant Seppala is attached hereto as **Exhibit 32**.

  d. The joint stipulation as to Defendant Reiss is attached hereto as **Exhibit 33**.

  e. The joint stipulation as to Defendant Visions is attached hereto as **Exhibit 34**.

  f. The joint stipulation as to Defendant Legacy is attached hereto as **Exhibit 35**.

  g. The joint stipulation as to Defendant Moment Factory is attached hereto as **Exhibit 36**.

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTIONS TO COMPEL

    h. The joint stipulation as to Defendant Luxe One is attached hereto as **Exhibit 37**.

    i. The joint stipulation as to Defendant Bipartisan Coalition is attached hereto as **Exhibit 38**.

    j. The joint stipulation as to Defendant Highgate is attached hereto as **Exhibit 39**.

    k. The joint stipulation as to Defendant Garuda is attached hereto as **Exhibit 40**.

61. Mr. Burgee failed to provide Defendants' contentions for inclusion in the joint stipulations within the time allowed by L.R. 37-2.2. Instead, after Plaintiffs served the joint stipulations, Mr. Burgee served amended responses to the Document Requests on behalf of a few defendants, specifically: Brown, Highgate, Garuda and Bipartisan Coalition. As discussed in paragraph 29 above, these amended responses (true and correct copies of which are attached hereto as **Exhibits 41-44**, respectively), are still deficient. Based on the record in this case, I believe that the post-joint stipulation preparation and service of these few amended responses (instead of the required preparation and service of Defendants' contentions for the joint stipulations) was just another delay tactic intended to forestall the Court's review of Defendants' long history of discovery abuse.

**The Requested Discovery Order and Monetary Sanctions are Both Warranted**

62. The Document Requests were served in September 2014. To date, five of the Defendants (Williams, Legacy, Moment Factory, Luxe One and Reiss) have only ever served their original responses to the Document Requests, which contained only the same repeated boilerplate objections and constituted a complete refusal to perform. Although the remaining defendants served amended responses (most of which were served after Plaintiffs served the joint stipulations), as previously discussed, those amended responses are deficient.

63. Significantly, the only document production to date has been only printouts of *selected* e-mails *involving Plaintiffs*. To the extent that those selected "printouts" constitute ESI, that is the only ESI produced, despite the fact that Plaintiffs have long reminded and warned Defendants' counsel that ESI was important to this case (given the Complaint's allegations) and that it needed to be preserved and produced in the specified format.

64. Similarly, each of the Interrogatory Recipient Defendants have only ever served their original responses to the Interrogatories, which contained only the same repeated boilerplate objections, with absolutely no substantive information provided.

65. As shown above, for several months, Plaintiffs have repeatedly been met with delays, excuses and broken promises in their attempts to obtain discovery. I have spent well more than 25 hours attempting to obtain proper discovery responses from Defendants and to meet and confer with Defendants' counsel, and preparing the concurrently-filed eleven motions to compel against Defendants. My standard rate is $465 per hour. (My colleague Daniel Rashtian also spent a significant amount of time assisting in the preparation of the concurrently filed motions to compel.) Thus, Plaintiffs have incurred more than $11,625 in fees for my time spent on such matters.

66. A true and correct copy of the Court's Scheduling Order in this action is attached hereto as **Exhibit 45**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 9, 2015 at Irvine, California.

_____
Thomas H. Prouty