PAUL L. GALE, Bar No. 065873
paul.gale@troutmansanders.com
SIAVASH DANIEL RASHTIAN, Bar No. 228644
daniel.rashtian@troutmansanders.com
THOMAS H. PROUTY, Bar No. 238950
thomas.prouty@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:  949.622.2700
Facsimile:   949.622.2739

Attorneys for Plaintiffs
BILL A. BUSBICE, JR., OLLA PRODUCTIONS,
LLC, and ECIBSUB, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BILL A. BUSBICE, JR., an individual; OLLA PRODUCTIONS, LLC, a limited liability company; and ECIBSUB, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES DAVID WILLIAMS, an individual; *et al.*,<br><br>Defendants.<br><br>AND RELATED CONSOLIDATED ACTION. | Case No.  CV 14-4077 PA (AJWx) consolidated with CV 14-7063 PA (AJWx)<br><br>Magistrate Judge Andrew J. Wistrich<br><br>**DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION**<br><br>Date:      May 11, 2015<br>Time:     10:00 a.m.<br>Place:    Courtroom 690<br><br>Discovery Cut-off:  July 27, 2015<br>Trial Date:  October 6, 2015 |

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

24871431

I, Thomas H. Prouty, declare as follows:

1.      I am an attorney admitted to practice before this Court.  I am an attorney at the law firm of Troutman Sanders LLP, counsel for Plaintiffs Bill A. Busbice, Jr. ("Busbice"), Olla Productions, LLC ("Olla"), and Ecibsub, LLC ("Ecibsub") (collectively, "Plaintiffs") in this action.  I have personal knowledge as to all matters set forth herein, and if called to testify as a witness, I could and would do so.

**This Consolidated Action, the Parties, the Claims and the Scheduling Order**

2.      Plaintiffs commenced this action (the "Main Action") on May 28, 2014 by filing a Complaint against Defendants James David Williams ("Williams"), Steven J. Brown ("Brown"), Gerald Seppala ("Seppala"), Legacy Film Crest, LLC ("Legacy"), Moment Factory, LLC ("Moment Factory"), Luxe One, Inc. ("Luxe One"), Visions LLC ("Visions"), Bipartisan Coalition for American Security Corporation ("Bipartisan Coalition"), Highgate Pass, LLC ("Highgate") and Garuda Partners, Ltd. ("Garuda") (collectively, the "Original Defendants").

3.      A true and correct copy of the original and operative complaint against the Original Defendants (hereinafter the "Complaint") is attached as **Exhibit 1**.

4.      On September 10, 2014, Plaintiffs commenced a separate related action (the "Reiss Action") against Defendant Barry Jay Reiss ("Reiss").  A true and correct copy of the original and operative complaint against Reiss is attached as **Exhibit 2**.

5.      On November 26, 2014, the Court consolidated the Reiss Action with the Main Action, designating the Main Action as the Master File, and ordering that "[a]ll pleadings filed in [the Reiss Action] prior to the date of this order shall be treated as if they had been filed in the Master File."  (Main Action Dkt. 28.)  (All further references to the Docket are to the Main Action Docket.)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

6.  On September 9, 2014, Defendants Seppala and Visions filed a motion to compel arbitration (the "Seppala/Visions Motion"); Defendants Williams and Moment Factory filed a separate motion to compel arbitration (the "Williams/Moment Factory Motion").  On October 23, 2014, the Court denied the Williams/Moment Factory Motion in its entirety, and granted in part and denied in part the Seppala/Visions Motion.  (Dkt. 35.)  The effect of the Court's Order is that Plaintiffs' claims against Seppala and Visions (only), relating (only) to Plaintiff's initial investment in the film *Made in America,* were ordered to arbitration. However, Plaintiffs' claims relating to the *Made in America* investment against the remaining defendants were not ordered to arbitration.  Likewise, Plaintiffs' claims against Seppala and Visions that are related to the other film investments were not ordered to arbitration.

7.  Generally speaking, the Complaint alleges that Plaintiffs were fraudulently induced to invest $10,900,000 over the course of nine months in entities that purportedly owned or controlled marketing and/or production rights to four films:  *Made in America, Left Behind*, *The Letters*, and *Angels Sing*.

8.  There are eleven total defendants (collectively, "Defendants"), and each generally falls into one of three categories:  (1) the "Individual Defendants," (2) the "Investment-Entity Defendants" (all alleged to be alter egos of Defendant Williams and of each other), and (3) the "Transferee-Entity Defendants" (also all alleged to be alter egos of Defendant Williams and of each other).

9.  All Defendants are represented by the same counsel in this lawsuit, John Burgee, Esq. of Burgee & Abramoff.

10.  The Individual Defendants:  The Complaint (along with the separate complaint against Reiss) names four natural individual defendants:  (1) Williams; (2) Brown; (3) Seppala; and (4) Reiss (collectively, the "Individual Defendants"). Each of these defendants are alleged to have knowingly and willfully conspired and agreed among themselves to fraudulently induce Plaintiffs to make the alleged

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614 -2545

investments totaling $10,900,000.  (Complaint (Ex. 1) at ¶ 176.)  Each is alleged to have taken concrete steps to further the conspiracy.  (*Id*. at ¶¶ 177-180.)  And each is alleged to be jointly and severally liable for all of Plaintiffs' damages.

11.  The Investment-Entity Defendants:  The following three defendants fall into the "investment-entity" category, because they are entities into which Plaintiffs supposedly were investing:  (1) Visions; (2) Luxe One; and (3) Moment Factory (collectively, the "Investment-Entity Defendants").  The Complaint alleges that these entities were created, operated and dominated by the Individual Defendants in order to carry out their conspiracy to defraud.  Each is alleged to be the alter ego of Williams and of each other.  (*Id*. at ¶ 96.)  Each of the Investment-Entity Defendants received investment funds directly from Plaintiffs via wire transfer.  The Complaint alleges that Williams and his co-conspirators quickly thereafter caused those entities to transfer, commingle and dissipate the funds.  (*Id*. at ¶¶ 75-83, 89-95.)

12.  The Transferee-Entity Defendants:  The following remaining four defendants fall into the "transferee-entity" category, because it is alleged that they secretly, knowingly and wrongfully received fraudulent transfers of Plaintiffs' money from the other defendants:  (1) Legacy; (2) Bipartisan Coalition; (3) Highgate; and (4) Garuda (collectively, the "Transferee-Entity Defendants").  (*Id*. at ¶¶ 75-83, 89-95, 222-224, 227-228.)  Each is alleged to be the alter ego of Williams and of each other.  (*Id*. at ¶ 96.)

13.  Plaintiffs allege federal securities fraud, as well as fraud-based and conspiracy to defraud claims against all of the Defendants.  Plaintiffs allege that all of the Defendants have actively participated in this conspiracy to defraud, and are jointly and severally liable for Plaintiffs' damages.  Plaintiffs also allege constructive trust and fraudulent transfer claims to recover from the fraudulent transferees.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

24871431

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

14.     A true and correct copy of the Court's Scheduling Order in this action is attached hereto as **Exhibit 3**.

### The Chase Subpoena and Production

15.     On October 27, 2014, I issued a subpoena directed to JPMorgan Chase Bank ("Chase"), requesting, *inter alia*, production of various entities' bank records (the "Chase Subpoena").  A true and correct copy of the Chase Subpoena is attached hereto as **Exhibit 4**.

16.     Chase has produced documents responsive to the Chase Subpoena.  A true and correct copy of an Affidavit regarding Chase's production and the business record nature of the documents produced is attached hereto as **Exhibit 5**.

17.     Defendants' counsel has agreed both orally and in writing that Defendants would and do not object to the documents produced by Chase or Wells Fargo Bank N.A. pursuant to subpoenas issued in this action on hearsay or foundation/authenticity grounds.

### Representations Regarding the Visions, LLC/*Made in America* Investment, including the Purported 4/15/13 Wire Confirmation and the Purported 4/24/13 Screenshot, Are Demonstrably False

18.     The concurrently-filed Declaration of Bill A. Busbice ("Busbice Declaration") discusses and attaches the "Purported 4/15/13 Wire Confirmation" and the "Purported 4/24/13 Screenshot," both of which were sent to Busbice to demonstrate that defendant Williams had already wire transferred his $500,000 investment into the Chase bank account opened for Visions, LLC, Account No. 478137206 (the "Visions 7206 Account").

19.     Genuine bank records produced by Chase pursuant to the Chase Subpoena confirm that neither Williams, nor any other person or entity, had ever deposited or transferred any money into the Visions 7206 Account.  The Visions

24871431

TROUTMAN  SANDERS  LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

7206 Account had a $0 balance until Plaintiffs transferred their $500,000.  A true and correct copy of an excerpt of the Chase production for the Visions 7206 Account reflecting these facts is attached hereto as **Exhibit 6**.

### Representations Regarding Part I of the Luxe One, Inc./*The Letters* Investment, including the Purported July 2, 2013 Luxe One Screenshot, are Demonstrably False

20.     The Busbice Declaration discusses and attaches the Purported July 2, 2013 Luxe One Screenshot, which was sent to Busbice to show that, as of July 2, 2013, there was $8,003,150.24 in Luxe One's Chase account, representing money allegedly already advanced to Luxe One by Williams (through his entity New Legacy Film Investment ("NLFI")) and by an investor identified as Chart Investment Fund CV12 ("Chart").

21.     Genuine bank records produced by Chase pursuant to the Chase Subpoena confirm that neither Williams, nor any other person or entity, had ever deposited or transferred any money into the Luxe One account – the corporate account had a zero balance when Busbice transferred his initial $2,000,000 into that account.  A true and correct copy of an excerpt of the Chase production reflecting this fact is attached hereto as **Exhibit 7**.

### Representations Regarding the Moment Factory, LLC/Angels Sing Investment, including the Purported 10/28 Moment Factory Balance Statement, are Demonstrably False

22.     The concurrently filed Declaration of Michael Friedman ("Friedman Declaration"), a corporate partner in my law firm who resides in New York, discusses and attaches the "Purported 10/28 Moment Factory Balance Statement," which was sent to indicate that Williams (through his company Legacy) had already, in fact, transferred $2,000,000 to Moment Factory's Chase account.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

23.     Genuine bank records produced by Chase pursuant to the Chase Subpoena confirm that neither Williams, nor any other person or entity, had ever deposited any money in the Moment Factory Chase account before Plaintiffs wire transferred their $2,000,000 into that account.  A true and correct copy of an excerpt of the Chase production reflecting this fact is attached hereto as **Exhibit 8**.

**Representations Regarding Part II of the Luxe One, Inc./*The Letters* Investment, including the Purported 12/17 Luxe One Balance Statement, are Demonstrably False**

24.     The Friedman Declaration discusses and attaches the "Purported 12/17 Luxe One Balance Statement," which was sent to indicate that the Luxe One corporate account, as of December 17, 2013, had a balance of $18,014,609, which represented investments by Chart totaling $10 million and investments by Williams (through NLFI) of $6 million.

25.     Genuine bank records produced by Chase pursuant to the Chase Subpoena confirm that, instead of having $18,014,609.46 on December 17, 2014 as represented, the Luxe One account actually had only $112,945.09 in it on that date. A true and correct copy of an excerpt of the Chase production reflecting this fact is attached hereto as **Exhibit 9**.

**Defendant Williams Admits Both that:  (1) He Sent the Emails Transmitting the Purported July 2, 2013 Luxe One Screenshot and the Purported 12/17 Luxe One Balance Statement; and (2) The Statements Failed to Accurately Reflect the Balance of the Luxe One Corporate Account**

26.     Attached hereto as **Exhibit 10** is a true and correct copy of Plaintiffs' first set of requests for admission to defendant Williams (the "RFAs").

27.     Attached hereto as **Exhibit 11** is a true and correct copy of defendant Williams' responses to the RFAs.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

24871431

- 6 -

28.     Williams' responses to the RFAs admit both that he sent the e-mails transmitting the Purported July 2, 2013 Luxe One Screenshot and the Purported 12/17 Luxe One Balance Statement, and that those statements failed to accurately reflect the balance of the Luxe One corporate account.  (*See* Responses to RFA Nos. 6-9.)

## Further Revelations of Fraud, Conversion and Fraudulent Transfers from the Chase Production and the Production of Other Third Parties

### The Steven Brown-Controlled Secret Luxe One Chase Account

29.     Among the documents produced by Chase in response to the Chase Subpoena include statements and activity records for two different accounts held in the name of defendant Luxe One.  One of these Luxe One accounts ends in 2939 and is referred to herein and in the Complaint as the "Luxe One 2939 Account." (*See* Complaint, Exhibit 1 to this declaration, at ¶¶ 76-78.)  The Luxe One 2939 Account is the only Luxe One account that Plaintiffs knew about and into which their investments in Luxe One/*The Letters* were wire transferred.  The other Luxe One account ends in 1572 and is referred to herein and in the Complaint as the Luxe One 1572 Account.  The Complaint alleges that the Luxe One 1572 Account was at all times kept a secret from Plaintiffs.  (*Id*.)

30.     The Chase documents relating to the Luxe One 2939 Account reflect that Defendant Williams had authority and control over the account.

31.     The Chase documents relating to the Luxe One 1572 Account reflect that both Defendant Williams and Defendant Brown had authority and control over the account.

32.     Attached hereto as **Exhibit 12** is a true and correct copy of statements of the Luxe One 1572 Account from June 2013 through August 2014, which were produced by Chase in response to the Chase Subpoena.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614 - 2545

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

33.     Over time, approximately $1 million flowed into the Luxe One 1572 Account directly from either the Luxe One 2939 Account or the Moment Factory Chase account, both of which were funded by Plaintiffs.

34.     As can be seen in Exhibit 12, Defendant "Steven J. Brown" used ATM & Debit Card No. 1507 in connection with the Luxe One 1572 Account.

35.     A cursory review of the bank statements is all that is needed to see that Defendant Brown treated the Luxe One 1572 Account as if the money therein was for his own personal use and enjoyment, and that he signed for and made repeated withdrawals and transfers of substantial sums of money during the year that the account was active.

36.     Among the transfers directed by Brown from the Luxe One 1572 Account were transfers of at least $238,000 to the Chicago-based law firm of Collins, Bargione & Vuckovich (the "CBV Law Firm").  Attached hereto as **Exhibit 13** are excerpts of the Luxe One 1572 Account records produced by Chase reflecting these transfers to the CBV Law Firm.

37.     The CBV Law Firm's website indicates that it has five lawyers, and that its practice areas include securities, criminal defense, and civil and criminal RICO actions.  A true and correct copy of print-outs from the firm's website is attached hereto as **Exhibit 14**.

38.     Although requested, neither Brown nor any of the other Defendants have produced documents explaining or accounting for these Brown-directed transfers and withdrawals.

Defendant Legacy Film Crest, LLC and the Williams-Controlled Legacy Account

39.     Genuine bank records produced by Chase pursuant to the Chase Subpoena show that approximately $1 million was transferred into a Chase account held by defendant Legacy directly from all three of the subject investment entity accounts (*i.e.*, the accounts held by Luxe One, Moment Factory and Visions).

TROUTMAN  SANDERS  LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

40.   Attached hereto as **Exhibit 15** is a true and correct copy of excerpts from the Chase production showing these transfers, which show the following:

- The same day that Plaintiffs wire transferred their $500,000 investment into the Visions, LLC Chase account for the *Made in America* investment (April 26, 2013), $450,000 of that money was wire transferred to the Legacy Chase account.  Another $35,000 was wire transferred from the Visions Chase account to the Legacy account three days later.  At the time of those transfers, the Legacy Chase account had a negative balance.

- On July 8, 2013, $100,000 was transferred into the Legacy Chase account from the Luxe One 2939 Account, and another $50,000 was transferred from the Luxe One 2939 Account one week later.

- On August 1, 2013, $25,000 was transferred into the Legacy Chase account from the Luxe One 2939 Account.

- On September 13, 2013, $35,000 was transferred into the Legacy Chase account from the Luxe One 2939 Account.

- On October 23, 2013, $7,500 was transferred into the Legacy Chase account from the Luxe One 2939 Account.

- On November 4, 2013, $50,000 was transferred into the Legacy Chase account from Moment Factory's Chase account.

- On January 3, 2014, $25,000 was transferred into the Legacy Chase account from Moment Factory's Chase account, and another $25,000 was transferred into the Legacy Chase account from the Luxe One 2939 Account.

- On January 17, 2014, $100,000 was transferred into the Legacy Chase account from the Luxe One 2939 Account.

- On March 5, 2014, $75,000 was transferred into the Legacy Chase account from the Luxe One 2939 Account.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- On April 11, 2014, $25,000 was transferred into the Legacy Chase account from Moment Factory's Chase account.

41.   I have reviewed the complete set of statements for the Legacy Chase account from April 2013 to April 2014.  Much like Brown's treatment of the secret Luxe One 1572 Account, Williams treated the Legacy Chase account as a personal piggy bank, spending enormous sums on things such as luxurious vacations, his children's private school tuition, and yacht club membership fees.

### Defendant Garuda Partners, Ltd., and the Purchase of the Calabasas Property

42.   Plaintiffs' Complaint alleges that Defendants fraudulently transferred over $700,000 of Plaintiffs' money contained in Moment Factory's Chase account to purchase certain real property in Calabasas, California (the "Calabasas Property") in the name of Defendant "Garuda Partners, Ltd., as Trustee of the Mulholland Ridge Trust."  (*See* Complaint, Exhibit 1 to this declaration, at ¶ 83.)

43.   On February 25, 2015, well after the Complaint was filed, Defendant Williams provided sworn testimony in an arbitration proceeding (to which Plaintiffs are not parties) regarding the above-referenced allegation in Plaintiffs' Complaint.  Defendant Williams essentially testified that the money was used to purchase land so that the land could be used as collateral for additional money to use for prints-and-advertising for films.  A true and correct copy of a relevant excerpt of the transcript of Williams' testimony in the arbitration is attached hereto as **Exhibit 16**.

44.   Because my review of genuine bank statements for Moment Factory's Chase account reflected a transfer of more than $700,000 to First American Title Company (the "Title Company"), on September 26, 2014, I issued a subpoena directed to the Title Company, requesting that they produce, *inter alia*, documents related to that transfer and any associated transactions.  A true and correct copy of that subpoena is attached hereto as **Exhibit 17**.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

45.     The Title Company produced documents in response to the subpoena the following month.  A true and correct copy of the signed "Declaration of Records Custodian" served by the Title Company along with its production in response to the subpoena is attached hereto as **Exhibit 18**.

46.     Attached hereto as **Exhibits 19 through 24** are true and correct copies of selected documents produced by the Title Company in response to the subpoena.

47.     **Exhibit 19** is a Grant Deed reflecting that the Calabasas Property was transferred to Defendant "Garuda Partners, Ltd., as Trustee of the Mulholland Ridge Trust."

48.     **Exhibit 20** is a Final Settlement Statement and Receipts for Deposits, indicating that the Calabasas Property was purchased through transfers of money exceeding $700,000 from Moment Factory's Chase account.

49.     **Exhibit 21** is a letter signed by Defendant Williams representing to the Title Company that "J. David Williams is the Acting General Manager and Controller of Garuda, Ltd.  Garuda, Ltd. is a Limited Partnership formed in Luxembourg. . . . As the Acting Trustee of the Mulholland Ridge Trust, he is authorized to sing [sic] and act on behalf of Garuda, Ltd."

50.     **Exhibit 22** is an e-mail string from February 2014 reflecting that a representative of the seller asked why the purchase money for the Calabasas Property was coming from Moment Factory when the "agreement is that BUYER deposits."  The e-mail string further reflects that that concern was alleviated when it was said in response that:  "Moment Factory is a service that David uses for domestic funds wiring.  He transferred his funds into Moment Factory and they wire the funds out at no cost.  So it would seem it is a non-issue."

51.     **Exhibit 23** is an e-mail string, dated March 28, 2014, with attachment, reflecting Defendant Williams' transmission to the Title Company of "documents from the formation of the Land Trust called Mulholland Ridge Trust."  Mr. Williams' e-mail to the Title Company states in part:  "I of course have formed this

TROUTMAN  SANDERS  LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614-2545

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

1 Trust to protect the asset purchase and would like as little of this made public as

2 possible."  The attachment to the e-mail includes a trust document indicating that

3 the beneficiaries of The Mulholland Ridge Trust are:  "Parker James Williams, an

4 Individual, Carter Davidson Williams, an Individual, and Windsor Nicole Williams,

5 and [sic] Individual[.]"

6     52.    **Exhibit 24** is an e-mail string, dated March 28, 2014, with attachment,

7 which reflects that Defendant Williams responded to an e-mail from the Title

8 Company by stating, in part:  "why would the beneficiaries of the Trust need to sign

9 . . . they are not Trustees, by law a Beneficiary has no authority beyond . . . the

10 financial benefit of the Trust?  My daughter is 11 years old."  (Ellipses in original.)

11

12 Defendant Bipartisan Coalition

13     53.    Among the documents produced by Chase in response to the Chase

14 Subpoena include statements and activity records for an account held in the name of

15 defendant Bipartisan Coalition.

16     54.    Attached hereto as **Exhibit 25** is a true and correct copy of statements

17 of Bipartisan Coalition's Chase account from June 2013 through July 2014 (with

18 social security numbers, tax payer ID numbers and similar identification numbers

19 redacted).

20     55.    The records for the Bipartisan Coalition account show the following:

21         a.    The account was opened in June 2013 with Defendant Williams

22             as the account's signatory.

23         b.    The account carried a $0 balance until $50,000 from the Luxe

24             One 2939 Account was deposited into the Bipartisan Coalition

25             account on July 8, 2013.

26         c.    The next activity associated with the Bipartisan Coalition

27             account was a July 25, 2013 transfer of $20,000 from the

28

24871431

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  Bipartisan Coalition account to the secret Defendant Brown-

2  controlled Luxe One 1572 Account.

3     d.  The next activity associated with the Bipartisan Coalition

4  account came on August 6, 2013, when $60,000 from the Luxe

5  One 2939 Account was deposited into the Bipartisan Coalition

6  account.

7     e.  Then, later that same day (Aug. 6, 2013), two wire transfers of

8  $43,000 each were made – one apparently having something to

9  do with former Senator Joseph Lieberman, and one apparently

10  having something to do with former Senator Scott Brown.

11  These transfers left a balance of $3,950.

12     f.  The next activity associated with the Bipartisan Coalition

13  account came on October 21, 2013, when $1,000 was

14  transferred from the Bipartisan Coalition account to the

15  Defendant Brown-controlled Luxe One 1572 Account.

16     g.  There was no activity (other than service fees) until July 23,

17  2014, a couple of months after this lawsuit was filed, when

18  Defendant Williams closed the account and withdrew the

19  remaining $2,845 in cash.

20     56.  Based on my review of the limited documents produced by Defendants

21  to date, Defendants have failed to produce documents explaining or accounting for

22  these transfers.

23  Defendant Highgate Pass

24     57.  Genuine bank records produced by Chase pursuant to the Chase

25  Subpoena show that more than $175,000 was transferred to Defendant Highgate

26  Pass, LLC ("Highgate Pass") directly from the Luxe One 2939 Account and the

27  Moment Factory Chase account.

28

24871431

- 13 -

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

58.     Attached hereto as **Exhibit 26** is a true and correct copy of excerpts from the Chase production showing these transfers from the Luxe One 2939 Account and the Moment Factory Chase account to Defendant Highgate Pass.

59.     These transfers included:

    a. A transfer of $50,000 from the Luxe One 2939 Account on July 18, 2013;

    b. A transfer of $7,500 from the Luxe One 2939 Account on October 2, 2013;

    c. A transfer of $7,000 from the Luxe One 2939 Account on October 23, 2013;

    d. A transfer of $50,000 from the Moment Factory Account on November 1, 2013;

    e. A transfer of $20,000 from the Luxe One 2939 Account on December 27, 2013;

    f. A transfer of $30,000 from the Luxe One 2939 Account on February 18, 2014; and

    g. A transfer of the remaining balance of $11,382.53 from the Moment Factory Chase account on July 23, 2014 – a couple of months after this lawsuit was filed and the same day that Defendant Williams closed the Bipartisan Coalition account and withdrew the remaining cash in that account.

60.     Based on my review of the limited documents produced by Defendants to date, Defendants have failed to produce documents explaining or accounting for these transfers or, more generally, Highgate's role, activities, or services regarding the subject film investments.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 - 2545

**Plaintiffs' Money Traced to Post-Lawsuit Purchase of Defendant Williams'**
**Residence**

61.     My review of genuine bank statements for the Luxe One 2939 Account produced by Chase in response to the Chase Subpoena revealed transfers exceeding $240,000 to Pickford Escrow Company, Ron Gonen and Rdjr Holdings, LLC.  True and correct excerpts of such bank statements that reflect these transfers are attached hereto as **Exhibit 27**.

62.     I issued a subpoena directed to Pickford Escrow Company on October 15, 2014, a true and correct copy of which is attached hereto as **Exhibit 28**.

63.     Pickford Escrow Company produced documents in response to the subpoena.  A true and correct copy of the signed "Declaration of Custodian of Records" served by Pickford Escrow Company along with its production is attached hereto as **Exhibit 29**.

64.     Attached hereto as **Exhibits 30 through 32**, respectively, are true and correct copies of selected documents produced by Pickford Escrow Company in response to the Subpoena.  These documents reflect that:

a.  On September 15, 2014, several months after this lawsuit was filed, the sale of a $3.5 million house closed, with Rdjr Holdings, LLC as seller, and Mirada Park, LLC (a newly created limited liability company controlled by Defendant Williams and his wife, Kammie L. Williams) as buyer;

b.  Ron Gonen is the principal of Rdjr Holdings, LLC; and

c.  The aforementioned transfers from the Luxe One 2939 Account exceeding $240,000 went toward the purchase of the house (with more than $140,000 initially being paid as $16,000 monthly rental payments, and then ultimately being applied toward the purchase price, pursuant to a lease with an option to buy).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

24871431

- 15 -

65.     **Exhibit 30** is a copy of the Amended Master Final Settlement Statement produced by Pickford Escrow Company.

66.     **Exhibit 31** is a Grant Deed produced by Pickford Escrow Company.

67.     **Exhibit 32** is a copy of an e-mail string indicating that monthly rental payments of $16,000 were to be applied toward the purchase price.

68.     I also issued a subpoena directed to Rdjr Holdings, LLC.  After the subpoena was served, I received a call from a David Chaimowitz, a representative of the company.  He informed me that Rdjr Holdings, LLC had originally entered into the "lease with an option to buy" the house with Defendant Williams "on behalf of the Garuda Trust" as lessee/buyer, but that Williams later assigned his rights to Mirada Park, LLC for the actual closing of the sale.  Later, on October 24, 2014, Mr. Chaimowitz e-mailed me what he described as the "Lease with Purchase Option contract from June 2013" ("Lease with Option").  The Lease with Option does, in fact, refer to "J. David Williams on behalf of, the Garuda Trust" as the "Buyer."  A true and correct copy of the Lease with Option is attached hereto as **Exhibit 33**.

### Just Some (of the Many) More Examples of Misuse of Plaintiffs' Money

69.     My review of genuine bank statements for the Luxe One 2939 Account produced by Chase in response to the Chase Subpoena revealed a transfer of $89,394.20 from that account to Residential Fund 118, LLC.

70.     I issued a subpoena directed to Residential Fund 118, LLC on October 15, 2014, a true and correct copy of which is attached hereto as **Exhibit 34**.

71.     The last page of Exhibit 34 (a document produced by Chase) contains a reproduction of a $89,394.20 check written to Residential Fund 118, LLC and apparently signed by Defendant Williams, which has the following memo:  "Payoff – Loan for Residence and Boat."

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

72.     Attached hereto as **Exhibit 35** is a true and correct copy of documents produced by Residential Fund 118, LLC in response to the subpoena.  These documents reflect that the aforementioned $89,394.20 transfer from the Luxe One 2939 Account was used to pay off a loan obtained to purchase a 1982 75 foot Motor Yacht.  The borrower/buyer was "The Garuda Trust" and the purchase agreement was signed by "J. David Williams."  The contact information provided for "The Garuda Trust" on the purchase agreement contained the street address and e-mail address most often associated with Defendant Williams.

73.     Documents produced by Chase pursuant to the Chase Subpoena also reflect that tens of thousands of dollars were diverted from Luxe One to "Marriot Ownership Resorts, Inc."  True and correct copies of bank records reflecting such transfers are attached hereto as **Exhibit 36**.

74.     There are many more examples of similar transfers of Plaintiffs' money from the investment-entity accounts for purposes apparently having nothing to do the marketing or production of the subject films.

### Additional Phony Accountings and Bank Records Were Provided After the Investments Were Made

75.     The Busbice Declaration discusses and attaches the 3/19/14 Letter and the enclosed Purported Luxe One July-Dec. Financial Records.  (*See* Busbice Declaration, ¶ 38, Ex. J.)

76.     Genuine bank records produced by Chase pursuant to the Chase Subpoena reflect that the Purported Luxe One July-Dec. Financial Records were fraudulently prepared to cover-up Defendants' theft and conversion.  Attached hereto as **Exhibit 37** is a true and correct copy of the genuine bank statements for the Luxe One 2939 Account for the July – December 2013 time period, which can be compared with the fraudulent Purported Luxe One July-Dec. Financial Records contained in Exhibit J to the Busbice Declaration.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

77.     The following chart shows the disparities between the Purported Luxe One July-Dec. Financial Records and the genuine bank records produced by Chase with respect to each month's beginning and ending balance:

| ACCORDING TO PHONY LUXE ONE 2939 ACCOUNT STATEMENTS | | ACCORDING TO GENUINE LUXE ONE 2939 ACCOUNT STATEMENTS | |
|---|---|---|---|
| July Statement Beginning Balance: | $8,003,150.24 | July Statement Beginning Balance: | $0 |
| July Statement Ending Balance: | $9,953,935.33 | July Statement Ending Balance: | $782,220.09 |
| August Statement Beginning Balance: | $9,953,935.33 | August Statement Beginning Balance: | $782,220.09 |
| August Statement Ending Balance: | $9,894,110.42 | August Statement Ending Balance: | $37,370.18 |
| September Statement Beginning Balance: | $9,894,110.42 | September Statement Beginning Balance: | $37,370.18 |
| September Statement Ending Balance: | $10,075,701.05 | September Statement Ending Balance: | $43,884.81 |
| October Statement Beginning Balance: | $10,075,701.05 | October Statement Beginning Balance: | $43,884.81 |
| October Statement Ending Balance: | $10,030,851.85 | October Statement Ending Balance: | $21,301.22 |
| November Statement Beginning Balance: | $10,030,851.85 | November Statement Beginning Balance: | $21,301.22 |
| November Statement Ending Balance: | $9,841,694.43 | November Statement Ending Balance: | $82,292.98 |
| December Statement Beginning Balance: | $9,841,694.43 | December Statement Beginning Balance: | $82,292.98 |
| December Statement Ending Balance: | $9,529,103.20 | December Statement Ending Balance: | $59,968.95 |

78.     As a quick comparison between Exhibit 37 hereto and Exhibit J to the Busbice Declaration confirm, it is not only the account balances in the Purported

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

1  Luxe One July-Dec. Financial Records that are false – the various purported

2  deposits and withdrawals stated therein were falsified too.  As but one example,

3  according to the Purported Luxe One July-Dec. Financial Records, the first of the

4  "Checks Paid" from the Luxe One 2939 Account shown on the July 2013 statement

5  (page 2 of 4 of that statement, contained in Exhibit J to the Busbice Declaration)

6  was Check No. 97 in the amount $9,394.20 to "Blue Room Post Production, Inc."

7  However, according to the genuine bank records, Check No. 97 written from the

8  Luxe One 2939 Account was the aforementioned transfer in the amount of

9  $89,394.20 to Residential Fund 118, LLC to purchase the 75 foot yacht.  (*See*

10  second page of Exhibit 37 hereto, and the last page of Exhibit 35 hereto (the

11  Subpoena directed to Residential Fund 118, LLC) attaching a copy of the genuine

12  Check No. 97.)  The Purported Luxe One July-Dec. Financial Records also

13  scrubbed evidence of other unauthorized transfers, such as those going toward the

14  purchase of defendant Williams' residence.

15      79.    The Purported Luxe One July-Dec. Financial Records also conflicted

16  with earlier fake records sent to Plaintiffs.  Whereas the Purported 12/17 Luxe One

17  Balance Statement sent to Plaintiffs in December 2013 falsely represented that the

18  Luxe One 2939 Account contained $18,014,609.46 on December 17, 2013, the

19  Purported Luxe One July-Dec. Financial Records sent to Plaintiffs in March 2014

20  falsely represented that the account had $9,539,128.20 on December 17, 2013.

21  (*Compare* Exhibit I to the Busbice Declaration, with the last six pages of Exhibit 37

22  hereto.)  However, both of those conflicting representations were false – as

23  discussed above, there actually was only $112,945.09 in the Luxe One 2939

24  Account at the time.  (*See* ¶¶ 24-25 of this declaration above and Exhibit 9 hereto.)

25      80.    The Busbice Declaration also discusses and attaches the Purported

26  Luxe One Jan-Feb Statements, which were provided to Busbice in late March 2014.

27  (*See* Busbice Declaration, ¶ 40, Ex. K.)

28

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

81.     Genuine bank records produced by Chase pursuant to the Chase Subpoena reflect that the Purported Luxe One Jan-Feb Statements were similarly fraudulently created to cover-up the fraud and conversion.  Attached hereto as **Exhibit 38** is a true and correct copy of the genuine bank statements for the Luxe One 2939 Account for the January – February 2014 time period, which can be compared with the fraudulent Purported Luxe One Jan-Feb Statements attached as Exhibit K to the Busbice Declaration.

82.     The following chart shows the disparities between the Purported Luxe One Jan-Feb Statements and the genuine bank records produced by Chase with respect to beginning and ending balances:

| ACCORDING TO PHONY LUXE ONE 2939 ACCOUNT STATEMENTS | | ACCORDING TO GENUINE LUXE ONE 2939 ACCOUNT STATEMENTS | |
| --- | --- | --- | --- |
| January Statement Beginning Balance: | $9,529,103.20 | January Statement Beginning Balance: | $59,968.95 |
| January Statement Ending Balance: | $19,954,596.69 | January Statement Ending Balance: | $2,366,141.09 |
| February Statement Beginning Balance: | $19,954,596.69 | February Statement Beginning Balance: | $2,366,141.09 |
| February Statement Ending Balance: | $19,713,796.12 | February Statement Ending Balance: | $1,853,783.84 |

**Carol Martin**

83.     As noted above, in February 2015, Defendant Williams provided sworn testimony in connection with an arbitration proceeding, to which Plaintiffs are not parties.  Williams was deposed on February 19, 2015 and provided hearing testimony before the tribunal on February 25, 2015.  True and correct excerpts from the transcripts of Williams' testimony provided to me by claimant's counsel in that arbitration are attached hereto as **Exhibit 39**.  That testimony reflects that Williams

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine , CA 92614 - 2545

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

is attempting to place blame on a "Carol Martin" for the false bank statements, accounting and financial information provided to Plaintiffs.

84.     Defendants belatedly served Initial Disclosures in this action on December 4, 2014 (they were due on October 13, 2014).  A true and correct copy of Defendants' Initial Disclosures are attached hereto as **Exhibit 40**.  Defendants' Initial Disclosures identify Carol Martin as a witness in action, stating that "Ms. Martin has knowledge about dealing with Plaintiffs regarding Plaintiffs' investments in some of the movie projects, and the provision of certain financial information to Plaintiffs."  However, Defendants failed to provide any contact information for Ms. Martin.  (Ex. 40 at 2:13-15.)

85.     On December 9, 2014, I e-mailed Defendants' counsel, John Burgee, and asked that he "provide any and all contact information for Carol Martin."  My e-mail further stated that:  "Even if Defendants are not 100% sure about her current contact information, they must provide her last known telephone number, address and any other contact information."  A true and correct copy of this e-mail is attached hereto as **Exhibit 41**.

86.     Later on December 9, 2014, Mr. Burgee relied to my e-mail stating:  "That was information that I was (and still am) waiting on.  I will ask again."  A true and correct copy of Mr. Burgee's reply e-mail is attached hereto as **Exhibit 42**.

87.     I never heard back from Mr. Burgee regarding Carol Martin, and Defendants have failed to supplement their Initial Disclosures, or otherwise identify and provide contact information as to Carol Martin.

88.     On November 18, 2014, Plaintiffs served their first set of interrogatories directed to Luxe One.  The fifth interrogatory in that set asked Luxe One to "[p]rovide any and all contact information for Carol Martin (referenced in paragraph 68 of the Complaint and paragraph 54 of your Answer), including but not limited to any telephone numbers, addresses, email addresses and websites."  On April 6, 2014, after the hearing on Plaintiffs' motion to compel, Defendants'

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  counsel provided copies of interrogatory responses purportedly served on March

2  16, 2014, approximately four months after the interrogatories were served.  In

3  response to the above-quoted Interrogatory No. 5, Luxe One stated:  "Ms. Martin's

4  e-mail was carolmartin@accountant.com and the responding party believes that Ms.

5  Martin resided in the Burbank area.  Otherwise, the responding party does not have

6  and has not located responsive information."  A true and correct copy of an excerpt

7  from the responses containing Luxe One's response to Interrogatory No. 5 is

8  attached hereto as **Exhibit 43**.

9

10  **Defendants Have Failed to Produce True Accounting and Financial Records**

11       89.     Faced with the reality that Plaintiffs were able to obtain genuine bank

12  records of the investment entities' Chase accounts showing the multitude of

13  transfers for items having nothing to do with the subject films, Williams, while

14  testifying in the aforementioned arbitration proceedings, has recently asserted that

15  although he transferred money out of bank accounts indiscriminately and took

16  enormous amounts for his own benefit, he was intending to treat those amounts as

17  loans from the investment entities, which he would repay with interest.  A true and

18  correct copy of a relevant excerpt from Williams' arbitration testimony is attached

19  hereto as **Exhibit 44**.

20       90.     One would expect there to be detailed accounting books and records

21  for the investment entities (*e.g.*, Luxe One, Moment Factory and Visions) recording

22  the transfers and uses of the millions of dollars invested.  That would be

23  particularly true if Williams truly did intend to repay any "loans" that he received

24  from the entities.  However, although formally requested in discovery back in

25  September 2014 (after months of pre-lawsuit informal demands), to date,

26  Defendants have failed to produce a true and complete accounting of Plaintiffs'

27  investment funds.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614 -2545

24871431

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

**Defendants Produce a Document Indicating that Reiss Provided Legal Services With Respect to the Initial *Made in America* Project**

91.    Attached hereto as **Exhibit 45** is a true and correct copy of a document produced by Defendants in this action.

**Meet and Confer Efforts and Defendant Reiss's Belated Privilege Log**

92.    I raised the crime-fraud exception with Defendants' counsel early on in this action and in multiple meet and confer sessions.  Defendants' counsel initially took the position that it was "premature" to address the issue, because he had yet to determine if there were any communications that would be withheld based on privilege.  I disagreed with that position, but decided to hold off for a time, given that Plaintiffs were moving forward on motions to compel raising a number of other issues, including Defendants' waiver of the attorney-client privilege by asserting boilerplate objections and failing to provide a timely privilege log.

93.    In February 2015, after Plaintiffs served L.R. 37-1 joint stipulations for such motions to compel, Defendants' counsel served privilege logs for the first time in this action.  There were two privilege logs, both of which were represented as being privilege logs for attorney Reiss's documents only:  (1) one for Reiss's hard copy documents; (2) one for Reiss's electronic documents.  True and correct copies of these privilege logs are attached hereto as **Exhibits 46 and 47**, respectively.

94.    On February 19, 2015, I sent Defendants' counsel a meet and confer letter stating Plaintiffs' position regarding application of the crime-fraud exception, citing extensive legal authorities on the issue, and requesting Defendants' counsel's availability for a conference within 10 days pursuant to L.R. 37-1.  A true and correct copy of that letter is attached hereto as **Exhibit 48**.

95.    Defendants' counsel failed to respond within 10 days as required by L.R. 37-1.  Defendants' counsel finally responded by e-mail on March 2, 2015.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

24871431

- 23 -

1   Defendants' counsel's e-mail, which failed to provide availability for a conference,

2   asserted, among other things, that Reiss "has an obligation to assert the attorney-

3   client privilege as to all communications since the privilege belongs to the client."

4   His e-mail also suggested that the crime-fraud exception would not apply to

5   communications after the lawsuit was filed, and that Plaintiffs should delay seeking

6   a determination on the crime fraud exception until they identified precisely which

7   documents they believed were not privileged.  On March 3, 2015, I replied to that

8   e-mail, responding to each of Defendants' counsel's points, and requesting a

9   telephone conference to discuss.  Among other things, my reply expressed

10  frustration that:  "neither you, nor any of your clients, have ever, despite our

11  requests, articulated:  (a) what matters Mr. Reiss was retained for, and when; (b)

12  who his clients were; and (c) who in fact engaged Mr. Reiss as counsel (by retainer

13  agreement or otherwise) and assumed responsibility for the payment of any legal

14  fees."  A true and correct copy of the e-mail string containing Defendants'

15  counsel's March 2, 2015 e-mail and my reply is attached hereto as **Exhibit 49**.

16          96.    Defendants' counsel agreed to meet and confer orally, and on March 5,

17  2015, we had a telephone conference to discuss the attorney-client privilege and the

18  crime-fraud exception.  It was immediately clear that Defendants' counsel was not

19  going to concede that the crime-fraud exception applied to any communications.  In

20  response to Defendants' attempt to limit the issue to pre-lawsuit communications, I

21  explained that the fact that Reiss is a lawyer and has allegedly represented Mr.

22  Williams in certain matters in the past, does not mean that every communication

23  between them initially is privileged.  I again expressed frustration that Defendants

24  still had not even articulated the temporal and subject-matter scope of Reiss's

25  representation, and who exactly he represented.  I conveyed that, as far as I knew,

26  for purposes of this litigation, Reiss (a transactional attorney) and the other

27  Defendants were merely co-defendants, alleged to have conspired to defraud

28  Plaintiffs, and that Plaintiffs had yet to even establish that post-lawsuit

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

24871431

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION

1   communications between Reiss and the other Defendants relevant to the subject

2   matters of this suit would be privileged in the first instance.  During our conference,

3   Defendants' counsel could not, or would not, provide any firm positions regarding

4   the scope of Reiss's representation.  Thus, I determined that this motion to

5   determine the application of the crime-fraud exception was necessary.

6       I declare under penalty of perjury under the laws of the United States of

7   America that the foregoing is true and correct.  Executed on April 13, 2015 at

8   Irvine, California.

9                               /s/ Thomas H. Prouty
                                Thomas H. Prouty

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 - 2545

DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION FOR
DETERMINATION OF APPLICATION OF CRIME-FRAUD EXCEPTION