PAUL L. GALE, Bar No. 065873
paul.gale@troutmansanders.com
SIAVASH DANIEL RASHTIAN, Bar No. 228644
daniel.rashtian@troutmansanders.com
THOMAS H. PROUTY, Bar No. 238950
thomas.prouty@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Plaintiffs
BILL A. BUSBICE, JR., OLLA PRODUCTIONS,
LLC, and ECIBSUB, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BILL A. BUSBICE, JR., an individual; OLLA PRODUCTIONS, LLC, a limited liability company; and ECIBSUB, LLC, a limited liability company, | Case No. CV 14-4077 PA (AJWx) consolidated with CV 14-7063 PA (AJWx) |
| Plaintiffs, | Magistrate Judge Andrew J. Wistrich |
| v. | **PLAINTIFFS' SUPPLEMENTAL BRIEF RE: ARBITRATION-BASED DISCOVERY OBJECTION (PURSUANT TO COURT'S ORDER AT DOCKET NO. 49).** |
| JAMES DAVID WILLIAMS, an individual; *et al.*, | |
| Defendants. | |
| AND RELATED CONSOLIDATED ACTION. | Discovery Cut-off: July 27, 2015 Trial Date: October 6, 2015 |

*Side text:* TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25436316

# **TABLE OF CONTENTS**

**Page**

1.      INTRODUCTION ............................................................................. 1

2.      A RECAP, AND AN UPDATE, ON THE ARBITRATION-
        BASED OBJECTIONS TO PRODUCTION OF DOCUMENTS ....... 4

3.      THE COURT'S ORDER ON THE MOTIONS TO COMPEL
        ARBITRATION ................................................................................ 7

4.      THE ORDER DID NOT RESTRICT PLAINTIFFS' RIGHT TO
        DISCOVER INFORMATION FROM VISIONS AND
        SEPPALA RELEVANT TO THE CLAIMS THAT WILL BE
        TRIED IN OCTOBER – IN FACT, IT RELIED ON CASE
        LAW THAT WOULD PERMIT SUCH DISCOVERY ................... 10

5.      PLAINTIFFS SHOULD NOT BE HANDICAPPED FROM
        PROVING THEIR CLAIMS THAT WILL BE TRIED IN
        OCTOBER ...................................................................................... 13

6.      CONCLUSION ............................................................................... 14

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: ARBITRATION-BASED DISCOVERY OBJECTION
(PURSUANT TO COURT'S ORDER AT DOCKET NO. 49)

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................ 12

*Global Live Events v. Ja-Tail Enterprises, LLC*,
  2014 U.S. Dist. LEXIS 63963 (C.D. Cal. May 8, 2014) ............................ 10, 11

*Vertrue Inc. v. Meshkin*,
  2006 U.S. Dist. LEXIS 37700 (D. Conn. June 8, 2006) ............................. 11, 12

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 - 2545

## 1.    INTRODUCTION

As shown in their recently filed Motion for Determination of Application of Crime-Fraud Exception (Dkt Nos. 50-54), Plaintiffs were the victims of a massive fraud.  As part of a continuing scheme lasting nine months, at least four individuals, including defendant Gerald Seppala ("Seppala"), conspired to, and did, fraudulently induce Plaintiffs to invest $10,900,00 in specific investment-entities that purportedly owned and/or controlled rights to four films:  *Made in America*, *Left Behind*, *The Letters*, and *Angels Sing*.  The investments, however, were a sham, designed by the con men-defendants to steal Plaintiffs' investment funds.

Seppala was the head of the snake – the first of the Defendants to approach Plaintiffs, and Plaintiffs' point of introduction to the other Defendants.  Seppala held himself out as the producer of *Made in America,* which was the subject of the first fraudulently-induced investment.  He was both the man in charge and Plaintiffs' fiduciary with respect to that first investment.  Indeed, he served as the managing member of defendant Visions, LLC ("Visions") – the first entity into which Plaintiffs were tricked into investing.  It was Seppala who represented to Plaintiffs that investing in *Made in America*, along with defendant James David Williams ("Williams") was a special opportunity because Williams was a prominent Hollywood executive and financier who typically did not invest in projects as small as *Made in America*.  It was Seppala who sent Plaintiffs the fraudulently created and demonstrably false "wire confirmation" on April 15, 2013 reflecting that Williams had already transferred his $500,000 into Visions' corporate bank account.  And it was Seppala who signed and provided to Plaintiffs an acknowledgment on April 25, 2013 certifying that Visions had already received Williams' $500,000 "by way of wire transfer into the checking or deposit account of Visions, LLC[.]"  All of those statements were patently false and fraudulently intended to induce Plaintiffs to invest their first $500,000 with Defendants.

- 1 -

After Plaintiffs made that first investment, Seppala assisted his co-conspirators in swindling Plaintiffs out of more than $10 million in later "investments," not only by actively concealing that the *Made in America* project was a sham, but by affirmatively representing to Plaintiffs at critical times when later investments were being pitched that things were progressing as planned and that various milestones were being reached with respect to the project. And Seppala was rewarded handsomely for his duplicity, receiving at least tens of thousands of dollars over the course of April 2013 – April 2014 from the various investment-entity accounts as his cut of the conspiracy's proceeds.

There is no dispute that Plaintiffs were at least co-equal investors in and members of Visions – although the evidence shows that Plaintiffs were the *only* party to ever actually invest *anything* in Visions. Nonetheless, although they admittedly have information relating to the company and the *Made in America* investment (which has never been provided to Plaintiffs, despite their requests), both Visions and Visions' managing member (and Plaintiffs' fiduciary), Seppala, refuse to provide any such information to Plaintiffs.

Seppala's and Visions' complete refusal to provide any information relating to Visions or the *Made in America* investment is not based on irrelevance, privacy, or undue burden. Rather, it is based solely on the fact that the Court has referred a relatively small slice of this case to arbitration. This novel and wholly unsupported "arbitration objection," however, is meritless. As explained below, after considering the relationship between the few arbitrable claims and the many non-arbitrable claims and weighing the relevant factors, the Court decided that the great bulk of this case should <u>not</u> be stayed, but rather should proceed in the normal course in this Court. Included in these non-stayed claims are: (1) Plaintiffs' conspiracy to defraud claims against Seppala and Visions to recover damages for the fraudulently-induced investments in *Angels Sing*, *Left Behind* and *The Letters*; and (2) all of the Plaintiffs' claims against the nine other defendants, including

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

those claims based on the *Made in America* investment.  Thus, Seppala and Visions are full-fledged parties to this case, and Plaintiffs are required to try their fraud and conspiracy-based claims (including as they relate to the *Made in America* investment) in this Court in October.

As discussed in Sections 3 and 4 below, nothing in the Court's ruling on the motions to compel arbitration suggests that Plaintiffs should not have the right to obtain information from Seppala and Visions in discovery in *this* action that is relevant to non-stayed claims heading to trial in this Court.  On the contrary, the Court's decision not to stay this case relied heavily on an earlier order issued by Judge Anderson, which recognized that in a situation like this (where related claims are proceeding in both a court and an arbitration action), the parties to the district court action must participate fully in discovery, even if they also are parties to the arbitration proceeding and the discovery also relates to the arbitrable claims.

That is the only fair and logical result.  Overruling Seppala's and Visions' "arbitration objection" to discovery in this action ensures that Plaintiffs will be entitled to discover critical information that is directly relevant to the claims that Plaintiffs are expected to try in this Court, from the central, and in some cases, *only*, sources of such information.  Conversely, sustaining the unsupported "arbitration objection" only serves to allow these parties to continue to conceal the critical facts from Plaintiffs.  What legitimate and overriding interest does Visions have in withholding relevant information from its own member?  What legitimate and overriding interest does Seppala (Visions' managing member and Plaintiffs' fiduciary) have in withholding such information?

Furthermore, it is unclear what sustaining the "arbitration objection" would mean in this case going forward.  Certainly, Plaintiffs will be deposing Seppala and Visions in this action, but would Seppala be entitled to refuse to answer any questions relating to the purported *Made in America* project, despite the fact that representations regarding the status of that project were made by Seppala and others

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 - 2545

25436316

- 3 -

1   as the scheme progressed in order to induce the later investments?  The answer, of

2   course, must be no.  Indeed, courts considering situations like these consistently

3   resolve such discovery issues in favor of disclosure, if the information sought is

4   relevant to the non-stayed claims.

5        Visions and Seppala would prefer to continue to conceal the truth from

6   Plaintiffs for as long as possible, and take advantage of the narrow scope of

7   discovery allowed in arbitration.  But that preference does not change the fact that

8   the information sought from them in this lawsuit is relevant to claims proceeding in

9   this lawsuit against both them and their nine co-defendants.  And that preference

10  does not alter or defeat Plaintiffs' discovery rights in this action under the Federal

11  Rules of Civil Procedure.  The unsupported "arbitration objection" should be

12  overruled, and Visions and Seppala should be ordered to produce all documents in

13  their possession, custody or control that are responsive to Plaintiffs' first set of

14  requests for production of documents.

## 2.   A RECAP, AND AN UPDATE, ON THE ARBITRATION-BASED OBJECTIONS TO PRODUCTION OF DOCUMENTS

17       On September 10, 2014, Plaintiffs served a comprehensive set of requests for

18  production of documents ("Document Requests") on all Defendants.  On October

19  14, 2014, all Defendants served nothing but cut-and-pasted boilerplate objections to

20  every request.

21       On October 23, 2014, the Court issued its Order on the motions to compel

22  arbitration (discussed in Section 3 below).

23       On November 21, 2014, defendants Visions and Seppala served amended

24  responses to the Document Requests, which claimed that the only responsive

25  documents that Visions and Seppala had were related to the *Made in America*

26  investment, and which objected to producing such documents based on the

27  arbitration ruling.  Nonetheless, in connection with these amended responses,

28  Visions and Seppala did produce two documents relating to the *Made in America*

25436316

TROUTMAN  SANDERS  LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 - 2545

1   investment that they apparently believed were "harmless enough" to produce:

2   Visions' Member Control Agreement and its Articles of Organization. (Declaration

3   of Thomas H. Prouty ("Prouty Decl."), ¶ 5.) This partial disclosure is inconsistent

4   with, and should be deemed a waiver of, these defendants' broad and misguided

5   arbitration-based objection.

6       Plaintiffs filed a motion to compel discovery responses and document

7   production raising a number of issues with Defendants' discovery conduct on

8   February 9, 2015. (Dkt. Nos. 39-40). Defendants opposed on March 16, 2015

9   (Dkt. 43) and Plaintiffs replied on March 23, 2015 (Dkt. Nos. 45-47). On April 6,

10  2015, after a hearing on the motion, the Court, among other things, set April 13,

11  2015 as a deadline for Defendants to complete document production and serve

12  supplemental responses to the Document Requests, and directed each side to file a

13  supplemental brief regarding the arbitration-based objections by April 17, 2015.

14      On April 13, 2015, defendants Visions and Seppala served further amended

15  responses to the Document Requests. (Prouty Decl., ¶¶ 7-8; Exs. A-B.)

16  (Defendants Reiss and Brown also served amended responses on that date;

17  however, to date, no amended responses have been served by the remaining seven

18  defendants. In addition, it appears that while Defendants re-produced a fraction of

19  its previously produced electronically-stored information in a different format, <u>no</u>

20  <u>new documents were produced.</u> In short, Defendants have utterly failed to comply

21  with the Court's April 6th Order, and their document production remains woefully

22  incomplete. (*Id.*, ¶ 7.)

23      Visions' and Seppala's further amended responses to the Document Requests

24  continue to take the position that the only responsive documents that they have

25  relate to *Made in America* and therefore do not need to be produced. Based on this

26  objection, these defendants are refusing to produce:

27      • Documents relating to the *Made in America* film (RFP No. 1);

28      • Documents relating to the *Made in America* investment (RFP No. 3);

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25436316

- 5 -

- Documents constituting or otherwise relating to communications with Plaintiffs (RFP No. 6);
- Communications with Defendants or any third party relating to this lawsuit, or to the Plaintiffs, or to the subject films or investments (RFP Nos. 7-11, 13, 16, and 18);
- Documents relating to any investments, expenditures or payments of any kind made by any of the Defendants relating to the *Made in America* film or deal (RFP Nos. 22 and 26);
- Documents constituting or otherwise relating to any of Visions' financial and/or accounting records (RFP No. 31);
- Communications with Defendants or any third party relating to any of Visions' financial and/or accounting records (RFP Nos. 36-37);
- Documents constituting, transmitting or relating in any way to the fraudulently created "Purported 4/24/13 Screenshot," which was sent to Plaintiffs to induce their investment in Visions (RFP Nos. 53-55);
- Documents constituting, transmitting or relating in any way to the fraudulently created "Purported 4/15/13 Wire Confirmation," which Seppala sent to Plaintiffs to induce their investment in Visions (RFP Nos. 56-58);
- Documents relating to the transfers or expenditures of funds from Visions' bank account, including any documents that reflect the plans, budgets, needs, reasons, agreements, purposes and/or justifications for such transfers or expenditures (RFP No. 59);
- Communications with Defendants or any third party relating to Visions' bank account (RFP No. 64);
- Documents relating to Seppala's receipt, acceptance, use, expenditure or transfer of all funds received by Seppala directly from the various defendant investment entities' bank accounts (RFP Nos. 77-78);

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

25436316

- 6 -

- Statements of all bank accounts held or controlled by Visions from January 1, 2013 to the present (RFP No. 110); and
- Any and all of Visions' accounting/bookkeeping ledgers reflecting any status or activity from January 1, 2013 to the present (RFP No. 117).

(Prouty Decl., ¶ 8, Exs. A-B.)

**3.     THE COURT'S ORDER ON THE MOTIONS TO COMPEL ARBITRATION**

On September 9, 2014, Defendants Seppala and Visions filed a motion to compel arbitration (the "Seppala/Visions Motion") (Dkt. 21); and Defendants Williams and Moment Factory filed a separate motion to compel arbitration (the "Williams/Moment Factory Motion") (Dkt. 22).

The Seppala/Visions Motion was based on an arbitration provision in Visions' Member Control Agreement, which was governed by Minnesota law. Visions was the special purpose entity created for the *Made in America* investment, and the Seppala/Visions Motion argued that the arbitration provision encompassed Plaintiffs' claims relating to the *Made in America* investment.

The Williams/Moment Factory Motion was based on an arbitration provision in Moment Factory's Operating Agreement, which was governed by California law. Moment Factory was the special purpose entity created for the *Angels Sing* investment, and the Williams/Moment Factory Motion argued that the arbitration provision encompassed Plaintiffs' claims relating to the *Angels Sing* investment.

There was no claim that any arbitration provision stretched far enough to encompass the disputes and claims relating to the $6 million investment relating to *The Letters* or the $2.4 million investment relating to *Left Behind*.

On October 23, 2014, the Court issued an Order denying the Williams/Moment Factory Motion in its entirety, and granting in part and denying

25436316

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

1    in part the Seppala/Visions Motion (Dkt. 35).  A true and correct copy of the Order

2    is attached hereto as Exhibit 1.

3        In denying the Williams/Moment Factory Motion, the Court recognized that,

4    under applicable California law, it had the discretion to refuse to compel arbitration,

5    and it found good reason to do so.  (Ex. 1 at pp. 4-5.)  Thus, claims relating to the

6    $2 million investment in *Angels Sing* that might otherwise have been ordered to

7    arbitration were not.

8        With respect to the Seppala/Visions Motion, the Court determined that

9    claims against Seppala and Visions relating to *Made in America* fell within the

10   subject arbitration provision and that the Court lacked the discretion to refuse to

11   enforce it.  Thus, the Court referred Plaintiffs' "Made in America claims" against

12   Visions and Seppala – the only arbitrable claims – to arbitration.  (Ex. 1 at pp. 5-6.)

13       The next question was whether any of the non-arbitrable claims, including

14   Plaintiffs' "Made in America claims" against the other defendants should be stayed.

15   Considering the relevant factors and the nature of the various claims, the Court

16   clearly resolved that question in the negative:  "Here, the relationship between the

17   arbitrable and nonarbitrable claims suggests that a stay is not appropriate. . . . [T]he

18   Court will not stay claims relating to Made in America with respect to Defendants

19   who were not parties to the Member Control Agreement."  (Ex. 1 at p. 6.)

20       Thus, the effect of the Court's Order is that Plaintiffs' claims against Seppala

21   and Visions (only), relating (only) to Plaintiff's initial investment in *Made in*

22   *America,* were referred to arbitration.  However, Plaintiffs' claims relating to the

23   *Made in America* investment against the remaining defendants were not ordered to

24   arbitration.  Likewise, Plaintiffs' claims against Seppala and Visions that are related

25   to the other film investments were not ordered to arbitration.

26       Plaintiffs note that it is apparent that the Court's Order contains a

27   transposition error on page 2, where it states that "Plaintiffs' claims against

28   Williams, Moment Factory and Legacy Film Crest relating to Angels Sing should

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

25436316

- 8 -

1   be referred to arbitration (with no stay as to the remaining defendants), but that

2   Plaintiffs' claims relating to <u>Made in America</u> should remain in this Court[,]"

3   **instead of** the intended: "Plaintiffs' claims against Seppala and Visions relating to

4   <u>Made in America</u> should be referred to arbitration (with no stay as to the remaining

5   defendants), but that Plaintiffs' claims relating to <u>Angels Sing</u> should remain in this

6   Court."  That this was an unintended error is clear from the rest of the Order,

7   particularly its correct determination that it is the Moment Factory/*Angels Sing*

8   arbitration provision (not the Visions/*Made in America* provision) that was

9   governed by California law, and which the Court therefore had the discretion to

10  refuse to enforce.

11        The parties do not dispute the meaning of the Court's Order.  Indeed, in their

12  opposition to Plaintiffs' motion to compel, the Defendants quoted with approval

13  Plaintiffs' description of the Order.  (*See* Dkt. 43 at 13.)  Thus, there is no dispute

14  that:

15   • Seppala and Visions are full-fledged parties to this lawsuit;

16   • Those portions of Plaintiffs' claims against Seppala and Visions that relate

17        to *Made in America* and not to any of the other film investments were

18        ordered to arbitration, but all remaining parts of Plaintiffs' claims against

19        Seppala and Vision were not ordered to arbitration;

20   • No part of Plaintiffs' claims against any of the other Defendants were

21        ordered to arbitration; and

22   • Plaintiffs are expected to try their entire case (including those portions of

23        their claims that relate to *Made in America*) in this Court in October 2015.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**4.     THE ORDER DID NOT RESTRICT PLAINTIFFS' RIGHT TO DISCOVER INFORMATION FROM VISIONS AND SEPPALA RELEVANT TO THE CLAIMS THAT WILL BE TRIED IN OCTOBER – IN FACT, IT RELIED ON CASE LAW THAT WOULD PERMIT SUCH DISCOVERY**

Nothing in the Court's Order states or even suggests that Plaintiffs are or should be barred from obtaining discovery from any of the parties (including Seppala and Visions) related to the claims going to trial in this Court in October, which indisputably include claims concerning the *Made in America* investment.  On the contrary, in determining that such claims should *not* be stayed, but rather should proceed toward resolution in this Court, the Order suggests the exact opposite.

Significantly, the case on which the Court relied most heavily in reaching that determination – Judge Wilson's decision in *Global Live Events v. Ja-Tail Enterprises, LLC*, 2014 U.S. Dist. LEXIS 63963 (C.D. Cal. May 8, 2014) (*see* Ex. 1 at p. 6, repeatedly citing the decision) – determined that, in a case like this, where claims against certain defendants were in arbitration, and essentially the same claims against those and other defendants were proceeding in a court action, the parties would be expected to engage in full-fledged discovery in both actions.

In *Global Live Events*, the plaintiff sued four defendants alleging five closely related claims, all of which were based on essentially the same set of facts involving the same seven allegedly improper transfers of funds.  *Id*. at *11-13.  The arbitration agreement applied to only one of the claims and against only two of the defendants (the "arbitration-defendants").  Thus, unless the district court issued a broad stay, the bulk of the case, including closely related claims against the arbitration-defendants, would have headed toward trial while the lone non-arbitrable claim would have proceeded in a parallel arbitration proceeding.  *Id*.  In an attempt to avoid that result, the arbitration-defendants argued "that 'if these [court] proceedings are not stayed, the parties will have to conduct all of the same

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

1   discovery in both actions since all of the same witnesses and all of the same

2   evidence will be used in both proceedings.'"  *Id.* at \*18.  Critically, the Court's

3   direct response to that argument – "[b]ut this would still be true if the trial is

4   postponed until after the arbitration proceeding" – recognized that the arbitration-

5   defendants would *not* be able to avoid "conduct[ing] all of the same discovery" in

6   the district court that it could be asked to conduct in the arbitration.  *Id.*

7        Judge Anderson's heavy reliance in his Order on *Global Live Events* strongly

8   suggests that, in issuing the Order, the Court expected that Seppala and Visions

9   would have to answer questions and produce documents in this action related to the

10  issues heading to trial in this action.  But in any event, just as the Court recognized

11  in *Global Live Events* that the arbitration-defendants would be expected to engage

12  in discovery relevant to claims proceeding in the district court, this Court should

13  now order Seppala and Visions to produce their documents, which are undeniably

14  relevant to non-stayed claims heading to trial in October.

15       Another instructive case is *Vertrue Inc. v. Meshkin*, 2006 U.S. Dist. LEXIS

16  37700 (D. Conn. June 8, 2006).  Vertrue involved a dispute between a corporation

17  (Vertrue) on one hand, and an individual, Alexander Meskin ("Meshkin") and two

18  of his companies, on the other hand.  The dispute resulted in multiple proceedings,

19  with one of Meskin's companies initiating an arbitration proceeding against

20  Vertrue, and Vertrue filing a district court action against Meskin.  Meskin had

21  moved to stay the district court action in favor of the related arbitration proceeding.

22  However, "even though the two proceedings were based on essentially the same

23  facts," the district court declined to do so because Meshkin himself was not subject

24  to the arbitration provision, and would not be bound by an adjudication in the

25  arbitration proceeding.  *Id.* at \*13-14.  As the actions proceeded, both sides sought

26  discovery from the other in the district court after the same discovery had been

27  disallowed by the tribunal in the arbitration, with each side accusing the other of

28  using the district court action to make an end-run around the tribunal's orders.  *Id.*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614-2545

25436316

- 11 -

at *5, *10, *14.  In each instance, the district court allowed the discovery to proceed in the district court action, despite the fact that it had been disallowed in the arbitration, because the requested information was still relevant to claims proceeding in the district court.  *Id*. at *14.  In doing so, the court distinguished those cases that have prohibited discovery on the merits with respect to issues in arbitration on the ground that those cases involved complete stays pending the close of arbitration.  *Id*. at *13.  Because the court in *Vertrue* had already decided that claims would proceed toward trial in the district court despite the arbitration, the only question was whether the discovery requested in the district court was relevant to those claims proceeding in the district court.  *Id*. at *15.

The same rationale applies here.  There is no dispute that Seppala and Visions remain parties to this action, and there is no dispute that, after carefully considering all relevant factors, the Court has determined that "a stay is not appropriate[,]" that "[c]laims relating to <u>Made in America</u> will not be stayed with respect to other Defendants[,]" and that Plaintiffs will be required to prove such claims in this action.  (Ex. 1 at p. 6.)  The only question, then, is whether the documents now being withheld by Seppala and Visions are directly relevant to such claims.  But that too, is undisputed.

As the Supreme Court observed in connection with the issue of whether non-arbitrable claims should be stayed in favor of arbitration, "the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (J. White, concurring).  The normal course here is that Plaintiffs would be entitled to the information sought from Visions and Seppala because it is directly relevant to non-stayed claims proceeding in this lawsuit.  The objections to production should be overruled.

- 12 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

**5.    PLAINTIFFS SHOULD NOT BE HANDICAPPED FROM PROVING THEIR CLAIMS THAT WILL BE TRIED IN OCTOBER**

There is no such thing as an "arbitration objection" to discovery.  Claims are either stayed or they are not stayed.  Here, the district court did <u>not</u> stay claims relating to *Made in America* vis-à-vis nine of the eleven defendants, and there is no reason why Plaintiffs should be prevented from obtaining information from defendants Seppala and Visions that is directly relevant to those non-stayed claims. That is particularly true here, where Seppala and Visions occupied a unique role and position with respect to the *Made in America* investment, and would be expected to have information that other Defendants do not.  For example, as noted in Section 2 above, among the documents these defendants refuse to produce are Visions' own accounting, bookkeeping and financial ledgers and records, and information about how the money invested in Visions was used, and why.  As the company itself and the company's managing member who was charged with producing the purported film, Visions and Seppala are the custodians of these records and the key source of the relevant related information.

Furthermore, even if the *Made in America* investment were not still part of this case, <u>which it is as to the nine other defendants,</u> discovery regarding the *Made in America* investment would still be directly relevant to this action, <u>including Plaintiffs' non-stayed claims against Visions and Seppala</u>, because the investment for *Made in America* was part of an on-going conspiracy and much larger fraud. The fraudulent scheme was designed to "start off small" with a relatively small purported investment in a documentary (*Made in America*), and then ramp up to multi-million dollar purported investments in feature length films.  The $500,000 investment into *Made in America* was induced through fake bank statements showing a purported investment by Williams that Plaintiffs later found out was never made by Williams, or anyone else.  After getting a hook on the Plaintiffs through the investment into *Made in America*, the Defendants fleeced an additional

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

1   $10.4 million from the Plaintiffs through the use of the same type of phony bank

2   statements, as well as intentional misrepresentations regarding other investors'

3   purported investments that did not exist.  And as previously noted, Plaintiffs'

4   willingness to continue to make investments was only made possible by

5   Defendants' continued active concealment and misrepresentations regarding past

6   investments, including the *Made in America* investment, and their pervasive lies

7   about the expected realizations from those investments.

8          Furthermore, Defendants' misuse and diversion of Plaintiffs' money after the

9   investment in *Made in America* also makes it relevant to the non-stayed and non-

10  *Made in America* claims in this action.  Defendants transferred the funds that

11  Plaintiffs invested in Visions for *Made in America* to accounts of other controlled

12  sham entities and commingled them with other funds obtained from Plaintiffs for

13  other investments.  For example, within a business day of Plaintiffs' $500,000

14  investment in Visions, $485,000 on that amount was diverted to a different account

15  held by the Williams-controlled defendant, Legacy Film Crest, LLC ("Legacy").

16  Defendants then further commingled and transferred those funds with other

17  accounts, before spending large sums on personal and/or unauthorized items having

18  no connection to *Made in America*.

19         If Visions and Seppala are permitted to continue to conceal their documents

20  and information, which they concede is relevant to the non-stayed claims in this

21  action, there will be a gaping hole in the facts known to Plaintiffs.  Such a hole

22  would undoubtedly handicap Plaintiffs, not only from presenting their case to the

23  jury in less than six months, but from discovering other unknown facts before the

24  discovery cutoff in approximately three months.

25  **6.    CONCLUSION**

26         The ability to discover directly relevant, non-privileged information prior to

27  trial is fundamental to the judicial system – so much so that there is no dispute that

28  Plaintiffs are permitted to subpoena third parties for their information relevant to

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25436316

the non-stayed claims heading to trial in this case.  It is simply implausible that Plaintiffs would not be permitted to obtain the crucial evidence now being withheld by Visions and Seppala, central figures in the alleged conspiracy and parties to this action.  The Court should overrule the arbitration objection and order Visions and Seppala to produce all documents in their possession, custody or control that are responsive to Plaintiffs' first set of requests for production of documents.

Dated:  April 17, 2015

Respectfully submitted,

TROUTMAN SANDERS LLP


By: /s/ Thomas H. Prouty
Paul L. Gale
Siavash Daniel Rashtian
Thomas H. Prouty

Attorneys for Plaintiffs
BILL A. BUSBICE, JR., OLLA
PRODUCTIONS, LLC, and
ECIBSUB, LLC

25436316

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: ARBITRATION-BASED DISCOVERY OBJECTION
(PURSUANT TO COURT'S ORDER AT DOCKET NO. 49)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE · CA  92614 - 2545