1  PAUL L. GALE, Bar No. 065873
   paul.gale@troutmansanders.com
2  SIAVASH DANIEL RASHTIAN, Bar No. 228644
   daniel.rashtian@troutmansanders.com
3  THOMAS H. PROUTY, Bar No. 238950
   thomas.prouty@troutmansanders.com
4  TROUTMAN SANDERS LLP
   5 Park Plaza, Suite 1400
5  Irvine, CA 92614-2545
   Telephone: 949.622.2700
6  Facsimile: 949.622.2739

7  Attorneys for Plaintiffs
   BILL A. BUSBICE, JR., OLLA PRODUCTIONS,
8  LLC, and ECIBSUB, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BILL A. BUSBICE, JR., an individual; OLLA PRODUCTIONS, LLC, a limited liability company; and ECIBSUB, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES DAVID WILLIAMS, an individual; *et al.*,<br><br>Defendants.<br><br>AND RELATED CONSOLIDATED ACTION. | Case No. CV 14-4077 PA (AJWx) consolidated with CV 14-7063 PA (AJWx)<br><br>Magistrate Judge Andrew J. Wistrich<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL FILINGS RE:** *IN CAMERA* **REVIEW OF ALLEGEDLY PRIVILEGED DOCUMENTS**<br><br>Discovery Cut-off: July 27, 2015<br>Trial Date: October 6, 2015 |

25920862v1

PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL FILINGS RE: *IN CAMERA* REVIEW OF ALLEGEDLY PRIVILEGED DOCUMENTS

During the May 11, 2015 hearing, this Court ordered Defendants to produce the documents described on Defendant Barry J. Reiss's ("Reiss") privilege logs for an *in camera* review, and permitted Defendants to file a supplemental declaration on or before May 20, 2015 stating who attorney Reiss represented, for what, and when, in order to assist the Court's *in camera* inspection. Defendants belatedly filed a declaration of Defendant James David Williams ("Williams") on May 21, 2015 (Dkt. 71) and a supplemental Reiss declaration on May 22, 2015 (Dkt. 72). Plaintiffs respectfully submit the following statement and the concurrently filed Declaration of Thomas H. Prouty ("Prouty Decl.") in response:

## I.  THE FRAUDULENT INDUCEMENT, CONCEALMENT, CONVERSION, AND FRAUDULENT COVER-UP REMAIN COMPLETELY UNREBUTTED

In their recent filings, Defendants could not, and did not, attempt to rebut the mountain of hard and direct evidence presented with Plaintiffs' motion, which overwhelmingly establishes that Defendants conspired to, and did, steal nearly $11 million of Plaintiffs' money. This was the worst kind of fraud. Defendants physically created and used demonstrably phony bank records to induce the investments, spent the wrongfully acquired money on unauthorized personal and luxury items, and created additional phony bank records and accountings in an attempt to conceal and cover-up the fraud. All the while, Defendants continued to hold themselves out as Plaintiff Busbice's trusted friends and business partners, as the conversion continued unabated.

Defendants do not confront this evidence.

And since the May 11, 2015 hearing, the arbitrator in the *Big Screen Partners V, Ltd. v. Luxe One, Inc*. arbitration issued his Final Arbitration Award, finding, *inter alia*, that Defendant Williams: (a) "improperly spent" "over $5 million contributed by Busbice[,]" (b) "repeatedly gave false bank statements to

people connected with the Picture[,]" and (c) "spen[t] large portions of that $8 million on personal expenses." (Ex. A to the Prouty Decl. at 3:4, 3:13, 3:27.) Moreover, the arbitrator put it succinctly and candidly: "[a]fter viewing Williams' demeanor throughout the proceeding, I find that his testimony is not entitled to any credibility." (*Id*. at 3:11-12.)

The fact that a massive and continuing fraud has been committed is no longer in question.

## II. ATTORNEY REISS WAS USED BY DEFENDANTS TO CARRY OUT AND CONTINUE THE FRAUD – AND THERE IS NO REQUIREMENT THAT EACH (OR ANY) COMMUNICATION EXPRESSLY REFERENCE A PLANNED OR ONGOING FRAUD IN ORDER FOR IT TO BE ORDERED PRODUCED

As previously discussed in Plaintiffs' Reply in Support of their Motion for Application of the Crime-Fraud Exception ("Reply Brief"), there can be no question that Reiss was used by Defendants to further their planned and on-going fraud. Furthermore, the crime-fraud exception applies even if Reiss had no clue of what the Defendants were planning. (*See* Dkt. 66 at § 5, 9:25-13:19.)

In some cases, where it is unclear whether there was an actual planned or ongoing fraud, it may be necessary or appropriate for the Court to carefully examine the allegedly privileged documents for some indication of the fraud. However, that is unnecessary here, where both the fraud and the fact that the perpetrators used the attorney as an instrumentality of the fraud is uncontradicted and amply established by the evidence. *See*, *e.g.*, *Cunningham v. Connecticut Mutual Life Ins.*, 845 F. Supp. 1403, 1413-1415 (S.D. Cal. 1994) (recognizing that "independent" evidence may establish that otherwise privileged communications must be produced by virtue of the crime-fraud exception). In other words, although Plaintiffs believe that at least some of the documents submitted for *in camera*

review will reflect the Defendants' conspiracy, it is not the Court's task to find and only order the production of those documents. Rather, *all* documents reasonably related to the fraudulently induced film investments and Defendants' post-investment concealment and cover-up must be produced, even if some or all of those documents themselves are seemingly innocuous and do not expressly or clearly reflect a crime or fraud. *Id*.

### III. ALL OF THE APPROXIMATELY HALF OF THE COMMUNICATIONS INVOLVING STEVEN BROWN ARE NOT PRIVILEGED IN THE FIRST PLACE, AND SHOULD BE ORDERED PRODUCED REGARDLESS OF THE CRIME-FRAUD EXCEPTION

Approximately one-half of the withheld documents provided to the Court involve Defendant Steven J. Brown (sjbneg@gmail.com; sbjneg@aol.com). As discussed in the Reply Brief, Defendants' opposition papers both admitted that Brown was *not* a client of Reiss (*nor* an employee, officer or director of any client of Reiss), and failed to meet Defendants' burden of proving that Brown's presence in and on communications did not block the attorney-client privilege. (*See* Dkt. 66 at 7:1-9:23.)

Defendants' recent filings fare no better than their opposition papers. The only reference to Brown in the supplemental Reiss Declaration is the conclusory, unsubstantiated and passing comment that Brown was Williams' "business consultant." (Dkt. 72 at 2:13.) The recent Williams' declaration provides little more information, conveying only in the most conclusory fashion that "Mr. Brown was assisting me with the movie projects and acted as a business adviser and consultant for the companies." (Dkt. 71 at 2:12-14.) No documentary evidence is provided to support these bare-bones assertions.

These general and vague statements obviously come nowhere close to satisfying Defendants' burden of proving that Mr. Brown was retained for the

purpose of obtaining legal advice and that his involvement was crucial to the rendering of legal advice. (*See* Plaintiffs' Reply Brief (Dkt. 66) at 9:1-7; *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 U.S. Dist. LEXIS 147032, at *6, *12 (N.D. Cal. Oct. 10, 2013; *United States v. Graf*, 610 F.3d 1148, 1156-58 (9th Cir. 2010).)

Defendants' obscure vagueness and deliberate evasiveness also has manifested itself in discovery. In interrogatories, Plaintiffs asked Brown to "[d]escribe *in detail* any work that [he] performed or services that [he] rendered relating to the marketing" of the subject films, and to "[d]escribe *in detail* any and all services that [he] provided to or for the benefit of" the investment entities (*e.g.*, Luxe One, Inc. and Moment Factory, LLC). (Emphasis added.) (Prouty Decl., ¶ 3, Ex. B.) Brown's complete response to each of these interrogatories was the same terse, meaningless, and anything but "detailed," phrase: "Film distribution and marketing." (*Id*.)

If Defendant Brown really did occupy a vital role with respect to the film investment projects, such that his presence on communications would not prevent the attorney-client privilege from attaching, then one would certainly expect there to be many documents evidencing his role and the services that he rendered. There are none, and Brown's own statements belie Defendants' claim.

In September 2014, Plaintiffs propounded a comprehensive set of requests for production of documents, which required Brown and the other Defendants to produce all documents relating in any way to the subject films and investments, including any work performed, or services rendered, by Brown. (Prouty Decl., ¶ 4.)

Although Defendants' counsel has represented that Defendants' production is complete, Defendants have produced no documents showing what Brown was asked to do, if anything, and what he allegedly did, in connection with the subject films and investments:

- No contracts or agreements of any kind with or involving Brown have

- been produced, including any contract supporting the self-serving assertion that Brown was engaged as an "advisor" or "consultant" to the defendant-companies; and
- No communications (emails, text messages, letters, etc.) involving Brown regarding any work performed (or to be performed) by him, or services rendered (or to be rendered) by him, have been produced.

(*Id.*) It turns out that the only known documents relating to the subject films and investments that refer to Brown are the bank records produced by JPMorgan Chase Bank (not Brown) that show that Brown converted approximately $1 million of Plaintiffs' money for his own personal use and enjoyment. (*See* Dkt. 54 at ¶¶ 29-38, Ex. 12.)

As for Brown himself, he has produced next to nothing in this lawsuit, and what little he has produced wholly fails to support Defendants' claim that Brown served as an assistant, consultant, and business advisor with respect to the film projects and investments. (Prouty Decl., ¶ 5.) Specifically, other than a handful of documents drafted *by Plaintiffs'* lawyers that must have been forwarded to Brown around the time the lawsuit was filed, <u>Brown's document production in this lawsuit consists *entirely* of only twenty-five e-mails</u>. (*Id.*) None of those twenty-five e-mails indicate that Brown performed work and services in connection with the film projects and investments. (*Id.*) They appear to simply represent the few communications that Brown did not mind producing, either because of their innocuousness, or because Plaintiffs were the sender or a recipient (and therefore already had them):

- 18 of the 25 e-mails are from March 2014 or later, after almost all of Plaintiffs' money had already been converted and spent. 17 of these 18 e-mails involve plaintiff Bill Busbice (or Busbice's representative, *e.g.,* accountant) as a sender or recipient, and the only one that does not, is heavily redacted (without Plaintiffs'

consent);

- Of the seven e-mails that pre-date March 2014, five of them involve Busbice as a sender or recipient; and

- <u>None</u> of the 25 e-mails (or, for that matter, of the other documents produced by any other defendant) reflect that Brown performed any work or services in connection with the subject film investments.

(*Id.*)

Despite Brown's and his co-defendants' lack of disclosure and forthrightness, Plaintiffs have obtained via subpoenas hundreds (if not thousands) of relevant e-mails sent by Brown that Defendants failed to produce. Some of these e-mails are particularly revealing:

- Steven Brown to Stuart Manashil (an agent who received tens of thousands of dollars of Plaintiffs' money) on August 29, 2013: "When we speak to david [Williams] let's discuss which attorney u control & I mean really control who we can put in as our 'barry' [*i.e.*, Barry Reiss] to rep bill busbice the oil tycoon"

- Steven Brown to Stuart Manashil on Jan 8, 2014 (less than a week after Defendants succeeded in fraudulently inducing Plaintiffs' final $4 million investment): "Between us, barry has kicked ass on busbice lawyer in nyc, this guy friedman who u'd hate  Barry has been solid. He's a pain but strong."

(Prouty Decl., ¶¶ 6-7, Exs. C-D.)

All of the evidence before the Court proves that Defendant Brown is a co-conspirator to the worst kind of fraud who was personally and unjustly enriched at Plaintiffs' expense to the tune of approximately $1 million. None of the evidence satisfies Defendants' burden of establishing that the hundreds of Brown e-mails that they have withheld were ever privileged in the first place.

The record is clear that Brown was nothing more than a co-conspirator in the

fraud and its cover-up. The self-serving attempt to shroud the hundreds of e-mails involving Brown with the attorney-client privilege is utterly without merit and the Court need not conduct a searching review of these e-mails in order to order them produced. But, in any event, both the record and the law are equally clear that, in this case, the con-men Defendants that audaciously stole millions from Plaintiffs were never entitled to the attorney-client privilege in the first place.

Dated: May 26, 2015

Respectfully submitted,

TROUTMAN SANDERS LLP

By: /s/ Thomas H. Prouty
    Paul L. Gale
    Thomas H. Prouty

Attorneys for Plaintiffs