1  PAUL L. GALE, Bar No. 065873
   paul.gale@troutmansanders.com
2  SIAVASH DANIEL RASHTIAN, Bar No. 228644
   daniel.rashtian@troutmansanders.com
3  THOMAS H. PROUTY, Bar No. 238950
   thomas.prouty@troutmansanders.com
4  TROUTMAN SANDERS LLP
   5 Park Plaza, Suite 1400
5  Irvine, CA  92614-2545
   Telephone:  949.622.2700
6  Facsimile:   949.622.2739

7  Attorneys for Plaintiffs
   BILL A. BUSBICE, JR., OLLA PRODUCTIONS,
8  LLC, and ECIBSUB, LLC

9             UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12

| | |
|---|---|
| BILL A. BUSBICE, JR., an individual; OLLA PRODUCTIONS, LLC, a limited liability company; and ECIBSUB, LLC, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES DAVID WILLIAMS, an individual; *et al.*,<br><br>Defendants.<br><br>AND RELATED CONSOLIDATED ACTION. | Case No.  CV 14-4077 PA (AJWx) consolidated with CV 14-7063 PA (AJWx)<br><br>Magistrate Judge Andrew J. Wistrich<br><br>**REPLY DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**<br><br>Date:   July 27, 2015<br>Time:  10:00 a.m.<br>Place:  Courtroom 690<br><br>Discovery Cut-off: July 27, 2015<br>Trial Date: October 6, 2015 |

26288746v1

REPLY DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

I, Thomas H. Prouty, declare as follows:

1. I am an attorney admitted to practice before this Court. I am an attorney at the law firm of Troutman Sanders LLP, counsel for Plaintiffs Bill A. Busbice, Jr., Olla Productions, LLC, and Ecibsub, LLC (collectively, "Plaitniffs") in this action. I have personal knowledge as to all matters set forth herein, and if called to testify as a witness, I could and would do so.

2. I submit this Reply Declaration in support of Plaintiffs' motion to compel and request for sanctions ("Motion").

3. In paragraphs 7-10 of his declaration in opposition to the Motion, Defendants' counsel, Mr. John Burgee, represents that I agreed that the stipulation that was eventually filed with the Court on June 23, 2015 (agreeing to Mr. Burgee's withdrawal as counsel and the irrevocable entry of default against Garuda Partners, Ltd., Bipartisan Coalition for American Security Corporation, and Highgate Pass, LLC (collectively, the "Defaulted Entities")) would resolve discovery disputes and motions based on Defendant James David Williams' ("Williams") initial refusal to appear for deposition on behalf of the Defaulted Entities on May 27, 2015. That is incorrect. I only ever advised Mr. Burgee that the stipulation would resolve Plaintiffs' opposition to Mr. Burgee's motion to withdrawal as counsel – not that Plaintiffs waived their rights and remedies with respect to Williams' failure to appear.

4. The stipulation that was filed on June 23, 2015 had not been approved and entered by June 29, 2015, Plaintiffs' effective deadline to have discovery disputes heard on regular notice and the date that Plaintiffs' filed their motion to compel. As it turned out, the stipulation was not approved and entered until July 8, 2015 – after Defendants' opposition to the instant motion to compel was due. A true and correct copy of the Court's Order on the stipulation (Dkt. 88) is attached hereto as Exhibit A.

26288746v1                                - 1 -
REPLY DECLARATION OF THOMAS H. PROUTY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

5. In paragraph 11 of this declaration, Mr. Burgee states: "On June 21, 2015, I was terminated as counsel for Defendants Moment Factory, LLC and Luxe One, Inc. I am in the process of withdrawing as their counsel." I believe that this statement is false and evidence of further bad faith game-playing. For example, at 4:45 p.m. on June 22, 2015 – (the day after the purported June 21 termination and Mr. Burgee's receipt of my letter advising that Williams' failure to appear was not excused by his bankruptcy filing (attached as Ex. G to my initial declaration)) – Mr. Burgee sent me an e-mail stating in pertinent part:

> My latest information is that Luxe and Moment Factory are not producing any corporate witness. My representation of Luxe and Moment Factory is therefore ending, either by resignation or termination. It is likely that these entities may also go into default. Alternatively, as we discussed, bankruptcies of Luxe and Moment Factory may be in the works.

A true and correct copy of Mr. Burgee's June 22, 2015 e-mail is attached hereto as Exhibit B. Thus, at the close of business on June 22, 2015, the eve of the first of the three days that this Court ordered Williams and his remaining entities appear for deposition, Mr. Burgee represented *not* that he had been terminated as counsel, but that, based on his "latest information," he may "resign" as Luxe One's and Moment Factory's counsel because of their refusal to produce a witness as ordered by the Court.

6. Mr. Burgee's June 22nd e-mail (Ex. B hereto) also asserted that Williams would not appear for deposition "as a third party witness" despite the Court's order and the law cited in my June 21st letter (Ex. G to my initial declaration) on the ground that "any discovery may potentially be used in his bankruptcy proceeding" and should therefore involve some unidentified and un-retained bankruptcy counsel.

7. On the morning of June 23, 2015, my co-counsel Paul Gale and I had a telephone conference with Mr. Burgee and conveyed that Williams needed to appear for deposition.

8. On June 24, 2015, I sent a reply e-mail to Mr. Burgee's June 22 e-mail advising, *inter alia*, that Williams cannot continue to refuse to appear while he seeks bankruptcy counsel. Nevertheless, I asked Mr. Burgee to let me know if and when Williams does, in fact, retain bankruptcy and who he/she is. (A true and correct copy of my June 24 e-mail is attached hereto as Exhibit C.) To date, Mr. Burgee has not identified any bankruptcy counsel, and based on my review of the bankruptcy docket and filings, Williams remains unrepresented in his bankruptcy case.

9. In paragraph 16 of his declaration, Mr. Burgee asserts that Plaintiffs knew that June 16, 2015 (the date selected in Plaintiffs' Notice of Deposition of Steven Brown) did not work for him and Mr. Brown when the notice was served. That is incorrect. Mr. Burgee attempts to support his assertion by pointing to e-mail correspondence between him and I that targeted potential dates for various witnesses beginning in late June 2015 and continuing through the discovery cutoff in late July 2015. However, the fact that the first of the dates in that e-mail correspondence was in late June 2015 should not be taken to mean that counsel had declared any earlier dates as "unavailable." Indeed, it was agreed that Defendants Williams and Brown should be deposed first, and I communicated to Mr. Burgee that I preferred to begin the depositions toward the end of June 2015 in recognition of the fact that Defendants had just recently (on May 21, 2015) lodged approximately 500 allegedly privileged documents for the Court's *in camera* review in connection with Plaintiffs' motion on the crime-fraud exception. I was unclear whether the Court would be able to complete the *in camera* review (which involved many allegedly privileged communications sent or received by Defendant Brown) by mid-June 2015, and so I initially proposed that the deposition of

Defendant Brown take place at the end of June or beginning of July.  At no time did Mr. Burgee advise that June 16 was unavailable or unacceptable.

10. Furthermore, Plaintiffs only noticed Mr. Brown's deposition for June 16, 2015 after Mr. Burgee failed to provide any information supporting Defendant Brown's claimed unavailability in response to my repeated and sustained requests for such information.  *See, e.g.*, paragraph 17 of my initial declaration (Dkt. 83) and Exhibit O thereto (my June 5, 2015 letter to Mr. Burgee referencing my repeated and ignored requests for such information); *see also* Exhibit C to the Declaration of John Burgee (Dkt. 86-1 page 9 of 68) (my May 29, 2015 e-mail to Mr. Burgee).

11. In paragraph 17 of his declaration, Mr. Burgee suggests that my only concern with taking Defendant Brown's deposition remotely by video conference was that "there were exhibits that [I] wanted to show Mr. Brown."  This drastically understates my concern, and misrepresents what I told Mr. Burgee.  As I advised Mr. Burgee, Defendant Brown's deposition would be extremely document-intensive, and could involve 75-100 (or more) exhibits.  Part of this is simply due to the nature of this case.  (For example, Plaintiffs marked over 60 exhibits in the recent one-day deposition of Defendant Barry Reiss.)  However, another contributing factor is Defendants' failure to produce hundreds of relevant e-mails and other documents sent or received by Brown, which Plaintiffs obtained only from third parties.  Another factor is Brown's failure to provide any significant detail in response to interrogatories.  Thus, as I advised Mr. Burgee, this important deposition of a main defendant in this $10,900,000 conspiracy to defraud action is particularly ill-suited for cross-oceanic examination by remote control.  Attempting to remotely navigate through a stack of up to 100 exhibits (even if they are pre-marked) with only Defendant Brown and some foreign court reporter in the room would frequently bring the pace of the deposition to a standstill, thereby either drastically short-changing Plaintiffs of a complete deposition, or requiring Brown to appear for several days.  Such a process also would hinder my ability to mark

new exhibits, use exhibits in a different order, and most importantly, react to new or unexpected testimony.

12. In paragraph 13 and 15 of his declaration, Mr. Burgee conveys that he noted the cost of Defendant Brown's travel as "an issue" for his appearance in the United States, but that Plaintiffs refused to pay for Brown's travel. That is a half-truth. At no point did Mr. Burgee state that the cost of travel was an actual impediment to Brown's appearance in the United States. It is true that, after Mr. Burgee conveyed that Brown allegedly did not have the time to return to the United States, he asked whether Plaintiffs would pay for Brown's travel. I advised Mr. Burgee that that request seemed inconsistent with the position that Brown could not come to the United States. I asked Mr. Burgee: is it that Brown cannot come, or that he cannot afford to come? I recall Mr. Burgee responding that he believed that Brown could not come, but that sometimes his clients wanted to know whether the other side would pay. I advised Mr. Burgee that I believed that Brown could afford to travel if he wanted to, and that unless Brown was going to change his story about the reason for his inability to return to the United States for his deposition, then Plaintiffs would not volunteer to pay for Defendant Brown's flight.

13. In the morning of July 9, 2015, prior to the deposition of third party Michael Friedman and after Defendants filed their papers in opposition to the instant motion to compel, my co-counsel Paul Gale advised Mr. Burgee that although Plaintiffs were confident in their motion and request for sanctions against Defendant Brown, Plaintiffs, in a good faith effort to compromise, would pay for Brown's flight (traveling coach) from wherever he may be abroad to the United States, if Brown agreed to appear for a full deposition in the United States, in any major city, and on any available date, including weekend days, prior to August 31, 2015. Mr. Burgee advised that he would discuss with his client. To date, Mr. Burgee has not advised whether that offered compromise is acceptable.

14. The Court's scheduling order setting the current July 27, 2015 discovery cutoff date was issued on October 3, 2014. I have engaged in numerous deposition planning and scheduling discussions with Defendants' counsel in this action; however, at no time did Defendants disclose that Defendant Brown may be busy abroad for the several months leading up to the discovery cutoff date.

15. I searched online for evidence of any sort of film project currently in production called "One Man's Journey," including on the IMDb website (*see* www.imdb.com). I found no trace of any such project.

16. Attached as Exhibit D is a printout from the Sundance Institute website (www.sundance.org/festivals/sundance-film-festival/about/) which reflects that the deadlines to submit films for the 2016 Sundance Film Festival is as follows:

- <u>U.S. and International Short Films</u>:  (1) Official Submission Deadline: August 24, 2015; and (2) Late Submission Deadline: September 21, 2015.
- <u>U.S. and International Feature Films</u>:  (1) Official Submission Deadline: August 31, 2015; and (2) Late Submission Deadline: September 28, 2015.

17. Although Defendant Brown's amended interrogatory responses (which were served after the motion to compel was filed) state that he has owned or controlled no entities since January 1, 2013, evidence adduced to date shows Defendant Brown to be the owner and/or controller of an entity called Noble Group International, Inc. ("Noble Group") that received and transferred substantial sums of money traceable to Plaintiffs' investment funds. For example:

- attached hereto as Exhibit E is a true and correct copy of the first page of a recent UBS account statement held by Noble Group and addressed to the attention of Defendant Brown (recently produced by UBS pursuant to subpoena);

- attached hereto as Exhibit F is a true and correct copy of a check drawn on a UBS account held by Noble Group/Defendant Brown, and apparently signed by Brown (produced by JPMorgan Chase Bank pursuant to subpoena); and

- attached hereto as Exhibit G is a true and correct copy of a cashier's check drawn on an account held by Defendant Legacy Film Crest, LLC in favor of "The Noble Group," and apparently endorsed by Brown (produced by JPMorgan Chase Bank pursuant to subpoena).

18. On Friday, July 10, 2015, I took the deposition of Defendant Gerald Seppala. Mr. Seppala testified that he routinely deletes every e-mail sent or received by him, and that he has continued this practice until today. Mr. Seppala also testified that he believed that Defendant Brown was in possession of raw footage relating to the *Made in America* film. In addition, I questioned Mr. Seppala regarding payments received by him in the past two years from Noble Group. Mr. Seppala testified that he understood that Noble Group was owned or controlled by Defendant Brown. Because it has only been one business day since the deposition occurred, there is not yet a transcript of the proceedings.

19. Attached hereto as Exhibit H is a true and correct copy of a letter that I sent to Defendants' counsel on October 31, 2014, which, *inter alia*, stressed Defendants' and Defendants' counsel's duties regarding the preservation and collection of relevant evidence, including electronically-stored information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 13, 2015 at Irvine, California.

/s/ Thomas H. Prouty
Thomas H. Prouty